# EXHIBIT 32

# THE TEAM CONCEPT IN A CAPITAL CASE

TEXAS DEFENDER SERVICE
CAPITAL TRIAL PROJECT
DEATH PENALTY MITIGATION SEMINAR
AUSTIN, TEXAS
FEBRUARY 8TH & 9TH, 2001

### The Mitigation Specialist and the Team Approach

In a death case, the ultimate goal is the preservation of the client's life. The entire preparation of the case must be directed to that end. Because of this all-important goal, these cases are, in essence, prepared in reverse order. Regardless of guilt, the attorneys must aim their efforts from the beginning at saving, the client's life. For this reason and because the death penalty is, in part, a sociological issue, counsel must include human service professionals on the defense team. The mitigation specialist is the first, and usually most important, expert that should be consulted in every capital case. They should have both sound, clinical skills for interviewing and assessment and a thorough working knowledge of the court system.

The mitigation specialist has become accepted as a basic tool for the defense of a capital case and trial judges need to be educated in the need to approve funding for this vital resource. The lawyer must convince the judge that this is different from the guilt/innocence investigation. Generally, more time will be required and it will cost more. If the attorney is not sure if a funding order will be signed, the *ex parte* request should be approached as if the funding request will be denied, so that a record can me made for mandamus or appellate review.

The lawyer must also take care in hiring the mitigation specialist. This is not someone who will just go out and talk to people. This should be a professional who is trained in conducting mitigation investigations. This can be a licensed social worker with an MSW or Ph.D. This is an expert. Someone who can testify at trial as to her findings, conclusions and opinions. The higher esteem the lawyers have for the mitigation specialist the more regard the judge will have for the lawyer's funding request.

This article discusses the foundation for an interdisciplinary team approach to death penalty defense and offers guidelines for utilization of the mitigation specialist on the defense team.

### The Team Approach
*Team approach* refers to a team of two or more people coordinating their activities to accomplish a common task–saving the client's life. Because of the nature of these cases and a finite amount of available resources, the attorney must start with mitigation and at the same time that the investigation into guilt phase issues is begun. With a multitude of tasks facing the attorney, it is essential that the team approach be used to coordinate strategies throughout the case's investigative, guilt, and mitigation phases.

The team approach has proven to be the best method of increasing the chances of a life sentence; the collective efforts of the team heighten productivity and lead to a better defense for the client. Benefits of the team approach include: *(1) increased efficiency,* since tasks can be delegated to appropriate team members, allowing attorney time to be devoted to legal-oriented problems; *(2) expanded knowledge* of various disciplines and backgrounds, providing for more informed decision-making and strategy planning; (3) *reduced duplication* since each team member has specific tasks; and *(4) increased support* to attorneys to help combat the extreme physical and mental stresses of death penalty litigation.

In short, team support can help combat case-related stresses, allow for ventilation of problems and provide strength and encouragement against bleak odds (5) **better relationship with the client and family** as there are more people, with more time and often better ability to communicate.

The size of the team will vary from case to case depending upon the specific services needed. Every member of the team is an expert in his/her own sub-specialty. Generally, the defense team should be composed of, *inter alia*, attorneys, a mitigation specialist, a criminal investigator, one or more psychologists, and other mental health professionals that are indicated. In addition, specific problem areas like alcoholism, neuropsychological deficiencies, etc., are addressed by other appropriate professionals. The role of the mitigation specialist is a relatively new area of expertise and is unfortunately poorly understood. This article will take an in-depth look at the mitigation specialist, including roles and responsibilities, and will define potential problems and their management.

**The Mitigation Specialist**
The mitigation specialist investigates the psycho-social history of the client and works toward developing that history into a viable strategy for mitigation. The specialist can provide coordination between the experts, lawyers and lay witnesses and preparation of witnesses for testimony. Although the mitigation specialist's primary focus is the development of mitigation, his/her assistance and expertise can be invaluable in planning and coordinating a cohesive trial strategy throughout the guilt and mitigation phases.

Since the penalty phase is always a possibility and the entire case strategy needs to be planned and prepared around mitigation, the mitigation specialist should be obtained as soon as the attorney is retained or assigned. The professional needs not only the appropriate skills, but also the temperament needed to effectively work with the attorneys, client and client's support group throughout the case. A mitigation specialist should possess an understanding of the psycho-social aspects of human development, human relations skills, and management skills. Try to select a mitigation specialist with a background in any combination of clinical social work, counseling other human service professions coupled with some sort of forensic or criminal justice knowledge.

