**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **PATRICK HENRY MURPHY JR.** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| -vs- | § | CIVIL NO. 3:09-cv-01368L |
| | § | |
| | § | ***DEATH PENALTY CASE*** |
| | § | |
| **RICK THALER**, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

_____

**PETITIONER PATRICK HENRY MURPHY'S SUPPLEMENTAL BRIEF
ADDRESSING WHETHER THE COURT SHOULD SUSPEND PROCEEDINGS
PENDING THE SUPREME COURT'S DECISION IN _TREVINO v. THALER_**

_____

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
100 Law Center
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email drdow@central.uh.edu

_Counsel to Patrick Henry Murphy, Jr._

**Table of Contents**

Table of Contents ........................................................................................................... ii

Index of Authorities ..................................................................................................... iii

Petitioner Patrick Henry Murphy's Supplemental Brief Addressing Whether the Court
      Should Suspend Proceedings Pending the Supreme Court's Decision in *Trevino
      v. Thaler* ...........................................................................................................1

I.     Mr. Murphy's claims of ineffectiveness of trial counsel are substantial. ...............2

II.    Mr. Murphy's state habeas counsel was ineffective. ...............................................4

III.   This Court should not find that Mr. Murphy's claims are procedurally defaulted. .8

IV.   If this Court believes Mr. Murphy's claims of ineffectiveness of trial counsel are
      procedurally defaulted, it should suspend proceedings pending the Supreme
      Court's decision in *Trevino v. Thaler*. .................................................................13

Conclusion and Prayer for Relief ...............................................................................15

Certificate of Service ..................................................................................................15

# Index of Authorities

**Cases**

*Clinton v. Jones*, 520 U.S. 681 (1997)................................................................13

*Coleman v. Thompson*, 501 U.S. 722 (1991).......................................................9

*Ex parte Foster*, No. WR-65,799-02 (Tex. Crim. App. Dec. 30, 2010).....................10-11

*Ex parte Granados*, No. WR-51,135-01 (Tex. Crim. App. 2007)................................9-10

*Ex parte Graves*, 70 S.W.3d 103 (Tex. Crim. App. 2002) .................................10

*Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App. 2007)....................................9

*Ex parte McLain*, 869 S.W.2d 249 (Tex. Crim. App. 1994) .............................12

*Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011).............................11

*Ex parte Moreno*, No. WR-25,897-01 (Tex. Crim. App. 2007) .......................10

*Ex parte Murphy*, No. WR-63,549-01 (Tex. Crim. App. July 1, 2009).............................7

*Ex parte Ruiz*, No. WR-27,328-03 (Tex. Crim. App. 2007).............................10

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001) .............................................9

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ...............................................13, 14

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012) .......................................................1

*Haynes v. Thaler*, 133 S. Ct. 639 (2012) ..........................................................2

*Rhines v. Weber*, 544 U.S. 269 (2005)..............................................................13

*Rose v. Lundy*, 455 U.S. 509 (1982) .............................................................8-9

*Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007)..........................................10

*Strickland v. Washington*, 466 U.S. 668 (1984) ...........................................4, 5

*Trevino v. Thaler*, 133 S. Ct. 524 (2012)..........................................................2

*Wiggins v. Smith*, 539 U.S. 510 (2003).........................................................4-5

*Wilder v. Cockrell*, 274 F.3d 255 (5th Cir. 2001) ..............................................................9

**Statutes**

28 U.S.C. § 2254(c) ...........................................................................................................9

**Other Authorities**

Am. Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel
    in Death Penalty Cases* (rev. ed. 2003) ...........................................................4, 5, 6

State Bar of Texas, *Guidelines and Standards for Texas Capital Counsel*
    (2006) ................................................................................................. 5, 6-7, 12

State Bar of Texas, Texas Criminal Appellate Manual (1996)..........................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICK HENRY MURPHY JR.                    §
                                            §
            Petitioner,                     §
                                            §
                                            §
      -vs-                                  §          CIVIL NO. 3:09-cv-01368L
                                            §
                                            §          ***DEATH PENALTY CASE***
                                            §
RICK THALER, Director,                      §
Texas Department of Criminal Justice,       §
Correctional Institutions Division,         §
                                            §
            Respondent.                     §

_____

**PETITIONER PATRICK HENRY MURPHY'S SUPPLEMENTAL BRIEF
ADDRESSING WHETHER THE COURT SHOULD SUSPEND PROCEEDINGS
PENDING THE SUPREME COURT'S DECISION IN *TREVINO v. THALER***

_____

On June 30, 2010, Petitioner filed his Petition for a Writ of Habeas Corpus in this

Court.   Dkt. 18.   In the petition, Mr. Murphy raised two claims addressing the

ineffectiveness of his counsel at his capital murder trial.  Dkt. 18, at 26-96.  Neither of

these claims was presented in his state application for habeas corpus relief.  Dkt. 35, at

Exhibit 1.  On March 20, 2012, the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct.

