IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK HENRY MURPHY, | § | |
| Petitioner, | § | |
| | § | Civil Action No. 3:09-cv-1368 |
| v. | § | (Magistrate Judge David L. Horan) |
| | § | |
| WILLIAM STEPHENS, | § | **\*  DEATH PENALTY CASE  \*** |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION TO PROCEED
EX PARTE FOR FUNDING FOR A PTSD EXPERT**

This is a federal habeas corpus proceeding brought by Petitioner Patrick
Murphy, a death-sentenced Texas inmate.   On July 18, 2014, this Court
entered an order setting an evidentiary hearing to determine (1) whether
Murphy has set forth any substantial claim of ineffective assistance of trial
counsel (IATC) in his federal habeas petition, and (2) whether any such claim
was not properly presented to the state court because of the ineffective
assistance of state habeas counsel.   Docket Entry (DE) 61.   In that order, the
Court stated that any requests for funds for assistance in preparing for the
hearing must be filed by August 5, 2014.   *Id.*   Murphy did just that,
requesting leave to file an ex parte application for the services of a psychiatrist
with expertise in post traumatic stress disorder.   DE 62.   But as discussed
below, he fails to demonstrate a need for confidentiality or that the requested
funding is reasonably necessary to litigate the above-mentioned issues.   As
such, both of his requests should be denied.

## ARGUMENT

### I.   The Director Opposes Murphy's Request for Leave to File Ex Parte.

As a threshold matter, the Director is opposed to granting Murphy the right to proceed ex parte.   To request the assignment of funds in an ex parte proceeding, the applicant must make a proper showing "concerning the need for confidentiality." 18 U.S.C. § 3599(f).   District courts in this circuit have articulated the procedure to be followed when a habeas petitioner seeks leave to proceed ex parte under 18 U.S.C. § 3599:

> First, Petitioner must file and serve a concise motion seeking authorization for investigative or expert assistance that includes a short, case-specific statement of the need for confidentiality. This statement of the need for confidentiality must generically identify the type of services needed and the broad issue or topic (for example, innocence) for which the services are needed. Second, Petitioner must simultaneously file ex parte and under seal his detailed application for authorization for the investigator or expert.   In this application, Petitioner must estimate the amount of fees or expenses likely to be incurred and provide factual support for the funding request.   The motion--but not the application with supporting materials--must be served upon Respondent.

*Shields v. Johnson*, 48 F.Supp.2d 719, 720 (S.D. Tex. 1999) (citing *Patrick v. Johnson*, 37 F.Supp.2d 815, 816 (N.D. Tex. 1999) (citing *Dowthitt v. Johnson*, No. H-98-3282 (S.D. Tex. Dec. 2, 1998))); *see also Graves v. Johnson*, 101 F.Supp.2d 496, 499 (S.D. Tex. 2000).

Congress does not condone ex parte proceedings on federal habeas review without requiring the petitioner to make a "proper showing . . . concerning the need for confidentiality."   18 U.S.C. § 3599(f).   Despite extensive discussion of the propriety of mandating a threshold showing of the

need for confidentiality before the petitioner may communicate with the court ex parte, Congress included the threshold language in the statute.   The Fifth Circuit has also noted Congress's deliberate weakening of the ex parte standard with the enactment of the AEDPA.   *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997).   Before AEDPA, the statute *required* the courts to allow an ex parte communication once the petitioner met the threshold showing of a need for confidentiality; since AEDPA, the courts *may* allow an ex parte communication if the petitioner meets the threshold showing.   *Id.* at 502 ("In 1996, the AEDPA section 108 changed 848(q)(9), removing the ex parte proceeding requirement and changing the mandatory 'shall' language to the discretionary 'may.'").   The statute now allows the district court discretion to grant or deny an ex parte communication even if the petitioner meets the threshold showing of the need for confidentiality.   Thus, even if Murphy met a threshold showing, which he has not, this Court need not allow an ex parte communication.

While it appears Murphy has attempted to comply with the procedure outlined in *Shields*, he nevertheless does not set forth a *case-specific* showing of need for confidentiality in his request for assistance under § 3599.   In only one sentence, he identifies generically the services needed and the broad issue or topic for which the services would be valuable—the services of a psychiatrist with expertise in PTSD to assist him in developing an IATC claim already before this Court.   DE 62 at 2.   He then states as his reason for requesting to proceed ex parte a general "need to protect confidential attorney work product."   *Id.*   But this is hardly a case-specific reason for confidentiality.

Rather, both statements fail to offer *any* justification for confidentiality beyond those which would arguably apply to *all* indigent capital habeas petitioners. This matter is thus indistinguishable from the issue in *Patrick*, in which the district court denied the petitioner's request for leave to proceed *ex parte* where the petitioner "assert[ed] only a generic need for confidentiality which arises in virtually all capital cases." 37 F.Supp.2d at 816; *see Jones v. Stephens*, 4:05-cv-638, 2014 WL 2446116, at *2 (N.D. Tex. May 30, 2014 (rejecting the argument that the need to protect confidential work product establishes a case-specific need).

