IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK HENRY MURPHY,<br>Petitioner, | §<br>§ | |
| | § | Civil Action No. 3:09-cv-1368 |
| v. | § | (Magistrate Judge David L. Horan) |
| | § | |
| WILLIAM STEPHENS,<br>Director, Texas Department<br>of Criminal Justice,<br>Correctional Institutions Division,<br>Respondent. | §<br>§<br>§<br>§<br>§ | *** DEATH PENALTY CASE *** |

**RESPONDENT'S BRIEF IN SUPPORT OF THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is a federal habeas corpus proceeding brought by Petitioner Patrick Murphy, a death-sentenced Texas inmate. In July 2010, Murphy filed a petition for federal habeas corpus relief in this Court raising, among other things, several ineffective-assistance-of-trial-counsel (IATC) claims alleging that his trial counsel failed to adequately represent him before trial, during the guilt-innocence phase, and at the punishment phase of his trial. Docket Entry (DE) 18 at 26-96. The Director responded, in part, by demonstrating that Murphy's IATC allegations were all unexhausted and procedurally defaulted as well as completely without merit. DE 40 at 31-36, 55-101.

Several years after the filing of the Director's answer, the Supreme Court issued its opinion in *Martinez v. Ryan*[1] creating, for the first time, a limited exception to the procedural bar of IATC claims. Specifically, the Court found

1 132 S. Ct. 1309 (2012).

that where IATC claims must be raised in an initial-review collateral proceeding, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320. The Court's later decision in *Trevino v. Thaler*[2] found that this limited equitable exception generally applies to Texas capital cases.

In light of these decisions, this Court recently held an evidentiary hearing to determine the applicability of *Martinez* to this case by answering two questions: (1) whether Murphy has set forth any substantial IATC claim, and (2) whether any such claim was not properly presented to the state court because of the ineffective assistance of state habeas counsel. DE 61 at 6; DE 95 at 1; DE 99. Following this hearing the Court ordered the parties to submit proposed findings of fact and conclusions of law, as well as a supplemental brief supporting those findings. DE 98. The Director's proposed findings and conclusions are being filed concurrently with this supplemental brief. DE 106. And as discussed below, the evidentiary hearing clearly demonstrated that Murphy is not entitled to the equitable benefits announced in *Martinez* and *Trevino*, as he fails to establish either prong of the *Martinez* test that would enable him to avoid the procedural default of his claims.

---

2 133 S. Ct. 1911 (2013).

## I. The *Martinez* standard.

In *Martinez*, the Supreme Court found for the first time an equitable exception to the unqualified statement previously asserted in *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991), that ineffective assistance by an attorney in a postconviction proceeding does not qualify as cause to excuse a procedural default. 132 S. Ct. at 1315. The Court's decision in *Trevino* then found that this limited equitable exception generally applies to Texas capital cases. 133 S. Ct. at 1915. But while qualifying *Coleman* by recognizing a narrow exception to the rule barring ineffective assistance of state habeas counsel as "cause," the Court repeatedly stated that its holding is limited and that "the rule of *Coleman* still governs in all but the limited circumstances recognized here." *Martinez*, 132 S. Ct. at 1320-21.

To overcome a procedural default, a petitioner must demonstrate "that the underlying [] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318-19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). When faced with the question of whether there is cause for an apparent default, the Court found that "a State may answer that the [IATC] claim is insubstantial, *i.e.*, it does not have *any merit* or that it is wholly without factual support, *or* that the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 1319 (emphasis added). In other words, in order for Murphy to excuse a procedural default under the *Martinez/Trevino* doctrine, he must demonstrate that (1) the underlying IATC claim was substantial, meaning that he must show

that the claim has "some merit," and (2) the claim was not presented to the state court because the petitioner had no state habeas counsel or because his state habeas counsel was ineffective. *See Preyor v. Stephens*, 537 Fed. App'x 412, 421 (5th Cir. 2013)(unpublished) (citing *Martinez*, 132 S. Ct. at 1318; *Trevino*, 133 S. Ct. at 1921).

