# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **PATRICK HENRY MURPHY JR.** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| -vs- | § | CIVIL NO. 3:09-cv-01368-L |
| | § | |
| | § | *DEATH PENALTY CASE* |
| | § | |
| **LORIE DAVIS**, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

---

## OBJECTIONS TO
## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

---

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Road
Houston, TX 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131

*Counsel for Petitioner, Patrick Henry Murphy*

1

# Table of Contents

Table of Contents………….. ................................................................................ 2

Table of Authorities…………. ............................................................................. 3

OBJECTIONS TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE…………………… ................................................................................. 4

I.   The Magistrate's Findings, Conclusions, and Recommendations fail to address Mr. Murphy's claim pursuant to *Enmund v. Florida*, *Tison v. Arizona*, and *Ring v. Arizona*…………………. ................................................................ 7

II.  The Magistrate's conclusion that Murphy abandoned his claim that trial counsel provided ineffective assistance in failing to seek a change of venue is unsound............................... 12

III. In his analysis of Mr. Murphy's third claim, the Magistrate erred by failing to compare trial counsel's performance to what was required by the prevailing professional norms at the time of Mr. Murphy's trial...................................................... 14

Conclusion and Prayer for Relief.......................................................... 19

Certificate of Service……. ................................................................... 20

# Table of Authorities

**Cases**

*Ha Van Nguyen v. Curry*,
    736 F.3d 1287 (9th Cir. 2013) ...................................................... 18

*Padilla v. Kentucky*,
    559 U.S. 356 (2010) .................................................................... 16

*Rylander v. State*,
    101 S.W.3d 107 (Tex. Crim. App. 2003) ......................................... 13

*Tison v. Arizona*,
    481 U.S. 137 (1987) ..................................................................... 8

**Rules**

Tex. Penal Code § 15.02 ............................................................... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PATRICK HENRY MURPHY JR.** | § § § | |
| Petitioner, | § § § | |
| -vs- | § § § § § | CIVIL NO. 3:09-cv-01368-L *DEATH PENALTY CASE* |
| **LORIE DAVIS**, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

**OBJECTIONS TO
FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Patrick Henry Murphy was convicted and sentenced to death for being a party to the murder of Aubrey Hawkins, a member of the Irving Police Department. While the other six members of the group of Texas inmates that came to be known as the Texas Seven were engaged in the activities that culminated in the murder of Officer Hawkins at the Oshman's sporting goods store, Mr. Murphy waited in a vehicle. In fact,

4

before the group arrived at the store, Mr. Murphy had made it known to the group's leader, George Rivas, that he would not participate in any of the burglaries and robberies the group was planning. He had no idea a murder might occur, and he had absolutely no participation in that murder.

The Eighth Amendment will permit the execution of a non-trigger person only if that person exhibits a reckless disregard for human life and knowingly engages in activities known to carry a grave risk of death. At no point on the night Officer Hawkins was killed did Mr. Murphy exhibit a reckless disregard for human life. At no point did Mr. Murphy knowingly engage in activities known to carry a grave risk of death. However, the instructions given by the trial court to Mr. Murphy's jurors did not inform them of these requirements for sentencing a non-trigger person to death and did not require that the jurors find these culpability requirements satisfied in order to return a guilty verdict and sentence Mr. Murphy to death. Because his jury did not have to find he possessed the requisite level of culpability, and did not in fact reach such a finding, this Court should find that the Fifth, Sixth, Eighth, and Fourteenth Amendments will not permit his

execution.

