IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PATRICK HENRY MURPHY,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 3:09-CV-1368-L |
| | § | |
| **LORIE DAVIS,** Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

This habeas case, which was brought pursuant to 28 U.S.C. § 2254, was referred to United States Magistrate Judge David L. Horan, who entered the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("Report") (Doc. 113) on November 29, 2016. The Report recommends that the court dismiss with prejudice Murphy's Petition for a Writ of Habeas Corpus ("Petition") (Doc. 18), as the claims are procedurally barred. Petitioner Patrick Henry Murphy ("Petitioner" or "Murphy") filed objections ("Objections") (Doc. 115) to the Report. After careful review of the Petition, Report, record, applicable law, and after conducting a *de novo* review of those portions of the Report to which objections were made, the court determines that the findings and conclusions of the magistrate judge are correct, and **accepts** them as those of the court. Accordingly, the court **overrules** the Objections, **denies** Murphy's application for a writ of habeas corpus, and **dismisses with prejudice** this action.

**Memorandum Opinion and Order - Page 1**

I.      **Background**

Murphy was one of seven inmates who escaped from a Texas prison (the "Texas Seven") and went on a crime spree that included the murder of police officer Aubrey Hawkins of Irving, Texas, while the inmates were fleeing from their robbery of a sporting goods store on December 24, 2000. *See State v. Murphy,* No. F01-00328-T (283rd Dist. Ct., Dallas Cty., Tex. Nov. 20, 2003); Vol. 1, Clerk's Record, at 64-65 (hereinafter CR at 64-65). The facts and procedural history are correctly set forth in the Report. (Report 1-7.)

As noted in the Report, Murphy contends that he was: (1) sentenced to death without a finding that he had the purpose to commit murder or was recklessly indifferent to human life while being a major participant in the robbery (Pet. 17-26); (2) deprived of the effective assistance of counsel when his counsel failed to seek a change of venue (Pet. 26-37); (3) deprived of the effective assistance of counsel in the sentencing phase when his counsel (a) elicited highly damaging testimony from his own expert about Murphy's future dangerousness, (b) failed to conduct an adequate mitigation investigation, (c) failed to object to impermissible closing arguments, and (d) failed to object to impermissible voir dire questions (Pet. 37-96); and (4) deprived of the effective assistance of counsel in his direct appeal. (Pet. 96-97.) Respondent asserts that Murphy has not exhausted any of his claims in state court, and, therefore, his claims should be dismissed as procedurally barred. (Resp't Thaler's Answer 31-36., Doc. 40.) In the alternative, Respondent argues that all of Murphy's claims lack merit. (Answer 39-103.) Murphy responds that none of his claims is procedurally barred and that his claims have merit. (Pet. Reply to Resp't Answer 8-40, Doc. 45).

## II.     Petitioner's Objections to the Report

Murphy makes three objections to the Report: (1) that it fails to address his first claim made pursuant to *Enmund v. Florida*, 458 U.S. 782 (1982), *Tison v. Arizona*, 481 U.S. 137 (1987), and *Ring v. Arizona,* 536 U.S. 584 (2002) (Obj. 7-11); (2) that its conclusion that he abandoned his second claim is unsound (Obj. 12-14); and (3) that it fails to compare trial counsel's performance to what was required by the prevailing professional norms at the time of his trial. (Obj. 14-18).

### A.     Murphy's First Objection

In his first objection, Murphy argues that the Report misapprehends his first claim:

> Mr. Murphy's claim is that pursuant to *Ring v. Arizona,* 536 U.S. 584 (2002), *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and his Sixth Amendment right to a trial by jury, he cannot be sentenced to death unless a jury made the findings that made him eligible for a death sentence, i.e. that Mr. Murphy exhibited "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death." [*Tison v. Arizona,* 481 U.S. 137, 157 (1987)] Pursuant to *Ring* and *Apprendi,* these findings should have been made by the jury because they are elements of the offense that must be found before a defendant is eligible for death.