Since most attorneys rarely handle cases that require the use of such professionals, it may be difficult to target and secure the service of professionals with these skills. This may be especially true in smaller counties with minimal human service systems. Texas Defender Service's Capital Trial Project, 510 South Congress Avenue, Austin, Texas, 78704, (512) 320-8300 is always available to offer assistance in capital cases including help in finding a mitigation specialist and other experts.

**Role and Responsibilities**
The mitigation specialist is essential to the team in many areas, and brings to it a multitude of skills that can be used to perform numerous roles and their related responsibilities. It is important for attorneys to recognize these roles and responsibilities in order to utilize the mitigation specialist to maximum potential.

3

*Social Investigation*
The largest role of the mitigation specialist is that of a psycho-social investigator. The complete social investigation compiled by the mitigation specialist is the base upon which a successful mitigation is built. Since the purpose of mitigation is to explain how the client reached the point of being involved in the type of crime with which he is charged, it is imperative that this explanation grow out of the client's life history. This social history, or psycho-social investigation. will provide the attorneys and mitigation specialist with the information needed to begin construction of the mitigation, and perhaps strategies that can be used in the guilt/innocence phase. Interviewing and preparation of the psycho-social history is something that the graduate social worker has been trained to do.

The psycho-social investigation culminates in a written social history, a compilation of all pertinent information about the client organized in a concise, cohesive form. It should be a chronicle of the client's life history, including all significant life events from birth (or before) to the present, including but not limited to: (1) the basic history of the client and his family as well as social relationships; (2) medical history, including head injuries and drug and alcohol usage; (3) mental health history; (4) educational history; (5) employment history; (6) military history (if applicable) and (7) legal involvement.

The client, and often his family, is not always an accurate historian. The facts about the client should be based on information received not only from the client but also from family, friends, teachers, employers, counselors or agency personnel the client has had contact with. Reviewed should include any and all available records pertaining to the client, and any other valid source of information. **LEAVE NO STONE UNTURNED.** The social history should contain both good and bad information about the client, only an accurate, well-substantiated history will ultimately be of value.

As the social history is developed, plotting significant life events on a time line can be a helpful tool just as it can be for the fact investigator who is investigating the guilt/innocence phase of the trial. Because there will frequently be a pattern of events corresponding with a pattern of behavioral changes, the time line can be a useful tool for the team's understanding of the client and why he does what he does. A time line can take numerous forms depending on the case and the chart's intended uses.

The social history helps the attorney understand the client and what happened and aids the attorney in explaining to the court and jury what the client is about and why. The social history also contains invaluable information for other team members, such as the psychologists and psychiatrists. This material guides the lawyers and mental health experts in determining what to test for and why. The records supplements their examinations, supports their diagnostic conclusions, and lends substance and credence to the psychological testimony.

The mitigation specialist will begin immediately establishing a rapport with the client and family, obtaining records that are indicated by the psycho-social history, summarizing those records for the lawyers. The records of your client's life cannot be put in a box in the corner of the office when received. They should be reviewed immediately to (a) make sure you have received everything requested and (b) to see what other information is suggested. They

4

should be summarized immediately with the summaries given to the attorneys for needed follow up.

In many respects the mitigation specialist is a jack-of-all-trades, having a range of roles with numerous responsibilities. Three of the more administrative roles that the mitigation specialist can perform for the team include that of coordinator, liaison, and information disseminator, all three being closely related and intertwined.

As a *coordinator,* the mitigation specialist assists in and organizes the selection, contacting and working with other professional experts, especially those in the mental health field. Because mitigation specialists have professional knowledge and experience that often overlaps the knowledge bases of potential experts, they will be able to coordinate the professional experts' experience, expertise, and understanding of mitigation with the needs of the team and the client. The emphasis is on coordinating--not telling another expert what to do. Politics is important in team work and the specialist must be attentive to this. She cannot be the source of friction. She is a friction reducer.

The role of *liaison* is one of the most important administrative roles a mitigation specialist can have; keeping the lines of communication open between all participants is crucial. This means acting as a liaison when necessary, between the client and attorneys, client and family, client's family and attorneys, expert witnesses and attorneys. and among other team members and the deceased's family..