1309 (2012).  Under *Martinez*, "a procedural default will not bar a federal habeas court

from hearing a substantial claim of ineffective assistance at trial if, in the initial-review

collateral proceeding, there was no counsel or counsel in that proceeding was

ineffective." *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).  On October 29, 2012, the

Supreme Court granted certiorari on the critical issue of whether *Martinez* applies to cases arising from Texas courts. *Trevino v. Thaler*, 133 S. Ct. 524 (2012); *see also Haynes v. Thaler*, 133 S. Ct. 639 (2012) (Statement of Sotomayor, J., respecting the grant of the stay of execution) ("We recently granted certiorari to address precisely the question whether *Martinez* applies to habeas cases arising from Texas courts.") (citing *Trevino v. Thaler*, 133 S. Ct. 524 (2012). This Court should not find Mr. Murphy's claims of ineffective assistance of trail counsel to be procedurally defaulted and should instead stay the proceedings so that Mr. Murphy can present his claims to the state habeas court to determine whether his claims are procedurally defaulted. However, if this Court believes the claims of the ineffectiveness of trial counsel raised in Mr. Murphy's Petition for a Writ of Habeas Corpus are procedurally defaulted, it should suspend proceedings pending the Supreme Court's decision in *Trevino v. Thaler*.

## I.      Mr. Murphy's claims of ineffectiveness of trial counsel are substantial.

Mr. Murphy was prejudiced at both stages of trial by counsel's failure to seek a change of venue. The media coverage of the prison escape and manhunt, the Oshman's robbery and Aubrey Hawkins' murder, the subsequent capture, and the trial of Mr. Murphy's co-defendants was not merely a dry recitation of the underlying facts. Rather, the news reports contained highly inflammatory information about these events in general and Mr. Murphy in particular. Respondent continues to ignore the fact that the trial court entered findings that "[t]here has been extensive media coverage of this case throughout the initial investigation, arrest, and grand jury proceedings" and that "[t]here has been extensive news coverage concerning the events surrounding the commission of this offense and possible extraneous offenses occurring both before and after the time of the

offense alleged in this case." *See* Dkt. 45, at 15-16.  The trial court feared that "the statements made to, and published by, the press [posed] a serious and imminent threat to" Mr. Murphy's right to be tried by a fair and impartial jury. *Id.*  The fact that the trial court granted co-defendant Michael Rodriguez's motion for a change of venue is fatal to Respondent's assertion that there was no basis for a change of venue motion.  Mr. Murphy's claim that he was prejudiced by trial counsel's failure to seek a change of venue is not meritless and without basis as Respondent argues; it is substantial.

Similarly substantial is Mr. Murphy's claim that he was prejudiced by counsel's severely deficient performance during the punishment phase of his trial.  Trial counsel's own expert witness testified at trial that Mr. Murphy is a "very dangerous inmate."  It was objectively unreasonable for trial counsel to have called this expert.  Dkt. 45, at 17-19. Trial counsel did not hire a mitigation investigator until two weeks after voir dire had begun.  Dkt. 45, at 19.  Consequently, trial counsel did not learn about the true depth of the neglect and abuse Mr. Murphy experienced as a child that would have been discovered had trial counsel performed an adequate mitigation investigation.  *See* Dkt. 45, at 23-24.  The shoddy mitigation investigation also failed to discover good character evidence that could have been presented to the jury.  Dkt. 45, at 24.  The mitigation evidence subsequently discovered by undersigned counsel might well have influenced the jury's appraisal of Mr. Murphy's moral culpability.  Dkt. 45, at 20.  These errors combined with counsel's failure to develop evidence that he suffers from post-traumatic stress disorder, failure to object to the State's improper punishment argument and failures during voir dire harmed Mr. Murphy; but for these errors, the jury might well have answered the special issues differently.  *See* Dkt. 45, at 25-40.  Mr. Murphy's claim that

he was prejudiced by his trial counsel's deficient performance during the punishment phase of his trial is substantial.