Further, the Director has an interest in responding to an inmate-petitioner's request to proceed *ex parte* concerning his requests for discovery and expert assistance, as the Director is often in the best position to identify procedural issues that could bar or eliminate the need for factual development.[1] Moreover, as the district court in *Jones* observed, funding motions "have a significant potential for abuse when [the Director] is denied the opportunity to address the accuracy of the assertions supporting them." *Jones*, 2014 WL 2446116, at *1 (citing *Crawford v. Washington*, 541 U.S. 36, 49 (2004)). As explained below, Murphy is not entitled to funding to further develop his fully-briefed IATC claim, as he simply fails to articulate that such funds are reasonably necessary for the upcoming evidentiary hearing.

---

[1]     The issue is not simply one of how federal funds are allocated, but rather whether and to what extent state prisoners are entitled to factual development of their claims on federal habeas corpus review.

## II.    Murphy is not entitled to funding for expert assistance.

The decision to appoint an investigator or expert is within the discretion of the district court.    *Hill v. Johnson*, 201 F.3d 481, 487 (5th Cir. 2000); *Fuller*, 114 F.3d at 502.    But a petitioner seeking such an appointment must make a threshold showing that it is "reasonably necessary."    18 U.S.C. § 3599(f); *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000).[2]    The Fifth Circuit has construed "reasonably necessary" to mean that a "substantial need" for the requested services must be demonstrated.    *Riley v. Dretke*, 363 F.3d 302, 307 (5th Cir. 2004) (quoting *Clark*, 202 F.3d at 768).    In determining what is reasonably necessary, courts have looked at whether the proposed services can be tied to viable claims of constitutional violations.[3]    *Fuller*, 114 F.3d at 502. For this reason, a denial of funding has been upheld when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence.    *Woodward v. Epps*, 580 F.3d 318, 334 (5th

------

[2]    The statute also requires a showing of indigence.    There is no question that Murphy is indigent.

[3]    Even if a petitioner can establish a nexus between the proposed services and a viable constitutional violation, this Court has refused to sanction funding "where the claims or proposed claims are procedurally barred or where the claim itself would be futile." *Bradford v. Johnson*, 162 F.Supp.2d 578, 580 (N.D. Tex. 2001) (citing *Fuller*, 114 F.3d at 502).    Further, if the services are only sought to go on a "fishing expedition," funding has been denied.    *Patrick v. Johnson*, 48 F.Supp.2d 646, 647 (N.D. Tex. 1999) (statute not intended to provide funds to investigate claims "founded on mere suspicion and surmise").

Cir. 2009); *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005) (citations omitted).[4]

Here, it is clear from the record currently before the Court that Murphy's IATC claim is wholly without merit.  As discussed thoroughly in the Director's answer, DE 40 at 82-85, Murphy fails to show that his trial counsel's performance was deficient or that he was prejudiced by any presumed deficiency as required under the *Strickland v. Washington*[5] standard.  *Id.* This means that Murphy is seeking funds that would ultimately help support a meritless claim, something the Fifth Circuit has also determined warranted the denial of funding.  *Woodward*, 580 F.3d at 334; *Smith*, 422 F.3d at 288 (citations omitted).

Furthermore, aside from baldly asserting the need for a PTSD expert and citing the ABA's guidelines as to what is expected of counsel in post-conviction proceedings, DE 62 at 2, Murphy fails to show why funding for such an expert is necessary at this late juncture.  This is for good reason—counsel was already given a significant amount of time and money for "developing, preparing, and litigating" this IATC claim.  *Id.*  Murphy was

---

4        It is uncontested that the IATC claim that Murphy now wishes to further develop was not presented in his state court proceedings.  As a result, the claim is procedurally barred under 28 U.S.C. § 2254's prohibition against raising unexhausted claims in a federal petition.  DE 40 at 31-36; *see Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Williams v. Thaler*, 602 F.3d 291, 305-06 (5th Cir. 2010).  However, because the subject of the evidentiary hearing is whether an exception exists to excuse the procedural bar, the Director will forego an argument concerning the first reason for the denial of funding.

5        466 U.S. 668 (1984).

appointed his current attorney to assist him in his federal habeas proceedings almost five years ago, DE 3, and the docket indicates that counsel has received at least $63,000 in order to investigate and present a federal petition on Murphy's behalf.   DE 47.   And counsel did just that, filing a well-briefed petition raising five points of error (not including subparts like the IATC claim at issue here) at the end of AEDPA's one-year limitations period.   DE 18.   In support of his petition, counsel also submitted some 39 exhibits, including a declaration from a clinical psychologist explaining his opinion that Murphy evinced symptoms that are often associated with PTSD.   DE 18, Exhibit 34 It is thus facetious for Murphy to now argue that any funding is necessary to further develop this claim, as he has already been given a significant amount of time and money to do so.