As discussed previously, Murphy raised several unexhausted IATC claims in his federal petition that are subject to the procedural default doctrine. DE 18 at 26-96.[3] Both Murphy's lead trial attorney, Brook Busbee, and his state habeas attorney, Allan Fishburn, testified at the evidentiary hearing to help the Court determine whether *any* of these claims meet the *Martinez* exception to procedural default. Yet, at the hearing Murphy focused solely on the assertion that the sentencing investigation was inadequate, foregoing any questions concerning the other procedurally defaulted allegations. Because he has made no attempt to demonstrate that the remaining allegations should benefit from the *Martinez* exception, the Director asserts that no such showing has been made and that these claims remain procedurally defaulted.[4] And as explained in more detail below, Murphy fails to establish either prong of the

---

3 Murphy faulted counsel for: (1) failing to seek a change of venue; (2) failing to conduct a reasonable sentencing investigation; (3) improperly handling the voir dire of certain jurors during jury selection; (4) eliciting damaging testimony from a defense witness during punishment; and (5) failing to object to the State's closing argument at punishment. *Id.*

4 For this reason, the proposed findings and conclusions focus exclusively on the issue discussed at the evidentiary hearing—whether counsel failed to conduct a reasonable sentencing investigation. Respondent will rely on prior briefing with regard to the remaining IATC claims.

*Martinez* analysis with regard to his allegation that trial counsel failed to conduct a reasonable sentencing investigation. As such, this claim is also procedural barred from federal habeas relief.

## II. Murphy failed to establish a substantial IATC claim.

In his federal habeas petition, Murphy argued that trial counsel failed to properly investigate and uncover evidence that could have been presented at the punishment phase of trial. DE 18 at 55-70. Specifically, Murphy faulted counsel for (1) failing to timely retain a mitigation specialist; and (2) failing to adequately investigate and present evidence that he suffered from Post-Traumatic Stress Disorder (PTSD). *Id.* According to Murphy, his defense at the punishment phase of trial was "hastily thrown together at the eleventh hour," and as a result counsel failed to uncover evidence that would have been discovered had a proper "mitigation specialist" been appointed earlier. *Id.* For instance, Murphy believes that "[e]ven though there were numerous stressors indicating that [he] might suffer from PTSD, trial counsel ignored these indicators and failed to pursue a comprehensive mitigation investigation." *Id.* at 67. But as the testimony of trial counsel, Ms. Busbee, at the evidentiary hearing demonstrated, nothing could be further from the truth.

### A. The *Strickland* standard.

Under *Strickland v. Washington*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates that (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. 668, 687-88, 690 (1984). In determining the merits of an

alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Id.* at 687-89. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Further, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.[5] In order to establish that he has sustained prejudice, Murphy "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Loyd v. Whitley*, 977 F.2d 149, 159 (5th Cir. 1992). Because this showing of prejudice must be "rather appreciable," a mere

---

5 Because Murphy must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697; *Ramirez v. Dretke*, 398 F.3d 691, 697 (5th Cir. 2005).

allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). As the Supreme Court recently explained: "[T]he question in conducting *Strickland*'s prejudice analysis is *not* whether a court can be certain [that] counsel's performance had no effect on the outcome or whether it is possible [that] a reasonable doubt might have been established if counsel [had] acted differently." *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011) (emphasis added). Rather, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. As the Court previously noted, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

With regard to failure-to-investigate claims such as the one at issue here, trial counsel may be constitutionally ineffective for failing to exercise reasonable professional judgment in investigating a defendant's personal history that would be relevant to evaluating his moral culpability. *Riley v. Cockrell*, 339 F.3d 308, 316 (5th Cir. 2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 522 (2003)). However, counsel is not *per se* deficient for failing to present such evidence. *Wiggins*, 539 U.S. at 522; *Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999). Counsel's decision not to investigate a particular matter "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins*, 539 U.S. at 522. A "conscious and informed decision on trial tactics and strategy is not a

permissible basis for a claim of ineffective assistance of counsel unless the strategy was so poor that it robbed the defendant of any opportunity to get a fair trial." *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