Mr. Murphy received ineffective assistance from appointed counsel from the time trial counsel was appointed through his state habeas proceedings. His trial counsel failed to: employ an experienced mitigation specialist, conduct a competent mitigation investigation, employ a medical professional that could have opined as to whether he suffers from post-traumatic stress disorder, seek a change of venue due to extensive and inflammatory pretrial publicity, object to impermissible questions during voir dire, and object to inflammatory arguments made by the State. To the extent Mr. Murphy's claims that he received ineffective assistance from trial counsel were cognizable on direct appeal but not raised by direct appeal counsel, Mr. Murphy received ineffective assistance from direct appeal counsel. State habeas counsel failed to exhaust Murphy's claims that he received ineffective assistance from both trial and direct appeal counsel. State habeas counsel conducted no extra-record investigation and filed a document he called a habeas application but which, in fact, raised no claims that were cognizable in state habeas proceedings. Because state habeas counsel was ineffective, this Court can reach a decision on the merits of

6

Mr. Murphy's unexhausted ineffective assistance of counsel claims and should find that both his conviction and sentence were obtained in violation of the Sixth and Fourteenth Amendments.

On November 29, 2016, United States Magistrate Judge David Horan issued his Findings, Conclusions, and Recommendations in which he recommended this Court deny Mr. Murphy relief on all the claims raised in his habeas petition. Mr. Murphy was served a copy of the Magistrate's Findings on November 30 and files these objections in response pursuant to the Magistrate's order of November 29, ECF No. 113 at 55, and this Court's order of December 7, ECF No. 114.

**I.     The Magistrate's Findings, Conclusions, and Recommendations fail to address Mr. Murphy's claim pursuant to *Enmund v. Florida*, *Tison v. Arizona*, and *Ring v. Arizona*.**

The Magistrate, in his Findings, Conclusions, and Recommendations, construed Mr. Murphy's first claim as arguing that *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987), mandate that one cannot be convicted of capital murder if one was not a primary actor in the murder. ECF No. 113 at 20 ("*Enmund* does not prevent a conviction for capital murder but only restricts the punishment that may be imposed"). This conclusion

misapprehends Mr. Murphy's argument and claim. Mr. Murphy's claim is that pursuant to *Ring v. Arizona*, 536 U.S. 584 (2002), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and his Sixth Amendment right to a trial by jury, he cannot be sentenced to death unless a jury made the findings that made him eligible for a death sentence, i.e. that Mr. Murphy exhibited "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death." *Tison*, 481 U.S. at 157. Pursuant to *Ring* and *Apprendi*, these findings should have been made by the jury because they are elements of the offense that must be found before a defendant is eligible for death.

The instructions that the trial court read to Mr. Murphy's jury at the conclusion of the guilt phase of his trial listed four disjunctive theories under which it could find Murphy guilty of capital murder. One of the theories allowed the jury to find Murphy guilty of capital murder if it he was guilty as a conspirator to a robbery during which a death was foreseeable. 1 C.R. 39-41.[1] However, as a matter of Texas law, conspiracy does not require participation; it only requires agreement.

---

[1] Citations to the Clerk's Record appear as [volume number] C.R. [page number].

8

Tex. Penal Code § 15.02. For that reason, the instruction is at odds with *Tison* and *Enmund*. Specifically, the instructions given to the jury did not require that the jury find Murphy participated at all in the robbery even though *Tison* requires that to be eligible for death a person have knowingly engaged in some activity.

To be sure, Murphy's degree of participation in the robbery was irrelevant to the guilt phase verdict (because he could be found guilty of capital murder if he merely agreed to the robbery); that is, he could have been found guilty of capital murder under the Texas statute without running afoul of *Enmund* and *Tison*. Nevertheless, *Enmund* and *Tison* require that for Mr. Murphy to be eligible for a death sentence, the jury also had to find that he intended to commit murder or was recklessly indifferent to human life while being a major participant in the robbery. The jury made no such findings. *Apprendi* and *Tison* make clear that these additional factors are the facts that make a person death eligible. As such, they are functionally elements of the offense. Mr. Murphy is entitled to a jury finding that his conduct makes his death eligible. That his jury was required to make no such finding dictates that his death sentence cannot stand.