(Obj. 8.) Murphy contends that the limited version of this claim reflected in the Report is not accurate. The court disagrees.

The Report sets forth several versions of this claim that were made before this court and the state court in connection with Respondent's assertion that this claim is unexhausted and procedurally barred. (Report 14-20.) The Report concludes that the version of this claim that was presented to the Texas Court of Criminal Appeals ("CCA") on direct appeal is not shown to have been an unreasonable application of federal law, and that the new versions of it presented in the state habeas proceeding or this court are procedurally barred. (Report 19-20.) This determination is correct and accepted by this court.

**Memorandum Opinion and Order - Page 3**

The version of this claim presented to this court, as reflected in the Objections, was not presented to the CCA on direct appeal. The Report quotes the allegation of the claim made in Murphy's brief to the CCA on direct appeal and correctly determines that the CCA's rejection of that claim did not constitute an unreasonable application of federal law. (Report 15, 20.) The Report also discusses the portions of Murphy's first claim that were not presented on direct appeal. (Report 20.) The magistrate judge correctly determined that an independent and adequate state ground existed to bar federal review of claims that were not presented on direct appeal, as they are barred from post-conviction habeas review. *Id*. at 19. Further, the Report also makes alternative findings that the portions of Murphy's first claim that were not presented on direct appeal lack merit. These findings and conclusions are correct and accepted by the court.

Murphy's first claim as reflected in his Objections was not presented to the CCA on direct appeal and is now barred. The objection, therefore, is **overruled**; the claim is **denied** as procedurally barred; and, alternatively, it is **denied** for lack of merit.

**B.     Murphy's Second Objection**

In his second objection, Murphy contends that the Report improperly finds that he "abandoned his claim that trial counsel provided ineffective assistance in failing to seek a change of venue." (Obj. 12.) Murphy's objection mischaracterizes the Report, and the objection lacks merit.

With respect to Murphy's ineffective assistance of counsel claim, the Supreme Court has held that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The burden to establish that counsel's performance was deficient rests squarely with Defendant. *See id*. at 687. Contrary to Murphy's contentions, the

**Memorandum Opinion and Order - Page 4**

Report merely states, "Murphy's decision to not examine counsel regarding these strategic decisions effectively abandons the *opportunity* that the Court afforded him to overcome this presumption." (Report 30) (emphasis added).

In *Martinez v. Ryan*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. 1 (2012).[1] To comply with *Martinez*, the magistrate judge granted an evidentiary hearing to allow Murphy an opportunity to prove that his claims of ineffective assistance of trial counsel are not procedurally barred. (Order Setting Hr'g on Exception to Procedural Bar, Doc. 61.)

At that evidentiary hearing, Petitioner did not call the second-chair trial counsel, even though he was present and available to testify. (Report 29.) While Murphy questioned his lead trial counsel Brook Busbee ("Busbee") about other matters, he asked no questions and presented no evidence at this hearing regarding the decision to not seek a change of venue. (Report 30-31.) Instead, Respondent asked Busbee about her decision to not seek a change of venue. Busbee provided three reasons: (1) that the news coverage was not merely local but statewide; (2) that Dallas County juries were more liberal and likely to give a life sentence to Murphy if he was convicted; and (3) that she did not really believe that Murphy had adequate grounds for the motion. (Report at 30-31.)

In his Objections, Murphy assails as "unsupportable" the trial counsel's belief that the news coverage about the Texas Seven was the same throughout the state. (Obj. 13.) Specifically, he

---

[1] *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), "extended *Martinez* to convictions from Texas and other jurisdictions when an ineffective-assistance-of-trial-counsel claim could not be raised effectively in a direct appeal." *Clark v. Davis*, ___ F. 3d ____; No. 14-70034, 2017 WL 955257, at *7 (5th Cir. Mar. 10, 2017) (citation omitted).