Very closely related to acting as a liaison among participants is the role of *information disseminator.* This task insures that attorneys, experts, team members, client, client's family, and other lay witnesses have the information needed to fulfill their responsibilities and tasks. To insure consistency in the overall mitigation strategy, information dissemination is a responsibility of all team members; however, it is a function that can be efficiently carried out by the mitigation specialist because of his/her wide-ranging contacts.

Another preparation task that the mitigation specialist can perform is helping the attorney prepare for the trial itself by exchanging ideas and being available to help test arguments. The mitigation specialist can give the attorney helpful suggestions about what might work and what might not, providing support and encouragement. The lawyer is in charge and ultimately responsible for the quality or representation. However, the best results are achieved when team members feel that their opinions are valued and will be considered in the overall strategy.

*Preparing for Mitigation*

The mitigation specialist can be invaluable at the time of trial while the attorney is dealing with courtroom tasks of the guilt/innocence phase. Because the mitigation specialist knows the themes and strategies of the mitigation case, s/he can be organizing the witnesses and preparing an information sheet about each individual that details who each witness is and what contribution can be made through testimony. The witness sheets can also note cautions regarding all witnesses, suggestions about effective ways to elicit the most beneficial

5

testimony, and a suggested witness order.

If a conviction is returned in the guilt/innocence phase and the attorney has reviewed the witness sheet package, the attorney will want to conduct his own interview with each witness to familiarize himself with the witness, discuss the testimony, assess potential difficulties, and develop a rapport with the witness. Inclusion of the mitigation specialist in these interviews is valuable not only in helping to put the lay witness at ease. but also in clarifying problem areas for either the attorney or witness.

The mitigation specialist can see that subpoenas are served and that the witnesses appear when they are needed, holding the frightened witness's hand during those unavoidable delays.

### *Witness* Preparation

On the unfortunate occasions when time does not permit the attorneys to meet with each witness prior to their mitigation testimony, the mitigation specialist can prepare the witnesses, review the information needed, and 'role play' testimony in an effort to acquaint witnesses with courtroom procedures and style. Stressing the importance of telling the truth, going over the questions that will be asked and the responses that are anticipated based on prior interviews.

### *The Client*

The most important person the mitigation specialist can prepare is the client. This preparation should not wait until mitigation. but should be an ongoing process beginning prior to the guilt/innocence phase. There are several aspects to preparing the client for trial. First, the mitigation specialist can make arrangements for the client to have appropriate, tattoo covering clothes for trial, help the client decide on an appropriate appearance for court and educate the client about body language for the courtroom. He will be watched throughout the trial by the jurors. The lawyers will be especially courteous to the client, smiling, talking, pulling the chair out for him. This helps to show that they like this guy. If the team likes this guy, so can the jury. These are important details because appropriate appearance and demeanor help make the client human to the jury and judge and help reduce their preconceived ideas of a cold-hearted monster. If the client sulks or stares at witnesses, it will be easier to not like him.

The next preparation involves discussing with the client the testimony that will be heard in court, especially during mitigation. The client needs to be told in detail what will be presented, as a great deal of the testimony may deal with unpleasant or disturbing childhood experiences, drug and alcohol problems, psychological problems, and possibly information not previously known to the client. The client needs to be prepared that he will hear unexpected testimony so that there are not outbursts or other unwanted conduct. Signs of surprise, anger, or embarrassment exhibited by the client, if wrongly appreciated by the jury, may seriously impair the chances for a successful mitigation.

The final, and probably the most important area of client preparation for the mitigation

6

specialist, is working with the client for his own testimony in mitigation, be it sworn or unsworn. Some clients are initially unwilling to make statements in court and convincing them that making a statement is critically important is often a difficult task. Once the client has agreed to make a statement, the mitigation specialist can work with the client, find out what the client wants to say, discuss with the client what should or should not be included and rehearse the statement with him. Past experience indicates that a short statement expressing remorse about occurrence of the crime, apologies to the victim's family and his own family, and asking the jury to spare his life are crucial elements to be included in this statement. Because the sentence could very possibly hinge on what the client says or does not say, it is imperative that the client feel comfortable with the statement and be able to speak to the jury and court in a convincing manner.

Another team member that should be considered is an experienced criminal defense lawyer who will agree, *pro bono*, to conduct a realistic cross-examination of the client. It is the client who will decide if he is to testify or not. Defense counsel should provide the client with their opinion on this issue. A sound decision cannot be made until the client's version of the facts, and his demeanor under cross-examination, are tested by an adversarial examination.