## II.     Mr. Murphy's state habeas counsel was ineffective.

In determining whether state habeas counsel was ineffective in failing to discover and present claims that trial counsel was ineffective and in fact failing to discover and present a single cognizable claim, this Court should apply the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, the defendant first "must show that counsel's representation fell below an objective standard of reasonableness," which must be judged under "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).   In an evaluating a claim that counsel failed to adequately investigate, *Strickland* states "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." *Id.* at 691.   Second, the defendant must satisfy the prejudice requirement by showing there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The American Bar Association's revised *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, published in 2003, articulate professional norms for capital defense counsel.   Am. Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (rev. ed. 2003) [hereinafter ABA Guidelines].   The Supreme Court has long referred to the ABA's guidelines as "guides to determining what [performance] is reasonable." *Wiggins v.*

*Smith*, 539 U.S. 510, 524 (2003) (quoting *Strickland*, 466 U.S. at 688).  The State Bar of Texas has likewise issued guidelines that "articulate the statewide standard of practice for the defense of capital cases" in Texas.  State Bar of Texas, *Guidelines and Standards for Texas Capital Counsel* (2006) [hereinafter SBOT Guidelines].

Professional standards in place during Mr. Murphy's state habeas proceedings unequivocally required counsel at all stages, including post-conviction, "to conduct a thorough and independent investigation relating to the issues of both guilt and penalty." ABA Guidelines, Guideline 10.7A.  This investigation was to include:

(1) Medical history (including hospitalizations, mental and physical illness or injury, alcohol and drug use, pre-natal and birth trauma, malnutrition, developmental delays, and neurological damage);

(2) Family and social history (including physical, sexual or emotional abuse; family history of mental illness, cognitive impairments, substance abuse, or domestic violence; poverty, familial instability, neighborhood environment, and peer influence); other traumatic events such as exposure to criminal violence, the loss of a loved one, or a natural disaster; experiences of racism or other social or ethnic bias; cultural or religious influences; failures of government or social intervention (e.g., failure to intervene or provide necessary services, placement in poor quality and foster care or juvenile detention facilities); [and]

ABA Guidelines, Commentary to Guideline 10.7; *see also* ABA Guidelines, Commentary to Guideline 10.15.1 ("collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation in accordance with Guideline 10.7").  Counsel also has a duty to "maintain copies of media reports about the case for various purposes, including to support a motion for a change of venue…."  ABA Guidelines, Commentary to Guideline 10.7.

The Texas Criminal Appellate Manual, published in 1996, extolled the necessity of investigation in state post-conviction.

> **The Need for Investigation**.- Facts outside the record are critical to a successful writ application.   Those facts must be sought out through investigation.   The investigation required of habeas counsel is more extensive that that required of trial counsel.   Because of the nature of the habeas claims, habeas counsel must investigate not only the client's background and the facts that gave rise to the offense, but also the investigation by police and defense counsel and the actions of the jury.   There is no quick and easy way to do this and counsel will almost certainly need the help of a trained investigator to do an efficient and complete job....

State Bar of Texas, Texas Criminal Appellate Manual 31 (1996).

The manual continues, instructing counsel to interview the client's family members.

> **Interview your client's family members.**   They may shed light on mitigating evidence that was not presented at trial, or guilt/innocence phase evidence that was suggested to trial counsel, but not presented.   They will certainly have things to tell you about your client's background that you can get nowhere else that could contribute substantially to the development of claims concerning mental disorders, mental limitations, or drug abuse.

*Id*. at 33-34.

State habeas counsel is also required to assemble a team that includes person who can detect whether the client suffers from conditions such as post-traumatic stress disorder.  ABA Guidelines, Guidelines 1.1(B), Commentary to Guideline 4.1.

The State Bar of Texas Guidelines and Standards for Texas Capital Counsel also make clear the requirement of thorough extra-record investigation in habeas proceedings warning counsel against treating the proceeding like a "second direct appeal."

> Habeas corpus counsel must understand that the state habeas corpus proceeding is not a second direct appeal.   Direct appeal-like, record-based claims are not cognizable in state habeas corpus

and **can be fatal to the capital client**.  Counsel should not accept an appointment if he or she is not prepared to undertake the comprehensive extra-record investigation that habeas corpus demands.