Finally, as this Court noted in its Order Setting Hearing, the purpose of the upcoming evidentiary hearing is to determine, in part, whether Murphy has *already* set forth a substantial IATC claim such that it may excuse a procedural default.   DE 61 at 6.   It is not to see whether Murphy can turn his claim into a substantial one if given enough time and money.   And given the fact that Murphy has already had the benefit of two psychologists—one to assist trial counsel and one to assist federal habeas counsel—it is hard to imagine that he could.   As such, because Murphy cannot demonstrate a reasonable necessity for additional funding that would only go to support what are clearly meritless allegations, his request should be denied.   *Woodward*, 580 F.3d at 334.

III. *Martinez* **has no application to funding.**

As discussed in previous pleadings, DE 59, the end result of the Supreme Court's decisions in *Martinez v. Ryan*[6] and *Trevino v. Thaler*[7] was that Texas death-sentenced inmates can assert the ineffective assistance of state habeas counsel to overcome a procedural bar applied to claims of ineffective assistance of trial counsel.   This is a limited and equitable—rather than constitutional—exception that protects a petitioner from forfeiting completely an IATC claim if the petitioner's state habeas counsel failed to raise the claim in state court and was ineffective for doing so.   *Trevino*, 133 S. Ct. at 1921;   *Martinez* 132 S. Ct. at 1320.   As the Court explained in *Trevino*, it was concerned that the "failure [of a federal court] to consider a lawyer's 'ineffectiveness' during an initial-review collateral proceeding as a potential 'cause' for excusing a procedural default will deprive the defendant of any opportunity *at all* for review of an ineffective-assistance-of-trial-counsel claim."   133 S. Ct. at 1921 (emphasis added); *see also Martinez* 132 S. Ct. at 1316.   But the Supreme Court created the *Martinez* exception to address that concern and that concern *only*.   132 S. Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here.").

In its limited holding, the *Martinez* Court described the only consequence of a petitioner establishing cause and prejudice for a procedural default:   "A finding of cause and prejudice does not entitle the prisoner to

---

6      132 S. Ct. 1309 (2012).

7      133 S. Ct. 1911 (2013).

habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 132 S. Ct. at 1320. In other words, the *only remedy* offered is federal merits review of the otherwise procedurally defaulted IATC claims. *Id.*; *see also Trevino*, 133 S. Ct. at 1921. Nowhere in either opinion did the Court even mention funding or 18 U.S.C. § 3599, much less hold that the limited equitable exception it was creating somehow also required investigative funding or altered the mechanism for evaluating whether such funds were reasonably necessary. For this reason, the Fifth Circuit has recently concluded that *Martinez* "has no bearing on the district court's decision to deny funding." *Crutsinger v. Stephens*, __ Fed.Appx.__, 2014 WL 3805464 at 8 (5th Cir. August 4, 2014) (finding that *Martinez* "does not mandate pre-petition funding, nor does it alter our rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review.").

Furthermore, any argument that *Martinez* now mandates the granting of funds assumes that the Supreme Court silently overruled Congress's decision to allocate such decisions to the discretion of the district courts. Through its passage of AEDPA in 1996, Congress indicated its intent that funding not be made mandatory (in former 21 U.S.C. § 848(q)) by "changing the mandatory 'shall' language to the discretionary 'may.'" AEDPA § 108, Pub. L. No. 104-32, 110 Stat. 1226 (1996); *Smith*, 422 F.3d at 289. The clear language of 18 U.S.C. § 3599(f) now states that upon a finding that such ancillary services are reasonably necessary, the district court *may* authorize

9

the granting of funds.    This change from "shall" to "may" indicates Congress's desire that discretion be given to the district courts to authorize or deny funding regardless of whether the reasonable necessity language is complied with.    *Smith*, 422 F.3d at 289.

Because *Martinez* said nothing about whether ineffective state habeas representation would entitle a petitioner to funding in federal court—only whether such representation could possibly establish cause to excuse a procedural default in federal court—any reliance on it would be misplaced. To hold otherwise would reverse Congress's decision to place the authorization of pre-petition funding at the discretion of the district courts, and would require the allocation of funding to every petitioner with an unexhausted IATC claim, regardless of whether the claim has any merit or of the reasons for the lack of exhaustion.    Murphy's motion for funding to further develop his defaulted IATC claims should therefore be denied.

## CONCLUSION

For the foregoing reasons, both Murphy's request to proceed ex parte and his request for funding should be denied.


Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


_____/s/ Jeremy Greenwell_____
JEREMY C. GREENWELL*
Assistant Attorney General
State Bar No. 24038926


P.O. Box 12548, Capitol Station
Austin, Texas   78711-2548
(512) 936-1600
(512) 320-8132 (Fax)
E-mail: jeremy.greenwell@oag.state.tx.us

*Lead Counsel                     ATTORNEYS FOR RESPONDENT

11

## CERTIFICATE OF SERVICE

I certify that on the 11th day of August, 2014, a true and correct copy of the above pleading was electronically served to the following counsel for Murphy by filing the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

DAVID R. DOW
University of Houston Law Center
100 Law Center, Suite 114-BLB
Houston, TX 77004-6060
ddow@uh.edu


    /s/ Jeremy Greenwell
JEREMY C. GREENWELL
Assistant Attorney General

12