Finally, "[c]ounsel's decision to pursue one course rather than another is not to be judged in hindsight," and the fact that a particular strategy may prove to be unsuccessful does not by itself establish ineffective assistance. *Gray v. Lucas,* 677 F.2d 1086, 1094 (5th Cir. 1982). Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland,* 466 U.S. at 699. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.*

**B. Counsel's investigation and performance at the punishment phase was anything but deficient.**

Lead counsel on Murphy's defense team was Brook Busbee, an eminently qualified attorney with over thirty-five years of experience in criminal defense and part-time adjunct professor at SMU Law. Evidentiary Hearing Transcript (Transcript) at 5-8, 43-45. Ms. Busbee testified that she began her mitigation investigation at least a year prior to Murphy's November 2003 trial, having obtained and reviewed numerous records and interviewed several family members. Transcript at 52-54, 60. To aid her in the investigation, Ms. Busbee immediately hired a private investigator upon her appointment to help her find and interview family members and potential mitigation witnesses. *Id.* at 24-

25, 51. She also had the assistance of her co-counsel Juan Sanchez and a separate appellate attorney by the name of John Tatum, and later had the help of an expert in prison classification to assist her in the punishment phase investigation. *Id.* at 9-11, 53. Around September 2003—some two months prior to Murphy's trial—counsel then hired Dr. Mark Vigen, an experienced forensic psychologist, as a "mitigation expert" to further assist her in investigating and forming a mitigation strategy. *Id.* at 18-23, 51-52, 67-69.

With the aid of these individuals, Ms. Busbee was able to locate and interview numerous potential witnesses, including Murphy's father, brother, sister, aunt, cousin, at least one ex-girlfriend, and his ex-wife. *Id.* at 15, 26-27, 53-54, 65-66. Counsel also had Murphy tested by at least three different experts: (1) Dr. Jay Crowder, who conducted medical imaging tests to determine if Murphy suffered any brain damage; (2) Dr. Lisa Clayton, a forensic psychiatrist, who conducted a psychological evaluation of Murphy; and (3) Dr. Laura Lacritz, a neuro-psychologist, who conducted neurological testing on Murphy. *Id.* at 22, 25, 33, 47, 53, 56-57. Dr. Vigen also conducted his own psychological evaluation of Murphy prior to testifying as a witness at the punishment phase. 48 RR 136-233.

Murphy faults counsel for not uncovering evidence that he suffered from PTSD as a result of trauma he has suffered throughout his life. DE 18 at 55-70. At the evidentiary hearing, Ms. Busbee testified that PTSD is something that she looked for in conducting an investigation, as she believed that such a diagnosis would be helpful in explaining the defendant's behavior to a jury and

eliciting sympathy for his traumatic past. Transcript at 34-36, 40, 57. Interestingly, none of the experts who evaluated Murphy prior to his trial diagnosed him as suffering from PTSD. *Id.* at 34-36, 40, 55-57; DE 88-1. Indeed, the only person to date to diagnose Murphy as suffering from PTSD is Dr. John Fabian, a forensic psychologist obtained by Murphy just prior to the instant evidentiary hearing.[6] DE 84-1. But this diagnosis has been rebutted by the report of Dr. Timothy Proctor, a forensic psychologist obtained solely to review the findings contained in Dr. Fabian's report. DE 88-1. According to Dr. Proctor, Dr. Fabian's use of leading questions as opposed to open-ended ones during testing, in addition to Murphy's over-reporting (and exaggeration) of symptoms, are some of the main reasons that Dr. Fabian's diagnosis is incorrect. *Id.* at 8-10. Thus, there still remains no credible evidence that Murphy suffers from PTSD, much less that counsel should have discovered such a diagnosis despite the fact that four different experts failed to make such a finding.