9

The eighteenth claim raised in Murphy's direct appeal brief was that the trial court erred in overruling his objection to the trial court's guilt phase charge because it allowed the jury to find him guilty of capital murder – and therefore eligible for death – without making the finding required by *Enmund* and *Tison*. His brief referred to an exchange in which the trial court overruled trial counsel's objection to the charge contained on pages four and five of volume forty-four of the Reporter's Record of his capital murder trial. Brief for Appellant at 49, *Murphy v. State*, No. AP-74,851, 2004 WL 3142172, at *71 (Tex. Crim. App. Sept. 20, 2004). These are the pages that are relevant to Murphy's claim, not pages six and seven, cited by the Magistrate. ECF No. 113 at n.1. Trial counsel,[2] asked for an instructed verdict because the evidence had not shown that Murphy's conduct rose to that required by *Enmund*. 44 R.R. 4.[3] Trial counsel specifically objected that the trial court's charge allowed the jury to find Murphy was eligible for death simply by finding he had joined a conspiracy. 44 R.R. 5. Counsel made clear that

---

[2] John Tatum, Murphy's counsel on direct appeal, served as counsel during the conference on the court's charge on guilt.

[3] Citations to the Reporter's Record appear as [volume number] R.R. [page number].

his objection was based on Murphy's rights pursuant to the Sixth Amendment. *Id.*

In its opinion denying Mr. Murphy relief during state appellate proceedings, the CCA misconstrued Murphy's claim in the same manner as did the Magistrate in this federal proceeding. Murphy does not claim that the Eighth Amendment will never allow a non-triggerman to be convicted of capital murder. Rather, Murphy's claim is that, under *Enmund*, a non-triggerperson cannot be eligible for death unless he engaged in some conduct that exhibited a reckless disregard for human life; and that this is an element of any offense for which one can be sentenced to death that (like all other elements of the crime) must be found by the jury beyond a reasonable doubt. Like the Magistrate, the CCA failed to address Mr. Murphy's claim that this resulted in a violation of his rights pursuant to the Sixth Amendment's right to a jury trial.[4]

---

[4] Presumably, because he believes Murphy's claim is exhausted, the Magistrate did not address Mr. Murphy's argument that if the claim is unexhausted, direct appeal counsel was ineffective in not raising the claim. While Murphy agrees his claim is exhausted, should this Court disagree, Mr. Murphy would assert his alternative claim that direct appeal counsel was ineffective for failing to exhaust the claim.

Because he believes his claim was exhausted in direct appeal proceedings, Mr. Murphy believes state habeas proceedings are not relevant to this Court's

## II. The Magistrate's conclusion that Murphy abandoned his claim that trial counsel provided ineffective assistance in failing to seek a change of venue is unsound.

The second claim raised by Murphy in his federal habeas petition is that trial counsel provided him ineffective assistance by failing to seek a change of venue. The Magistrate concluded this claim is procedurally barred because it is not substantial. ECF No. 113 at 34. In his analysis of Murphy's claim, the Magistrate did not consider and made no reference to the twenty-nine news reports that were included as exhibits to Murphy's petition. Instead, the Magistrate claimed that Murphy abandoned his opportunity to prove his claim was substantial by failing to question trial counsel about this claim at the evidentiary hearing. ECF No. 113 at 31, 34. There is simply no federal law – no precedent from this Court, the Court of Appeals for the Fifth Circuit, or

---

consideration of his claim. Moreover, while the seventh claim of his state habeas application raised the argument addressed in Murphy's federal habeas petition (i.e., Murphy argued it is a violation "to expose a defendant to death" when the jury did not have to find he possessed the requisite intent pursuant to *Enmund*), the CCA's findings on his state habeas application fail to address his claim that the jury must make the required findings that made him death eligible. The state habeas court made the same mistake in its review of Murphy's state claim as did the Magistrate in his review of Murphy's federal claim and the CCA in its review of his direct appeal proceedings: it failed to acknowledge Murphy's claim is one pursuant to his Sixth Amendment rights. For this reason, the Magistrate erred to the extent his recommendation on Murphy's first claim relied upon the findings of the state habeas court. ECF No. 113 at 16-17, 20.