**Memorandum Opinion and Order - Page 5**

argues that the magistrate judge should have *sua sponte* compared trial counsel's testimony to "the twenty-nine news reports that were included as exhibits to Murphy's petition" and found that her beliefs were not supported by such exhibits. Murphy contends that the magistrate judge should have made this determination, even though he did not ask Busbee about any of the exhibits during the *Martinez* hearing. (Obj. 12-13.) Even if it were appropriate to do what Murphy suggests, it would not advance his position.

Murphy acknowledges the principle that ordinarily trial counsel should be given an opportunity to explain his or her actions before being denounced as ineffective. He, however, argues that Busbee was afforded the opportunity to explain her actions during the evidentiary hearing, and, therefore, her actions may be denounced as ineffective. (Obj. 13.) Murphy failed to question Busbee about the articles, and it is unclear whether she considered them when she decided not to move for a transfer of venue. Accordingly, she was not provided an opportunity to explain her position regarding the specific articles that Murphy presents as exhibits.

In addition to inaccurately characterizing the finding in the Report, Murphy does not accurately describe the testimony in question. He asserts that trial counsel testified "that every county in Texas had the same *amount* of news coverage about Mr. Murphy as did Dallas County." (Obj. 13.) He further contends that "[Busbee] did not, however, claim that she conducted any efforts to determine whether that was in fact the case." *Id*. Murphy contends, "[t]here is simply no support for her belief that the news coverage was exactly the same in every county in Texas." *Id*.

Busbee actually testified that if a change of venue had been granted, the case would have "gone to another county in Texas, and every county in Texas had received the same coverage and the same news interest that Dallas had. It was a national story at the time. It was quite notorious." (Hr'g Tr. 63-64.) This shows that the news coverage and public interest went beyond Dallas

County, that is, the news coverage was statewide and even nationwide. Murphy did not ask Busbee about her methods to determine whether the news coverage was widespread. Her testimony to clarify this point would be necessary before the court could properly conclude that her decision not to seek a change of venue was "unsupportable."

In any event, nothing in the referenced exhibits contradicts Busbee's testimony that the news coverage "was statewide and even nationwide." First, these exhibits do not purport to be a comprehensive account of all news coverage in Texas during that time and, therefore, are not capable of showing the difference in news coverage between all Texas counties. Further, despite Murphy's assertion, the referenced exhibits do not contain "twenty-nine news reports." While the first 29 exhibits reference publicity, one of them is a finding by the state trial court in the companion case against George Rivas. (Pet. Ex. 22.) In this exhibit, the state court makes a finding that supports trial counsel's testimony: "The extensive news coverage of these cases extends beyond the local media to both statewide and national coverage." (Pet. Ex. 22, at 2.) Many of the 28 other exhibits are news stories about events that happened in other counties and the interest of people outside Dallas County.

One of the exhibits discusses the escape of these seven inmates from the state prison unit in South Texas and the then-ongoing search throughout the Southwest for the escapees. (Pet. Ex. 1.) Another exhibit references FBI warrants that allowed the search to extend beyond the Texas border. (Pet. Ex. 3.) One references a hearing at the state capital in Austin on the matter. (Pet. Ex. 4.) One references the actions taken by the Texas Governor to help pay for the trials. (Pet. Ex. 6.) One references a San Antonio report about law enforcement officers across the state joining in the manhunt. (Pet. Ex. 7.) One references the capture of some of the escapees in Colorado and the continued search for the rest. (Pet. Ex. 8.) One refers to interviews with people throughout

the state and a television appeal by family members for escapees in Colorado to surrender. (Pet. Ex. 9.) One references a robbery in Houston that may be connected to the Texas Seven. (Pet. Ex. 10.) One references the distribution of the escapees' photos to the public and police "in all North Texas cities." (Pet. Ex. 11.) One is a Fort Worth news story about public anxiety inside and outside of Dallas County about these crimes. (Pet. Ex. 12.) One is an article about how an officer's death affects smaller police departments, listing cities that include other Texas counties and quoting professors from universities outside of Dallas County. (Pet. Ex. 16.) Another references a television interview with a companion escapee from a Colorado jail. (Pet. Ex. 19.) Another references extradition warrants signed in Austin and whether any of the escapees in Colorado would waive extradition to Texas. (Pet. Ex. 21.) The nature and subject matter of these articles show statewide interest and that these or similar articles would likely have also been reported in other Texas counties.