Texas Defender Service can help the trial team in this area. It is important for a lawyer who is not a regular member of the defense team to conduct this cross examination. Obtaining the client's trust is difficult. The cross-examination, if it is to be effective must be adversarial and usually heated. The client is likely to become mad at and lose any trust that he had for the lawyer that conducts the cross. The trial team cannot afford to "lose" one of its members by conducting this cross-examination. An outside person can also provide some perspective to the team's defense strategy. It is very easy to "get too close to the forest to see the trees." When this happens, objectivity and perspective are often lost.

### *Experts*

The mitigation specialist will have likely been working throughout the case with the professional experts, keeping them informed on new developments, and consulting with them about impressions and opinions. The specialist can help to insure that the expert testimony will be appropriate, that the expert's testimony will "fit" into the overall theory of mitigation, and that the testimony will be well organized and cohesive. The mitigation specialist can work with the attorneys and the expert(s) to formulate questions that most effectively elicit the information needed.

### *Lay Witnesses*

Lay witnesses who will be testifying about the client are, in their own right, also experts. in that they have specific knowledge and expertise about the client and the client's life. These people are crucial to the defense and need to be treated with respect and honesty. Most of them have never testified before and will be extremely frightened about their having to testify in front of many people. These witnesses need special attention. Keeping them informed and maintaining a good rapport will reduce potential dangers if they must testify without adequate

7

preparation. The mitigation specialist can answer questions about the legal process, advise them about proper court attire, and inform them about important areas of information they should stress during their testimony as well as those areas that will not be helpful to the defense. The mitigation specialist can also lend them emotional support and encouragement before and after their testimony.

**Potential Problems and Problem Management**
Since attorneys do not usually share the management of their cases, the team approach in death penalty cases may make an attorney uneasy, feeling s/he has lost control of the case. On the contrary, the attorney is still the chief administrator of the case; it is only the administration of case preparation that has changed. Because death cases are different, it is in the attorney's and client's best interests for the attorney to delegate some authority and duties to other team members for more effective and efficient management of the case.

Another problem that can develop centers around the fact that attorneys and social workers have had a history of strained relationships throughout the years. The only experience may have been in juvenile court where the social worker, with little experience, may have recommended a disposition that the lawyer felt was absurd. The lawyer's comments may have brought on a heated debate with the social worker that did little for the relation between the two.

The social worker's view of client determination (we know what is best for Johnny) and confidentiality can be different than that of the lawyer. Early discussions about these conflicts, continued dialogue when specific problems arise, and a constant awareness of the ultimate goal–keeping the client alive-- should keep team members focused.

Another consideration is whether the mitigation specialist should testify at the mitigation phase. Although the idea might sound attractive, there are some serious drawbacks. The first problem deals with qualifying the mitigation specialist to testify and the scope that testimony will be allowed to encompass. The second concern is one of interference with other obligations. If the mitigation specialist is preparing for her own testimony, she will be limited physically and mentally, not only in her abilities to help prepare other witnesses (client, expert, and lay), but also in her abilities to lend support to other witnesses and attorneys and to provide coordination throughout mitigation.

One solution to these problems is to use lay witnesses, psychologists, psychiatrists and any other experts to testify, about all the information the mitigation specialist could have contributed. The lay witnesses can testify from their own personal knowledge and the experts can testify and give opinions based on information upon which they customarily rely in forming those opinions, i.e., the evidence gathered by the mitigation specialist. This strategy allows the mitigation specialist to fulfill all the roles and responsibilities previously detailed. This is obviously not the only answer, and may not be the preferred courser for all attorneys or mitigation specialists; this issue needs to be discussed by team members at the onset of the team's formation, always keeping the client's best interest in mind.

8

**Conclusion**
What should be remembered above and beyond all else is that, in order to have the best opportunity to save your client's life, *preparation for mitigation should be started as soon as possible.* Experience in capital litigation has shown us that one of the earliest tasks that needs to be performed is the assembling of a defense team which consists of a variety of professionals who will work towards a life verdict.. The mitigation specialist is a professional who should be included in the defense team. Some judges will need to be educated to the value that this member provides to the defense. Obviously, there are no guarantees that verdict less than death, will be returned by the jury. However, proper utilization of the team approach will greatly increase the likelihood of a successful mitigation presentation and a life sentence.