SBOT Guidelines, Guideline 12.2(B)(1)(a) (2006); *see also* Dkt. 45, Exhibit 1, at 3-4 (trial court informing Mr. Murphy of habeas counsel's duties after calling a hearing because "had some questions about what work was done or not done").  Moreover, claims relying on extra-record evidence – as do both of Mr. Murphy's claims that his trial counsel was ineffective – can only be brought in habeas proceedings.

Despite these well-established norms, state habeas counsel's performance was grossly deficient.  He failed to conduct any investigation into Mr. Murphy's background.  The voucher submitted by state habeas counsel reveals that he made no attempts to interview any member of Mr. Murphy's, gather any records, employ any expert trained to detect post-traumatic stress disorder; it reveals his work was completely devoid of any extra-record investigation.    Dkt. 35, at Exhibit 2.   State habeas counsel's failure to perform any investigation was reflected in the state habeas application filed.  State habeas counsel, indeed, treated the proceeding like a "second direct appeal" and raised only record-based claims.   The application was only forty pages long and contained no cognizable claims.  *See* Dkt. 35, at Exhibit 1; Exhibit 1 (Findings of Fact and Conclusions of Law), at paras. 15, 89.

No evidentiary hearing was requested or held.  *See Ex parte Murphy*, No. WR-63,549-01 (Tex. Crim. App. July 1, 2009); Dkt. 35, at Exhibit 1.  On July 1, 2009, the CCA adopted the trial court's findings of fact and conclusions of law and denied relief.  *Ex parte Murphy*, No. WR-63,549-01 (Tex. Crim. App. July 1, 2009).    The   horrific details of Mr. Murphy's childhood and good character evidence contained in the petition

filed by undersigned counsel, as well as the opportunity to seek a remedy for trial counsel's deficient performance, were readily available to Mr. Murphy's state habeas counsel.  However, instead of conducting a thorough investigation into Mr. Murphy's background, state habeas counsel treated the proceeding like a second direct appeal, and squandered his opportunity to present his claims of ineffective assistance of counsel to the state habeas court.

There is no doubt that Mr. Murphy was prejudiced by state habeas counsel's failures.  Because he conducted no extra-record investigation, counsel failed to present any cognizable claims to the state habeas court.  He did not simply neglect to include one or two claims.  He failed to raise any cognizable claims at all.  If this Court finds that Mr. Murphy's claims of ineffective assistance of trial counsel are defaulted, he would be even further prejudiced because state habeas counsel's failures would have resulted in his being unable to raise these in a federal court without the equitable doctrine announced in *Martinez* that the ineffectiveness of state habeas counsel can serve as cause to excuse the default.  Because these claims are substantial, there is a reasonable probability that the outcome of his habeas proceedings would have been different had counsel raised these claims.

III.    **This Court should not find that Mr. Murphy's claims are procedurally defaulted.**

Although Mr. Murphy's substantial claims of ineffectiveness of trial counsel are unexhausted, this Court should not find them to be procedurally defaulted.  The doctrines of exhaustion and procedural default are not co-extensive.  Exhaustion ensures that state courts are provided with an opportunity to correct federal constitutional errors marring state convictions before the claims are presented to federal courts.  *See Rose v. Lundy*,

455 U.S. 509, 518 (1982).   In accordance with this principle, Congress has prohibited federal courts from granting habeas relief when the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented."   28 U.S.C. § 2254(c).

The procedural default doctrine's underpinnings are similar to those of the exhaustion doctrine:   it is grounded in respect for the State's interest in requiring petitioners to adhere to its procedural requirements for raising constitutional violations. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).   Procedural default generally occurs in one of two circumstances.   First, when a claim has been exhausted in the state courts, the claim may nevertheless be procedurally defaulted if the state court denied relief expressly relying on a state procedural rule that is both independent of the federal claim and adequate to support the decision.   *Id.* at 729.   Second, a petitioner's claim may be procedurally defaulted when the claim is unexhausted and "the court to which he would be required to return [to exhaust the federal claim] … would now find the claim procedurally barred."   *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).   However, unless it is "entirely clear" that the state court would apply an independent and adequate procedural bar to petitioner's claim, "the State should be allowed to make the procedural, *vel non*, determination."   *Wilder v. Cockrell*, 274 F.3d 255, 262 (5th Cir. 2001).

It is not at all "entirely clear" that Mr. Murphy's claims would be procedurally barred if this Court stayed proceedings to allow him to return to the Court of Criminal Appeals.   The CCA has recently acknowledged that there are judicially-created exceptions to Texas' procedural bar to successive petitions. *See, e.g.*, *Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App. 2007); *Ex parte Granados*, No. WR-51,135-01 (Tex. Crim.