As the Supreme Court has previously stated, "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins*, 539 U.S. at 533. And counsel's decision not to investigate a particular matter "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 522.

---

6 In making this determination, Dr. Fabian cited the same sources of trauma recognized by Dr. Vigen in his mitigation report to Ms. Busbee. DE 84-1 at 17; Transcript at 32.

Despite that fact that no credible evidence exists to support a diagnosis of PTSD, Murphy faults his trial counsel for waiting too long to hire an expert who could have made such a determination. But counsel is not required to hunt for a particular diagnosis—only to conduct a "reasonable investigation" or to make "a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 699. As demonstrated by Ms. Busbee at the evidentiary hearing, she did both in this case. Consequently, Murphy cannot show that her investigation was deficient, or that the instant IATC claim is anything but substantial.

### C. The mitigation strategy ultimately chosen by counsel was reasonable.

As a result of the lengthy investigation conducted with the assistance of her team, counsel chose a strategy to portray Murphy as a victim of a terrible childhood, which resulted in several mental health issues, in order to gain sympathy from the jury. Transcript at 23, 28-30, 34-35, 54, 59. To this end, counsel presented the testimony of Murphy's aunt (Linda Goodman) and father (Patrick Murphy, Sr.) to give the jury a sense of Murphy's tumultuous childhood. 47 RR 68-117; 48 RR 99-124. Counsel also attempted to demonstrate to the jury that Murphy would not constitute a danger to society if he was given a life sentence by portraying him as less culpable than the other Texas Seven because he was a follower who did not directly participate in any of the violent attacks that occurred both during and after the escape. Transcript at 23, 28-30, 34-35, 54, 59. To do so, counsel presented the testimony of George Rivas, the leader of the Texas Seven. 48 RR 4-99. The testimony of the

defense's prison classification expert, S.O. Woods, was also designed to demonstrate that Murphy would not constitute a future danger if sentenced to life due to the fact that he would likely spend his sentence in maximum security. Transcript at 60-63; 47 RR 118-75. Finally, counsel presented Dr. Vigen as a final witness at the punishment phase to bolster the above strategy.[7] 48 RR 136-228.

Under the circumstances, counsel's strategic decision to present the jury with this mitigation defense, chosen after much investigation and deliberation, is imminently reasonable. *Smith,* 311 F.3d at 668 (holding that a "conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel unless the strategy was so poor that it robbed the defendant of any opportunity to get a fair trial"). Moreover, because the strategic choices were made after such a thorough investigation, they are now virtually unchallengeable in federal habeas. *Strickland,* 466 U.S. at 697, 699. Although Murphy chides counsel for failing to conduct the investigation in a way that he, in hindsight, would have conducted the

7 After interviewing Murphy and his family, doctors, prison records and police reports, Dr. Vigen testified as to his five opinions about Murphy's mental condition: (1) Murphy suffered from several mental disorders, including a sexual disorder, and he exhibited narcissistic and borderline-antisocial personality traits; (2) these were the result of a long and severe developmental history of family dysfunction, including sexual abuse; (3) given his personality traits, Murphy was more of a follower than a leader in the escape and the subsequent robberies and murder; (4) Murphy constitutes a "low risk of future violence" because he has not exhibited any violent tendencies for sixteen years and will likely be placed in administrative segregation; and (5) Murphy has potential for rehabilitation and spiritual conversion. 48 RR 136-228; *see also* Transcript at 38-40.

investigation and presentation of witnesses, such backward-looking hyperbole does little to establish that counsel's thorough investigation and subsequent strategy was anything but sound, and flies in the face of *Strickland*'s mandate that counsel's performance must not be judged through the distorting lens of hindsight. *Strickland*, 466 U.S. at 689; *Coble v. Quarterman*, 496 F.3d 430, 436-37 (5th Cir. 2007) (holding that a "desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review"). As a result, Murphy fails to establish that trial counsel's performance was in any way deficient.