the Supreme Court – that holds that a habeas petitioner abandons a claim that trial counsel provided ineffective assistance if he chooses not to question trial counsel about the claim in an evidentiary hearing. With respect to state habeas actions, the CCA has held that trial counsel should be given the opportunity to explain their actions. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). But even under that court's law, the opportunity provided to trial counsel at the evidentiary hearing convened before the Magistrate was sufficient. As the Magistrate noted, trial counsel explained it was her belief that every county in Texas had the same amount of news coverage about Mr. Murphy as did Dallas County. ECF No. 113 at 30. Counsel did not, however, claim that she conducted any efforts to determine whether that was in fact the case. There is simply no support for her belief that the news coverage was exactly the same in every county in Texas. The Magistrate should have compared the proof contained in Murphy's petition (in the form of almost thirty news articles) to the unsupportable belief of trial counsel as expressed in the evidentiary hearing. Such a comparison would have led the Magistrate to conclude that Murphy had rebutted the presumption that trial counsel employed a reasonable

strategy and that his claim was therefore substantial. The Magistrate failed entirely to conduct this analysis and did so because he incorrectly found Murphy abandoned his claim.

III. **In his analysis of Mr. Murphy's third claim, the Magistrate erred by failing to compare trial counsel's performance to what was required by the prevailing professional norms at the time of Mr. Murphy's trial.**

The third claim raised in Mr. Murphy's federal habeas petition is a multi-faceted claim that trial counsel provided ineffective assistance in the punishment phase of his capital murder trial.[5] After acknowledging that whether trial counsel's actions were reasonable must be analyzed under prevailing professional norms, ECF No. 113 at 41 (*quoting Wiggins v. Smith*, 539 U.S. 510, 523 (2003)), the Magistrate made no attempt to discern whether trial counsel's actions were reasonable when compared to prevailing professional norms.

---

[5] The bulk of Mr. Murphy's third claim focuses on trial counsel's failure timely to conduct a thorough mitigation investigation and to provide a mental health expert with the evidence that would have been obtained from such an investigation. Two smaller portions of the claim addressed trial counsel's deficiencies for failing to object to derogatory statements made about Mr. Murphy by the prosecutor in argument and for failing to object during voir dire to improper commitment questions form the State. The Magistrate erred in his Findings on these aspects of Murphy's claim by finding that Counsel abandoned them by deciding not to question trial counsel about them. ECF No. 113 at 32, 34. Again, there is simply no support for the proposition that a claim is abandoned if counsel chooses not to question trial counsel about it at an evidentiary hearing. *See supra* Part II.

Accordingly, this Court should reject the Magistrate's Findings, Conclusions, and Recommendations pertaining to this claim

For example, based solely on trial counsel's testimony, the Magistrate seems to have accepted that prevailing professional norms did not require her to ask for funds for a mitigation specialist until the Supreme Court handed down its decision in *Wiggins*. ECF No. 113 at 43-44. Trial counsel actually testified at the evidentiary hearing mitigation was a "brand-new field" at the time that *Wiggins* was handed down and that she could therefore not be responsible for her failure to hire a qualified mitigation specialist. ECF No. 100 at 40-41. Undersigned counsel was well aware that trial counsel's assertion at the hearing was false – i.e., mitigation specialists were regularly employed by capital defense teams in North Texas and were considered essential members of those teams long before Murphy's capital trial. To demonstrate this testimony was false and to help establish that the prevailing professional norms at the time of Murphy's trial mandated that capital counsel employ a mitigation specialist, Counsel submitted several affidavits following the hearing. ECF Nos. 105-1, 105-2, 105-3, 105-4, 105-5, 105-6, 105-7, 105-8. Counsel had no way of knowing prior

15

to the September 4, 2015 hearing that trial counsel would make a demonstrably false claim. Because they were offered to correct false testimony, the Magistrate erred in not considering the affidavits. Moreover, the Magistrate erred in finding the information contained in these affidavits was consistent with testimony from trial counsel at the hearing. ECF No. 113 at 44.[6] It was trial counsel's testimony that she began receiving solicitations from mitigation specialists only after the Supreme Court handed down its decision in *Wiggins*.