The habeas petitioner carries the burden of proof. To show that a claim comes within the *Martinez* exception to the procedural bar, the petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 566 U.S. at 14. Murphy has the burden to make this showing, but Respondent can negate substantiality by showing that the claim lacks merit. Respondent produced evidence showing that trial counsel's strategy was reasonable, and Murphy did not rebut Respondent's showing.

Murphy's second claim was not presented in his original state habeas proceeding and would now be barred by an independent and adequate state procedural rule. The court accepts the finding of the magistrate judge that Murphy has not shown that this claim comes within an

exception to the procedural bar. The objection, therefore, is **overruled**. Murphy's second claim is **denied** as procedurally barred; and, alternatively, it is **denied** for lack of merit.

    C.    **Murphy's Third Objection**

In his third objection, Murphy contends that the magistrate judge's analysis of his third claim related to ineffective assistance of counsel is incorrect. In his third claim, Murphy contends that his trial counsel provided ineffective assistance during the presentation of mitigating factors in the punishment phase of his capital murder trial. Murphy contends that the magistrate judge failed to compare his trial counsel's performance to what was required by the prevailing professional norms at the time. (Obj. 14.)

Murphy provides several examples to support his objection to the Report. With respect to his trial counsel's alleged failure to develop evidence, Murphy contends that the magistrate judge failed to measure his trial counsel's method of developing evidence against the prevailing professional norm. Murphy further contends that the magistrate judge did not properly consider affidavits to impeach trial counsel's testimony related to the appropriate time to request funds for a mitigation specialist. Murphy also contends that the magistrate judge did not consider the American Bar Association Guidelines to determine the prevailing professional norms.

Under the *Strickland* standard,

> [t]o establish ineffective assistance of counsel, the defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness, []; and (2) that the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Williams v. Taylor*, 529 U.S. 362, 363 (2000) (citing *Strickland*, 466 U.S. at 694). Whether "counsel's representation fell below an objective standard of reasonableness [is] measured according to prevailing professional norms." *Cullen v. Pinholster*, 563 U.S. 170, 229 (2011)

(citation and internal quotation marks omitted). To make a viable claim of the deprivation of the effective assistance of counsel under *Strickland* for failing to provide an expert with information, the petitioner must show that the expert requested the information and that the information would have made a difference to the expert's opinion. *See Bloom v. Calderon,* 132 F.3d 1267 (9th Cir. 1997) (cited with approval by *Roberts v. Dretke,* 356 F.3d 632, 640 (5th Cir. 2004)); *Segundo v. Stephens,* No. 4:10-CV-970-Y, 2015 WL 3766746 (N.D. Tex. June 17, 2015) *COA denied sum nom, Segundo v. Davis,* 831 F.3d 345, 352 (5th Cir. July 28, 2016); *Hendricks v. Calderon,* 70 F.3d 1032, 1038 (9th Cir. 1995).

Murphy's lead trial counsel and co-counsel obtained the assistance of a fact investigator, a prison expert, and four mental health experts to assist with the mitigation investigation prior to trial. They conducted a thorough investigation and presented a mitigation case to the jury in accordance with a reasonable trial strategy. (Report 44-48.) Murphy produced no evidence that any of his trial experts did not receive information that he or she requested from trial counsel. Moreover, Murphy has not provided evidence that any of the allegedly new life-history information would have changed any of their opinions. Murphy also has not shown that any of this information was not already available to and considered by his trial experts. Murphy, therefore, has not made a viable claim of the deprivation of the effective assistance of counsel under *Strickland* for failing to provide an expert with information, as he has not shown that his trial experts requested the allegedly new life-history information and that the information would have made a difference to the experts' opinions.