9

App. 2007) (suggesting the existence of equitable exceptions to the Section 5 procedural bar but finding that Granados has not raised any meritorious claims) (not designated for publication); *Ex parte Moreno*, No. WR-25,897-01 (Tex. Crim. App. 2007) (judicial order – not designated for publication).   While Mr. Murphy's earlier reliance on *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007) has been impacted by subsequent decisions, the question of whether poor state habeas representation will open the door to a successive petition in the Court of Criminal Appeals remains an open question.

Since at least 2007, it has been acknowledged that there is a "serious and unresolved question" as to whether appointment of incompetent state habeas counsel could operate as an equitable exception to Texas' procedural bar.   *Ex parte Ruiz*, No. WR-27,328-03 (Tex. Crim. App. 2007) (Womack, J., concurring).   That question has taken on increased urgency in the wake of the exoneration of Anthony Graves, who was recently cleared of the charges for which he spent years on Texas' death row.   Notably, in 2002, the CCA invoked the procedural bar in denying Graves' state habeas successor raising the now indisputably-meritorious claims that his incompetent state habeas counsel initially failed to raise.   *Ex parte Graves*, 70 S.W.3d 103 (Tex. Crim. App. 2002).   Judges Price and Holcomb have joined their colleague Judge Womack in questioning "whether we should regard a colorable claim of ineffective assistance of original habeas counsel as a newly available fact for purposes of [Texas' procedural bar]; or, failing that, whether we should recognize a claim of ineffective assistance of original habeas counsel as, at least, a non-statutory gateway for raising discrete constitution claims that would otherwise be barred under Article 11.071, Section 5."   *Ex parte Foster*, No. WR-65,799-02 (Tex. Crim. App. Dec. 30, 2010) (Price, J., dissenting) (Holcomb, J., joining dissent)

(not designated for publication).    Indeed, Judge Price has since gone even further

declaring that

> Article 11.071 [the Texas capital habeas statute] as a whole was meant to
> endow those who have been condemned to death in Texas with one last
> chance at a fair and complete review of the constitutional legitimacy of
> their conviction and punishment.   That last chance is neither fair nor
> complete when the attorney who is appointed to assist in the endeavor
> does not properly do his job.   The Court today persists in its crabbed
> interpretation of Section 5(a)(1), rejecting the notion that ineffectiveness
> of initial habeas counsel can ever constitute a newly available fact
> justifying a subsequent habeas application.   While it may be insisted that
> this interpretation is the most faithful to the black letter of the statute, a
> more forgiving construction is more consistent with the manifest
> legislative intent.   And it would assure that inmates like Anthony Graves
> do not have to resort to the federal courts for habeas relief that ultimately
> leads to their exoneration.   Just because we are judges does not mean we
> have to leave our humanity in the robing room.

*Ex parte Foster*, No.  WR-65,799-02 (Tex.  Crim.  App.  Jan.10,  2011) (Price,  J.,

dissenting).

Moreover, a document that does "not contain sufficient specific facts that, if

proven to be true, might entitle the applicant to relief" is not a proper application for a

writ of habeas corpus.  *Ex parte Medina*, 361 S.W.3d 633, 640 (Tex. Crim. App. 2011).

In *Medina*, the CCA determined that a document filed by Medina's state habeas counsel

was not in fact a proper application because the document he filed was not "a cognizable

writ application."   *Id.* at 643.   In *Medina*, because the document filed was not "a

cognizable writ application," the CCA, pursuant to Article 11.071, Section 4A(b)(3),

appointed new state habeas counsel and gave newly-appointed counsel 180 days to file a

proper application.  *Id.*

The document filed by Mr. Fishburn for Mr. Murphy was similarly not a

cognizable writ application.   Mr. Fishburn filed an error-ridden petition comprised of

eight record-based claims for relief.  Six of these eight claims challenged the sufficiency of the evidence against Mr. Murphy.  Because state habeas counsel presented the legal and factual sufficiency challenges to the same evidence as separate claims, however, every other claim was duplicative.  For instance, claim one was a challenge to the legal sufficiency of the evidence that Mr. Murphy should have anticipated the commission of the offense, while claim two was a challenge to the factual sufficiency of the same evidence.  None of these sufficiency of the evidence claims were cognizable in state habeas corpus.  Exhibit 1, at para. 15 ("Thus, the Court concludes that the sufficiency challenges Applicant raised in Grounds 1 through 6 are not cognizable on habeas review."); *see, e.g.*, *Ex parte McLain*, 869 S.W.2d 249, 350 (Tex. Crim. App. 1994) (sufficiency of the evidence arguments are not cognizable during state habeas proceedings.)