**D. Regardless, Murphy was not prejudiced by counsel's allegedly deficient performance.**

Even if counsel's performance can somehow be considered deficient for failing to uncover and present certain evidence, no reasonable probability exists that this particular evidence would have affected the outcome of Murphy's trial. *See Strickland*, 466 U.S. at 694 (holding that a constitutional violation of a petitioner's Sixth Amendment right to counsel is not proven unless it is shown that there is a reasonable probability that counsel's deficient performance affected the outcome of the proceedings). The State's punishment evidence, along with the violent nature of the Texas Seven's escape and subsequent crime spree, was simply too overwhelming for counsel's alleged deficiency to have had any prejudicial effect on the outcome of the punishment phase. *Id.* at 698 (finding no prejudice due to State's overwhelming evidence on aggravating factors supporting the death penalty); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999) (finding no prejudice due to brutal facts of murder).

The jury first heard evidence about the violent nature and circumstance of the Texas Seven's escape, which was orchestrated with military-like precision. *See* DE 40 at 4-15. Several victims who got in the group's way suffered injuries that still affected them at the time of trial. *Id.* During the escape and subsequent robberies, the group threatened its victims with lethal violence, which eventually culminated in the gunning down of Officer Hawkins in a hail of gunfire. *Id.* During these robberies, Murphy acted as a lookout for the group, and by his own admission he was supposed to engage police in a firefight if they ever pursued the group. *Id.*

In addition to the violent nature of the crime spree to which Murphy was a participant, the State presented evidence of Murphy's criminal history and propensity for violence at the punishment phase. *Id.* at 15-20. The jury heard that Murphy had been arrested for burglary, and had sexually molested his younger half-sister at some point prior to his arrest. *Id.* Murphy had also sexually assaulted an old acquaintance at knife point in her apartment while her two-year-old son slept in the next room. *Id.* Murphy also left behind evidence of his violent nature after his escape, including a letter indicating that he "refused to abide by the dictates of a police state" like Texas, and a journal listing a multitude of paramilitary websites that sold weapons and body armor. *Id.*

In *Wiggins,* the Supreme Court found it noteworthy that Wiggins had very few if any aggravating factors, noting that "Wiggins does not have a record of violent conduct that could have been introduced by the State to offset this

powerful mitigating narrative." *Wiggins*, 539 U.S. at 537. As clearly demonstrated above, Murphy's was not a case where the State's evidence in support of the death penalty was "far weaker" than the mitigating evidence. *Id.* at 538. As such, any evidence of PTSD that counsel may have discovered likely would not have induced the jury to vote for a life sentence. Where the evidence of future dangerousness is overwhelming, it is virtually impossible to establish *Strickland* prejudice. *Ladd v. Cockrell,* 311 F.3d 349, 360 (5th Cir. 2002). Murphy cannot, therefore, demonstrate that relief on this claim would have been warranted even if counsel's performance could somehow be considered deficient. *Ramirez*, 398 F.3d at 697 (reiterating that both prongs of the *Strickland* test must be satisfied in order to be entitled to relief). His claim is therefore insubstantial under the *Martinez/Trevino* doctrine, and should be dismissed as procedurally defaulted.

**III. Murphy failed to establish that his state habeas counsel was ineffective.**

Even assuming that Murphy can establish that his IATC claim is not without some substance under *Martinez/Trevino* doctrine, he still would not be entitled to excuse the procedural bar of his IATC claim because he failed to demonstrate that the representation of his state habeas counsel, Allan Fishburn, was actually ineffective under the *Strickland* standard. *Martinez*, 132 S. Ct. at 1318, 1320. Mr. Fishburn is an experienced criminal defense lawyer who has handled several hundred felony murder trials at either the trial or appellate level. Transcript at 85-86. But irrespective of his qualifications, there is no evidence to indicate that Mr. Fishburn did not make a reasonable,

diligent effort to investigate potential IATC claims, much less that the petition he submitted on Murphy's behalf was somehow subpar. In fact, the record indicates quite the opposite.