While the affidavits submitted by Undersigned Counsel are illuminating regarding the prevailing professional norms in place at the time of Mr. Murphy's trial, they are far from the only evidence before this Court establishing those norms. The ABA Guidelines have been found by the Supreme Court to be "valuable measures of the prevailing professional norms," *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010), and

---

[6] Because the testimony was offered on Respondent's behalf, Counsel for Respondent had an obligation to correct trial counsel's demonstrably false testimony. Counsel failed to do this and instead seemed to encourage the false testimony. See ECF No. 100 at 50 ("In 2003, … [w]ould there have been funding available to hire such an expert if they actually existed?"). Because Counsel for Respondent failed to correct the false testimony, it was both proper and necessary for undersigned counsel to take the necessary steps demonstrate trial counsel's testimony was false.

are cited heavily in Mr. Murphy's petition. The Magistrate makes no mention of the Guidelines in his findings.

This Court should also find the expert declaration from Richard Burr submitted prior to the evidentiary hearing, ECF No. 71-1, is illuminating on what was required by the prevailing professional norms at the time of Mr. Murphy's trial. The Magistrate's Findings make no mention of this declaration.

With respect to trial counsel's failure develop evidence that Mr. Murphy suffers from post-traumatic stress disorder, the Magistrate again failed to measure trial counsel's actions against the prevailing professional norms. The Magistrate simply found trial counsel was reasonable because she employed experts and could not be held responsible for the fact that these experts did not diagnose Mr. Murphy as being a person that suffers from post-traumatic stress disorder. ECF No. 113 at 50. Mr. Murphy's claim, however, is that these experts did not reach this diagnosis because they were not properly informed by a thorough mitigation investigation. The prevailing professional norms required trial counsel to properly inform these experts. Undersigned counsel offered a report from Dr. John Fabian as an example of what a

17

properly informed expert would find. It is likely the experts employed by trial counsel would have made the same diagnosis had they been provided the information obtained through the mitigation investigation performed by Undersigned counsel's team.[7]

---

[7] Regarding Mr. Murphy's fourth claim that to the extent his claims could have been raised but were not raised by direct appeal counsel, he received ineffective assistance of counsel on appeal, the Magistrate concluded appellate counsel could not be ineffective for failing to raise meritless claims. ECF No. 113 at 54. For the reasons elaborated upon above, the Magistrate's erred in concluded Murphy's claims are without merit. While the Magistrate is correct that current precedent in this Circuit is that the exception to procedural bar set out in *Martinez* and *Trevino* does not apply to claims of ineffective assistance of appellate counsel, the Court of Appeals for the Ninth Circuit has found otherwise. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013).

## Conclusion and Prayer for Relief

WHEREFORE, Mr. Murphy prays that this Court:

1. Reject the Magistrate's recommended disposition of the case;

2. Issue a writ of habeas corpus to have him brought before it, to the end that he may be relieved of his unconstitutional sentence of death; and

3. Grant such other relief as law and justice require.

Respectfully submitted,

s/ David R. Dow

_____

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun
Houston, Texas 77204-6060
Tel. (713) 743-2171

*Counsel to Patrick Henry Murphy, Jr.*

## Certificate of Service

  I certify that December 13, 2016, a copy of the foregoing pleading was electronically served on counsel for the Respondent by filing the document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

  Jeremy C. Greenwell
  Office of the Texas Attorney General
  Post Office Box 12548
  Austin, Texas 78711
  Jeremy.greenwell@texasattorneygeneral.gov

             s/ David R. Dow
             _____
             David R. Dow