Murphy contends that the magistrate judge failed to consider the report of Dr. Matthew Fabian ("Dr. Fabian"), an expert that Murphy offered to show that a properly informed expert would have found that he had post-traumatic stress disorder ("PTSD"). Murphy contends that his

**Memorandum Opinion and Order - Page 10**

trial counsel could have obtained a different expert that would have reached the same conclusion as Dr. Fabian and testified that he had PTSD. As noted in the Report, for Murphy to show that he was prejudiced by his trial counsel not calling Dr. Fabian, he must demonstrate that the opinion witness was available to testify and would have done so. (Report 51) (quoting *Woodfox v. Cain,* 609 F.3d 774, 808 (5th Cir. 2010)). Murphy provided no evidence that Dr. Fabian was available to testify at the time of trial; therefore, Murphy has not shown that he was prejudiced by failing to call an expert similar to Dr.Fabian.

Further, with respect to other evidence related to "prevailing professional norms," Murphy contends that the Report did not consider Richard Burr's ("Mr. Burr") declaration. Mr. Burr is an attorney who provided opinion testimony in the form of a written declaration related to whether Murphy's trial and state habeas counsel provided him ineffective assistance. Murphy contends that Burr's declaration "is illuminating on what was required by the prevailing professional norms at the time of Mr. Murphy's trial." (Obj. 17.) Despite Burr's declaration, Murphy has not satisfied the *Strickland* standard, as he has not shown that he has been prejudiced by his counsel's allegedly deficient performance.

Murphy also contends that the magistrate judge refused to consider his affidavits from witnesses purporting to impeach trial counsel's testimony regarding solicitations from potential mitigation investigators. Trial counsel testified that, after their appointment and during the course of trial preparation, the Supreme Court decided *Wiggins v. Smith,* 539 U.S. 510 (2003), which opened up this area. She testified that prior to that time, "there was not a judge in Dallas County who would consider spending the kind of money that we ended up spending on mitigation investigation." (Hr'g Tr. 17.) When *Wiggins* came down, the understanding of trial counsel and her peers regarding the job of a mitigation expert was not settled in this developing field. (Hr'g

**Memorandum Opinion and Order - Page 11**

Tr. 49-51.) She also testified that during her pretrial preparation she received "a lot of" solicitations from people representing themselves to be mitigation experts that she tossed them in the trash. (Hr'g Tr. 18, 68.) She wanted an effective mitigation investigator or witness and would not have been satisfied based on a solicitation trying to get her business. (Hr'g Tr. 69-70.) Instead of relying upon an unsolicited letter or brochure claiming some training, counsel called persons that she knew and trusted to find a qualified mitigation expert and was favorably impressed with Dr. Mark Vigen. (Hr'g Tr. 16-19, 66-70.)

The magistrate judge did not improperly refuse to consider the evidence before him. That Murphy's current counsel did not consider himself prepared to cross-examine trial counsel at the only opportunity Murphy would be afforded to do so, in no way justifies the use of posthearing exhibits attempting to impeach her testimony. Further, these exhibits seem to confirm trial counsel's statements that she had received many unsolicited offers of assistance from people claiming to be mitigation experts. (Report 44.) The magistrate judge properly ruled on these posthearing exhibits.

Even if Murphy's trial counsel provided ineffective assistance during the presentation of the mitigating factors in the punishment phase of his capital murder trial, the court agrees with the magistrate judge's finding that Murphy has not proved that he has suffered any prejudice from his counsel's actions. Murphy's trial counsel's mitigation case "focused on his tragic childhood of abuse and neglect that resulted in a lack of development and mental dysfunction that contributed to the offense, and his mitigation expert at trial testified that he had a low risk of violence in prison and had a possibility of rehabilitation." (Report 52.) Murphy has not established that being diagnosed with PTSD would have "shown that the balance of aggravating and mitigating

circumstances did not warrant death." *Id.* Accordingly, Murphy has not demonstrated that he had ineffective assistance of counsel under the *Strickland* standard.