The remaining two claims raised by state habeas counsel were constitutional challenges to Texas' statutory structure permitting the death penalty for non-triggerman parties to an offense.  These claims were presented in just over four pages and were likewise not cognizable in state habeas proceedings.  Exhibit 1, at para. 89 ("Therefore, the Court concludes that Grounds 7 & 8 should be dismissed because both are procedurally barred from habeas review."); *see, e.g.*, SBOT Guidelines, Guideline12.2(B)(1)(a) ("Habeas corpus counsel must understand that the state habeas corpus proceeding is not a second direct appeal.  Direct appeal-like, record-based claims are not cognizable in state habeas corpus and can be fatal to the capital client.").

Because it is not "entirely clear" the state habeas court would find his claims to be procedurally defaulted, this Court should not find Mr. Murphy's claims to be

procedurally defaulted and should instead stay the proceedings so that Mr. Murphy can

return to the state court so that the state court can make this procedural determination.

There exists a strong possibility that the CCA would not prohibit Mr. Murphy from

raising his IAC claims either because of an exception to Section 5 due to Mr. Fishburn's

incompetence or a finding under *Medina* that the document Mr. Fishburn filed was not in

fact a proper habeas application. Mr. Murphy requests that this Court stay the

proceedings so that he can raise his claims in the state habeas court. Only after he has

been able to do this, will this Court be able to know with certainty whether Mr. Murphy's

claims are procedurally defaulted. Only if they are procedurally defaulted would the rule

announced in *Martinez*, if made applicable to Texas cases by *Trevino*, be applicable in

Mr. Murphy's case.

**IV.**     **If this Court believes Mr. Murphy's claims of ineffectiveness of trial counsel are procedurally defaulted, it should suspend proceedings pending the Supreme Court's decision in *Trevino v. Thaler*.**

"[T]he power to stay proceedings is incidental to the power inherent in every

court to control the disposition of causes on its docket with economy of time and effort

itself, for counsel, and for litigants. How this can be done calls for exercise of judgment,

which must weigh competing interests and maintain an even balance." *Landis v. N. Am.

Co.*, 299 U.S. 248, 254-55 (1936). The Court thus has authority to issue a stay where it

properly exercises its discretion. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005); *Clinton

v. Jones*, 520 U.S. 681, 706 (1997).

Here, the State will not suffer substantial (if any) hardship, since *Trevino* will be

decided this Supreme Court term. Oral argument in *Trevino* was held almost a month

ago – on February 25. A decision will issue most likely this spring. Thus, the critical,

threshold issue of whether *Martinez* applies to Texas will be determined by the Supreme Court in a matter of weeks. The delay caused by a stay would therefore not be "immoderate in extent [or] oppressive in its consequences." *Landis*, 299 U.S. at 256. Moving forward now, without the benefit of soon-to-issue Supreme Court guidance, only to retread the same ground, will likely occasion even further delay.

In short, the Supreme Court's decision in *Trevino* will have a significant and direct impact on Mr. Murphy's case if this Court believes his claims of ineffective assistance of trial counsel are procedurally defaulted. Given these circumstances, to promote judicial economy, and to preserve the parties' resources, Mr. Murphy asks this Court to stay briefing pending resolution of *Trevino* if it believes his claims of ineffective assistance of counsel are procedurally defaulted.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Mr. Murphy prays that this Court suspend proceedings to allow him to return to state court so that the state court can make the procedural determination regarding whether his ineffective assistance of counsel claims are defaulted; if the Court finds his claims are defaulted, Mr. Murphy prays that the Court suspend proceedings pending the Supreme Court's decision in *Trevino v. Thaler*.


Respectfully submitted,

s/ David R. Dow

_____
David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
100 Law Center
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email drdow@central.uh.edu

*Counsel to Patrick Henry Murphy, Jr.*


## CERTIFICATE OF SERVICE

I certify that on March 20, 2013, a copy of the foregoing pleading was electronically served on counsel for the Respondent by filing the document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

Jeremy C. Greenwell
Office of the Texas Attorney General
Post Office Box 12548
Austin, Texas 78711
Jeremy.greenwell@oag.state.tx.us

s/ David R. Dow

_____
David R. Dow

15