In preparing Murphy's state habeas petition, Mr. Fishburn reviewed the trial and appellate records of the five previous Texas Seven defendants whose trials preceded Murphy's and conducted research into whether Murphy obtained a constitutionally fair trial. Transcript at 82. Although Mr. Fishburn stated that he conducted no formal investigation into anything that may have happened outside of the courtroom, his expense report indicated that he billed for over 300 hours of work on Murphy's petition. *Id.* at 83, 89; DE 35-2. At least fourteen of those hours were spent researching potential claims concerning trial counsel's representation. Transcript at 97-89; DE 35-2. After reviewing the records of Murphy's trial and conducting research into potential IATC claims, Mr. Fishburn determined that such a claim "wasn't there," and that in his opinion trial counsel did an excellent job. Transcript at 89. For this reason, no IATC claim was included in Murphy's state habeas petition. *Id.*

Instead, Mr. Fishburn filed a thorough state habeas petition raising a total of eight grounds for relief—albeit not including the allegation that is now at issue here. SHCR at 2-41.[8] But simply because counsel did not raise the allegations that Murphy (in hindsight) now contends he should have raised does not render counsel's assistance ineffective under *Strickland*. 466 U.S. at 689

8 "SHCR" refers to the state habeas Clerk's Record—the transcript of pleadings and documents filed with the court during Murphy's state habeas proceeding—and is followed by the relevant page numbers.

("Even the best criminal defense attorneys would not defend a particular client in the same way."); *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding appellate counsel is not ineffective merely because he fails to raise issues that his client requests him to raise); *Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").

Furthermore, Mr. Fishburn believed that there were stronger claims to be raised in the petition than an any potential IATC claim, and it is a strategic decision as an appellate attorney to weed out weaker claims. Transcript at 90; *see Jones v. Barnes*, 463 U.S. 745, 751-53 (1983) (holding appellate counsel is only constitutionally obligated to raise and brief those issues that are believed to have the best chance of success). Thus, Mr. Fishburn was clearly making a strategic decision as an appellate attorney to weed out weaker claims in favor of what he considered to be stronger ones. *Id.* at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). This is especially apparent when considering that the underlying IATC claim that was omitted completely lacks merit. *Beatty v. Stephens*, 759 F.3d 455, 466 (5th Cir. 2014) (finding that state habeas counsel could not have been ineffective for failing to raise a meritless claim); *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013) (same). Thus, Murphy's inability to demonstrate his habeas counsel's ineffectiveness under

*Strickland* precludes the application of *Martinez*'s equitable exception in this case.

## CONCLUSION

Despite being given the opportunity to demonstrate cause to excuse the procedural default of his IATC claims, Murphy failed to show either that his underlying claims were substantial or that he was denied effective assistance during his state habeas proceedings. For the foregoing reasons, the Director respectfully requests that this Court dismiss Murphy's IATC claims as procedurally default, and make the alternative determination that each of the claims completely lacks merit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jeremy Greenwell
JEREMY C. GREENWELL*
Assistant Attorney General
State Bar No. 24038926

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1600
(512) 320-8132 (Fax)
E-mail:
jeremy.greenwell@texasattorneygeneral.gov

*Lead Counsel ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of November, 2015, a copy of the above pleading was electronically served to the following counsel for Murphy by filing the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court:

DAVID R. DOW
University of Houston Law Center
100 Law Center, Suite 114-BLB
Houston, TX 77004-6060
ddow@uh.edu

s/ Jeremy Greenwell
JEREMY C. GREENWELL
Assistant Attorney General