Murphy's third claim was not presented in his original state habeas proceeding and would now be barred by an independent and adequate state procedural rule. The court accepts the finding of the magistrate judge that Murphy has not shown that this claim comes within an exception to the procedural bar. The Report properly concludes that Murphy did not present a substantial claim that trial counsel provided ineffective assistance. (Report 40-53.) The court accepts these findings and conclusions. Murphy's objection is **overruled**. Murphy's third claim is **denied** as procedurally barred and, alternatively, it is **denied** for lack of merit.

### D. No Objection – Fourth Claim

The court notes that Murphy has made no proper objection to the magistrate judge's recommendation to deny his fourth claim for relief, which asserts that his counsel on direct appeal provided ineffective assistance for failing to raise these same claims on direct appeal. Murphy mentions his fourth claim only in a footnote, which is waived by inadequate briefing.[2] "[A]n argument raised in a footnote is insufficient and may be disregarded by the Court." *Gate Guard Servs. L.P. v. Perez,* 14 F. Supp. 3d 825, 833 (S.D. Tex. 2014); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 356 n.7 (5th Cir. 2003) (citing *United States v. Hardman,* 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.")); *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.,* 810 F.3d 335, 339 n.4 (5th Cir. 2016) (citation omitted) ("Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived."); *Dawson v. Rocktenn*

---

[2] Murphy asserts several other arguments in the footnotes to the Objection. To the extent that these arguments are intended to be objections, they are also waived by inadequate briefing for the reasons set forth in this section.

**Memorandum Opinion and Order - Page 13**

*Servs., Inc.,* ___ F. App'x ___; 2016 WL 7468034, at *4 n.6 (5th Cir. Dec. 27, 2016). Accordingly, any objection to that part of the Report is **waived**.

In any event, to the extent that Murphy objects to the finding that his underlying claims lack merit, those portions of the Report are correct as previously noted. (Report 54.) Further, the Report correctly notes, and Murphy concedes in that same footnote, that binding circuit precedent holds that the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel; therefore, he argues authority from another circuit. (Report 54 (citing *Reed v. Stephens,* 739 F.3d 753, 778 n.16 (5th Cir. 2014)); Obj. n.7 (citing *Ha Van Nguyen v. Curry,* 736 F.3d 1287, 1296 (9th Cir. 2013).)[3]

Murphy's fourth claim is **denied** as procedurally barred and, alternatively, it is **denied** for lack of merit.

### III. Conclusion

Having reviewed the Report and the record in this case, the court determines that the findings and conclusions of the magistrate judge are correct, and **accepts** them as those of the court. Accordingly, the court **overrules** Murphy's Objections (Doc. 115), **denies** Murphy's Petition for a Writ of Habeas Corpus (Doc. 18); and **dismisses with prejudice** this action.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the court **denies** a certificate of appealability.[4] The court determines that Petitioner has failed to

---

[3] The Supreme Court has recently granted a writ of certiorari to review this question in *Davila v. Davis,* 137 S. Ct. 810 (Jan. 13, 2017).

[4] Rule 11 of the Rules Governing §§ 2254 and 2255 Cases provides as follows:

> **(a) Certificate of Appealability.** The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing

show: (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong;" or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In support of this determination, the court accepts and incorporates by reference the Report filed in this case. In the event that Petitioner files a notice of appeal, he may proceed *in forma pauperis* on appeal.

**It is so ordered** this 31st day of March, 2017.

                                                                    Sam A. Lindsay
                                                                    United States District Judge

---

required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

(**b**)      **Time to Appeal.** Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability.