OFFICE *of the* ATTORNEY GENERAL
GREG ABBOTT

Box 1 of 2

February 18, 2010



Clerk, United States District Court
Northern District of Texas, Dallas Division
1100 Commerce Street, Room 14A20
Dallas, Texas 75242-9970

Re:   *Patrick Murphy  v. Rick Thaler, Dir., TDCJ-CID*
      **Civil Action No. 3:09-cv-01368**

Dear Clerk:

Enclosed please find copies of the petitioners state court records for the above
referenced case, which consist of eleven volumes of direct appeal records and one
volume of state writ records (all contained in two boxes).  Please indicate the
date of filing on a copy of the enclosed letter and return in the postage-paid
envelope provided for your convenience.

Sincerely yours,

/s/ Jeremy Greenwell

JEREMY GREENWELL
Assistant Attorney General
Postconviction Litigation Division
(512) 936-1400

JCG/cak
cc:

David R Dow                     Allan L. Fishburn
Texas Defender Service          Allan L. Fishburn Attorney at Law
1927 Blodgett Street            211 N. Record St, Suite 450
Houston, TX 77004               Dallas, TX 75202
(LETTER ONLY)                   (LETTER ONLY)

354
03



SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
TOM PRICE
PAUL WOMACK
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
CHARLES R. HOLCOMB
CATHY COCHRAN
　JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

July 7, 2005

TROY C. BENNETT, JR.
CLERK
512 463-1551

Allan Fishburn
211 North Record Street
Suite 450
Dallas, TX   75202

Re:    Patrick Murphy
Our Appeal No. 74,851

Dear Mr. Fishburn:

We are returning your "Motion to Extend Time for Filing Writ of Habeas Corpus Pursuant to Tex.Code Crim.Proc. Ann. Article 11.071" as this motion needs to be filed in the convicting trial court.

Thank you for your attention in this matter.

Sincerely,

Edward J. Marty
General Counsel

EJM/bh

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| THE STATE OF TEXAS | § | IN THE COURT OF |
| --- | --- | --- |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| THE STATE OF TEXAS | § | IN THE COURT OF |
|---|---|---|
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

FILED
AUG 9 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _June_ ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:   (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

_____
Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS
## PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____
Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____,2005.

_____

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO <u>TEX. CODE CRIM. PROC. ANN ARTICLE 11.071</u>

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant  shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____ ,2005.

_____

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO <u>TEX. CODE CRIM. PROC. ANN ARTICLE 11.071</u>

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____
Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN, TEXAS
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____ ,2005.

_____
Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____,2005.

_____
Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _June_ ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant  shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the _29_

day of _June_ ,2005.

_____

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO <u>TEX. CODE CRIM. PROC. ANN ARTICLE 11.071</u>

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____
Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:  (214) 742-7313

## CERTIFICATE OF SERVICE

...hereby that a true and correct copy of the foregoing motion has been mailed to the

...ssistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

...day of _June_ ,2005.

Allan Fishburn

U.S. POSTAGE
PAID
TERRELL, TX
AUG 06, '09
AMOUNT
**$1.29**
00026891-03
78711

9261

UNITED STATES
POSTAL SERVICE

Court of Criminal Appeals
P.O. Box 12308
Capital Station
Austin, Texas 78711

Allan Fishburn
Attorney at Law
211 North Record Street
Suite 450
Dallas, Texas 75202



**COURT OF CRIMINAL APPEALS**
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

December 14, 2005

SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
TOM PRICE
PAUL WOMACK
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
CHARLES R. HOLCOMB
CATHY COCHRAN
JUDGES

LOUISE PEARSON
CLERK
512-463-1551

EDWARD J. MARTY
GENERAL COUNSEL
512-463-1597

Presiding Judge
283rd District Court
133 N. Industrial, LB 33
Dallas, TX  75207

       Re:    Patrick Murphy
             Our Writ No. 63,549-01

Dear Judge:

    Enclosed herein is an order entered by this Court regarding the above-referenced applicant.

    If you should have any questions concerning this matter, please do not hesitate to contact me.

                  Sincerely,

                  Edward J. Marty
                  General Counsel

EJM:bh

cc:   Bruce Thayler
      Records & Classifications
      P. O. Box 99
      Huntsville, TX  77340

-2-

cc:

      Dallas County
      District Attorney
      Attn: Lori Ordiway
      Appellate Section
      133 N. Industrial, LB 19
      Dallas, TX   75207

      Dallas County
      District Clerk
      133 N. Industrial, LB 12
      Dallas, TX   75207

      Allan Fishburn
      Attorney at Law
      211 N. Record, Ste. 450
      Dallas, TX 75202

      Gena Bunn
      Assistant Attorney General
      P. O. Box 12548
      Austin, TX   789711

      Patrick Henry Murphy, Jr.
      C/o Allan Fishburn
      211 N. Record, Ste. 450
      Dallas, TX   75202



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-63,549-01

### EX PARTE PATRICK MURPHY

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE
### NO. W01-00328-T IN THE 283ᴿᴰ JUDICIAL DISTRICT COURT
### DALLAS COUNTY

*Per Curiam.   Johnson, J., would dissent.*

### O R D E R

This is an untimely application for writ of habeas corpus filed pursuant to the

provisions of Texas Code of Criminal Procedure Article 11.071.[1]

On November 20, 2003, the trial court appointed Allan Fishburn to represent

applicant in a post-conviction writ of habeas corpus under Article 11.071.  On March 28,

---

[1] Unless otherwise indicated all references to Articles refer to the Code of Criminal
Procedure.

Murphy - 2

2005, the State filed in this Court its brief on applicant's direct appeal. Pursuant to

Article 11.071, § 4(a), counsel should have filed applicant's application for writ of habeas

corpus in the convicting court no later than May 12, 2005.[2]  On August 3, 2005, the

convicting court received a motion from counsel requesting a 90-day extension for filing

applicant's application.  In the motion, applicant's counsel explained that applicant was

the sixth of six co-defendants to be tried and that counsel needed time to review all of the

co-defendants' cases as well as his client's.  The trial court, without authority, granted

counsel's motion and extended the filing deadline to September 23, 2005.  On September

20, counsel filed a "Writ of Habeas Corpus Pursuant to 11.071" on applicant's behalf.

Because applicant's motion for extension of time was filed well after it was

statutorily permitted and because no application was filed on or before the initial due date

of May 12, 2005, we find that the application filed on September 20, 2005, was untimely.

*See* Art. 11.071, § 4(c).  However, pursuant to Article 11.071, § 4A(b)(2), and counsel's

showing of good cause in his motion for extension, we will allow Fishburn to continue

representing applicant and hold applicant's application to be timely filed as of September

20, 2005.  The trial court is ordered to proceed with its review of the application.  The

timelines set out in Article 11.071, §§ 7-9, shall start to run as of the day this order is

issued.

---

[2] Under Article 11.071, § 4(d), the convicting court should have sent a statement to this Court within ten days of this initial deadline notifying the Court that no application had been timely filed.

Murphy - 3

IT IS SO ORDERED THIS THE 14th DAY OF December, 2005.


Do Not Publish

APPLICANT   <u>PATRICK MURPHY</u>                    APPLICATION NO.   <u>63,549-01</u>


APPLICATION FOR 11.071 WRIT OF HABEAS CORPUS                    <u>XXX</u>


MOTION REQUESTING TIMELY FILING DATE OF SEPTEMBER  20, 2005 ON
APPLICATION FOR WRIT OF HABEAS CORPUS IN THE TRIAL COURT GRANTED.

<u>Per Curiam</u>                                              <u>12/14/05</u>
JUDGE                                                       DATE
Johnson. J. would dissent.

**FILED**

NOV 10 2005

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CAUSE NO. W01-00328-T
## COURT OF CRIMINAL APPEALS NO. AP-74,851

| | | |
|---|---|---|
| EX PARTE | § | IN THE 283RD JUDICIAL |
| PATRICK MURPHY | § | DISTRICT COURT |
| | § | DALLAS COUNTY, TEXAS |

The Court finds that applicant's post-conviction application for writ of habeas corpus was not timely filed pursuant to article 11.071 of the Code of Criminal Procedure.

Counsel was appointed on November 20, 2003 to represent applicant in these habeas proceedings.  The State's original brief on direct appeal was filed March 21, 2005. Thus, the initial due date for the filing of the 11.071 application was May 5, 2005. Applicant's counsel did not request the statutorily authorized 90-day extension before this deadline, nor did he file the application.  If counsel had timely requested and received this 90-day extension, the application would have been due no later than August 3, 2005.

On August 24, 2005, counsel for the defendant filed an extension request asking the Court to extend the time for filing the application until September 23, 2005.  The Court granted the request, and counsel for the defendant filed the application for writ of habeas corpus on September 20, 2005.

The Court finds that, although the application was filed within the time granted by the trial court, it has not been filed in compliance with the statutorily mandated deadline. Pursuant to article 11.071, section 4(d), this Court is forwarding to the Court of Criminal Appeals this statement that counsel did not file the application for writ of habeas corpus by the deadline set forth in article 11.071, section 4, subsections (a) and (b), of the Code of Criminal Procedure.

The Clerk of the Court is directed to send a copy of this statement to the Court of Criminal Appeals, counsel for the defendant, Allan Fishburn, and to counsel for the State, Lisa Smith.

Signed this ___10___ day of November, 2005.

**FILED IN**
**COURT OF CRIMINAL APPEALS**

NOV 1 5 2005

Louise Pearson, Clerk

**VICKERS L. CUNNINGHAM, SR., JUDGE**
**283RD JUDICIAL DISTRICT COURT**
**DALLAS COUNTY, TEXAS**

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS
## PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,



Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

AT AUSTIN

EXPARTE

```
┌─────────────────────────────┐
│   FILED                     │
│                             │
│   SEP  20  2005             │
│                             │
│     JIM HAMLIN              │
│ DIST. CLERK, DALLAS CO., TEXAS │
│ _____DEPUTY      │
└─────────────────────────────┘
```

PATRICK MURPHY

WRIT OF HABEAS CORPUS PURSUANT TO 11.071

**Allan Fishburn**
**State Bar Number 07049110**
**211 North Record Street**
**Suite 450**
**Dallas, Texas  75202**
**(214) 761-9170**
**(214) 742-7313**

## IDENTITY OF PARTIES AND COUNSEL

HONORABLE VICKERS L. CUNNINGHAM                    The Trial Court
283rd District Court
133 North Industrial Blvd.
Dallas, Texas 75207

PARTIES

PATRICK HENRY MURPHY                               Appellant

THE STATE OF TEXAS                                 State

COUNSEL

Mr. John Tatum
990 S. Sherman Street                              Attorney for appellant
Richardson, Texas   75207

Ms. Lisa Smith
Assistant District Attorney                        Attorney for the state
Frank Crowley Courts Building
133 North Industrial Boulevard
Dallas, Texas 75207


Mr. Toby Shook
Assistant District Attorney
Frank Crowley Courts Building                       Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Bill Wirskye
Assistant District Attorney                         Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Allan Fishburn
211 North Record Street                             Attorney for applicant
Suite 450
Dallas, Texas  75202

2

# TABLE OF CONTENTS

I D E N T I T Y  OF THE PARTIES                                    2

T A B L E  OF CONTENTS                                            3

I N D E X  OF AUTHORITIES                                         4

STATEMENT OF THE CASE                                            7

INFERENCE WITH LIBERTY                                           7

ISSUES PRESENTED                                                 8

STATEMENT OF FACTS                                              10

GROUND FOR RELIEF ONE

THE EVIDENCE IS LEGALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE
ANTICIPATED THE COMMISSION OF THE INDICTED
OFFENSE                                                         17

GROUND FOR RELIEF TWO

THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE ANTICIPATED
COMMISSION OF THE INDICTED OFFENSE                              20


GROUND FOR RELIEF THREE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                24

GROUND FOR RELIEF NUMBER FOUR

THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                26

GROUND FOR RELIEF FIVE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO
PROVE THAT APPLICANT WOULD BE A CONTINUING
THREAT TO SOCIETY                                          29

GROUND FOR RELIEF SIX

 THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE THAT APPLICANT WOULD BE A
CONTINUING THREAT TO SOCIETY                               33

GROUND FOR RELIEF SEVEN

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
7.02 (b) to TEX. PENAL CODE ANN SECTION 19.03 IS
UNCONSTITUTIONAL                                           36


GROUND FOR RELIEF EIGHT

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
 7.02 (b) to TEX. CODE CRIM. PROC. ANN ARTICLE
37.071 ( c ) (1)                                           38
 IS UNCONSTITUTIONAL

PRAYER                                                     40

CERTIFICATE OF SERVICE                                     40

# INDEX OF AUTHORITIES

## CONSTITUTIONS

U.S. Const. Amend. Eight ............................................ 40

## CASES

Clewis v. State, 922 S.W. 2d 126
(Tex. Crim. App. 1996) ............................ 18,21,25,26

Ellason v. State, 815 S.W. 2d 656
(Tex. Crim. App. 1991) ............................ 30,34

Jackson v. Virginia, 443 U.S. 307 (1979) ............................ 18,25

Johnson v. State, 23 S.W. 3rd 1
(Tex. Crim. App. 2000) ............................ 21,26,33

Lackey v. State, 819 S.W. 2d 111
(Tex. Crim. App. 1989) ............................ 30,34

Martinez v. State, 879 S.W. 2d 655
(Tex. Crim. App. 1994) ............................ 39

Smith v. State, 779 S.W. 2d 417
Tex. Crim. App. 1989) ............................ 31,34

Solomon v. State, 49 S.W. 3rd 756
(Tex. Crim. App. 2001) ............................ 39

Vuong v. State, 830 S.W. 2d 929
(Tex. Crim. App. 1992) ............................ 30,33

## STATUTES

Tex. Penal Code Ann. Section 6.01 ............................ 38

Tex. Penal Code Ann. Section 7.01 ............................ 17,20

Tex. Penal Code Ann. Section 7.02 (b) ............................ 17,20,37

5

Tex. Penal Code Ann. Section 15.02                                        37

Tex. Penal Code Ann. Section 19.03                                 17,20,36

Tex. Code Crim. Proc. Ann. article 37.071                      24,26,30,33,39

**PUBLICATIONS**

Webster's Ninth New Collegiate Dictionary, 1992                    18,22,23,27

## STATEMENT OF THE CASE

Applicant stood trial for capital murder on theory he was responsible for the conduct of his

co-conspirators. The jury convicted finding Applicant should have anticipated the murder.

The jury then answered three questions at punishment , one of which was whether

Applicant did anticipate the death. The jury answered yes, Applicant is confined awaiting

execution. His direct appeal is pending. This is the first writ.


## INTERFERENCE WITH LIBERTY

Applicant is restrained in his liberty by confinement while he awaits execution. This restraint

is the product of a fundamentally unfair trial.

7

## ISSUES PRESENTED

1.  The evidence is legally insufficient to prove Applicant should have anticipated the commission of the indicted offense.

2.  The evidence is factually insufficient to prove Applicant should have anticipated the commission of the indicted offense.

3.  The evidence is legally insufficient to prove Applicant did anticipate the commission of the indicted offense.

4.  The evidence is factually insufficient to prove Applicant did anticipate the commission of the indicted offense.

5.  The evidence is legally insufficient to prove that Applicant would be a continuing threat to society.

6.  The evidence is factually insufficient to prove that Applicant would be a continuing threat to society.

7.  The application of Tex. Penal Code Ann. section 7.02 (b) to Tex. Penal Code Ann. section 19.03 is unconstitutional.

8

8.  The application of <u>Tex. Penal Code section 7.02 (b)</u> to <u>Tex. Code Crim. Proc. Ann.</u>

<u>article 37.071 ( c ) (1 )</u> is unconstitutional.

## STATEMENT OF FACTS

**Holly Becker** testified about a letter Applicant wrote her, describing some of the events of his childhood and early adult years.  R.R. Vol. 47 , p. 33)

**Detective Jeff Spivey** testified about some of the reading material Applicant had in his possession.   ( R.R. Vol. 47 p. 59-66)

The state rested.  ( R.R. Vol. 47, p. 67)

**Linda Goodman**, Applicant's aunt, testified his mother used to drop him off for lengthy periods of time when he was an infant.   ( R.R. Vol. 47, p. 73-75)

At one point Applicant's father took possession of him.  Ms. Goodman described how Applicant looked when he was returned:

> Well, he was very dirty, had dirty clothes on, had a nasty diaper that he had messed in more than once that was dried on him.  He had cigarette burns all over him from people like putting a cigarette out on his skin.  And his diaper pin on the right side was pinned through the skin and back up into the diaper and fastened to him.

(R.R. Vol. 47, p. 79)

To disclipine Applicant, his mother pulled his hair, hit him, or screamed at him. ( R.R. Vol. 47, p. 86)

10

**S.O. Woods,** Assistant Director of the Institutional Division testified, that "classification" is

the process of sorting out the prisoners assignment. (R.R. Vol. 47, p. 121)

Officer Woods had the following colloquy with defense counsel about his prison record:

> There's a copy in here of his control card, which is the document where all
> of the decisions are recorded on the prisoner as he progresses through the
> prison system. I think that's about it. Those were the important things.
>
> Would you or could you summarize for the jury the disciplinary actions that
> have been taken ? It's my recollection that the first disciplinary report in that
> packet refers to the escape. Is that not correct ?
>
> Murphy was confined approximately 16 years before the escape. And he
> was assigned to units at Ferguson, McConnell, and Conally, besides the
> receiving unit. And during that time he received maybe a half dozen minor
> disciplinary incidents, things like refusing to groom or not grooming properly,
> failure to obey orders promptly, possession of minor items of contraband.
> He had three incidents which were charged to him as major incidents. One
> of them was contraband deal. One of them was ....
>
> When you say contraband, is that a hand grenade ? What is considered
> contraband in these circumstances ?
>
> Well, in Texas, the prison system is a closed institution. We allow absolutely
> nothing from the outside to come in. If we don't provide it to you, you are not
> supposed to have it. And so anything that an inmate has that hasn't been
> provided to him by the institution is contraband. And in this particular case
> I think they caught him with a radio speaker , an extension cord, things I think
> that he had probably removed from where he was working. And he was
> probably going to use them in his cell to improve his radio reception or hook
> up a fan or things like that. He did have three major incidents, though.

(R.R. Vol. 47, p. 150-151)

Applicant called **George Rivas** to testify. ( R.R. Vol. 48, p. 4)

Rivas planned the prison escape and he "handpicked" the men who accompanied him.
( R.R. Vol. 48, p. 4, 10-14)

11

Applicant served as the gang's lookout, because he was not aggressive.  ( R.R. Vol. 48, p. 4)

Applicant told Rivas that he would not participate in any robberies by going into stores. ( R.R. Vol. 48, p. 16)

Applicant job as lookout to warn Rivas if the police were coming so they could leave as quickly as possible.  ( R.R. Vol. 48, p. 17)

It was known that no one had ever been hurt in any of the robberies Rivas committed. ( R.R. Vol. 48, p. 19)

In the instant case the first communication Rivas got from Applicant was Applicant telling him a suspicious report activity had been issued for the Oshman's store.  ( R.R. Vol. 48, p. 22)

In response Rivas told anyone to hurry out the back so they could escape.  ( R.R. Vol. 48, p. 22)

Later, Applicant alerted Rivas that a police car was "coming around back".  ( R.R. Vol. 48, p. 46)

Applicant told Rivas to "leave". He repeated that instruction and also said "you've got company". ( R.R. Vol. 48, p. 48)

Applicant's father , **Patrick Murphy, Sr.** , testified he divorced Applicant's mother when he was two years old. ( R.R. Vol. 48, p. 101)

Mr. Murphy didn't see Applicant again until he was nine. ( R.R. Vol. 48, p. 102)

When Applicant was nine years old, Mr. Murphy was telephoned to come and get him because his mother no longer wanted him. ( R.R. Vol. 48, p. 101- 110)

Mr. Murphy found Applicant in an abandoned school bus. He was filthy and covered with "ringworms" and open sores. (R.R. Vol. 48, p. 115-117)

On cross examination Mr. Murphy testified that Applicant pulled a loaded shotgun on him when he was in high school. ( R.R. Vol. 48, p. 117)

**Dr. Mark Vigen**, a psychologist, examined Applicant. ( R.R. Vol. 48, p. 136)

Dr. Vigen stated the facts of Applicant's childhood as follows:

> Well, one is Mr. Murphy has a history of many physical moves from one town to another. He has a history of many moves from one school to another. Many one teacher to another. He has a history of early abandonment from his father, where his father ... he was taken away from his father at 18

13

months.

He has a history of being sexually abused.  He has a history of being with an unstable mother.  He has a history of being shipped off and raised by other people, including his aunt.  Then he has a history of early school failure and running away, particularly as a grade school kid.  He starts running away.

His mother was very unstable.  She had various jobs.  She would leave often.  I think he had a fairly normal first year with his mother and father when they were living together.  But then at 18 months he went off to live with his mother and she was a very unstable person.  And she had ... she would leave the home for weeks and months on end and no one would really know where she is.

She had multiple relationships with men and they included two stepfathers who were abusive to Mr. Murphy.  And then there were other members of the family that were also abusive to him as well.

And so then he returned, as you know, at about nine and a half years old to live with his father, which he really wanted, but unfortunately his father was a long - haul, over the road truck driver and he was gone a lot of the time.  And at nine and a half years old, as he testified, Mr. Murphy was a very undeveloped, uncared for child, a very neglected child, neglected, if not abused, and so on.

And so then reuniting with his father, he really never in his own mind got from his father what he wanted, which was a relationship with his father because the father was absent a lot.  And he continued to run away, which as a result of, you know, the low self-esteem and lack of self, he's reactive, he's running.

And you add school failure to that as a result of multiple schools and you end up this teenaged boy who has essentially not taken on any values from his parents, not taken on any values or many values from school and religious organizations and so on and lacks a real sense of himself.   And so on he's acting out, you know, he's running away and he's engaging in truant behavior, and as Mr. Murphy Sr. said.

(R.R. Vol. 48, p. 160-161)


Dr. Vigen made the following diagnoses of Applicant:(1) borderline personality traits

(2) narrsastic personality traits and also a (3) nondifferentiated sexual disorder. (R.R. Vol.

14

48, p. 161-163)

Dr. Vigen testified Applicant's personality is one of a follower rather than a leader. ( R.R. Vol. 48, p. 162-163)

Applicant had no reports of violence on his 16 ½ years in prison.  ( R.R. Vol. 48, p. 164)

Ranking the risk of violence on a scale from high to medium, to low, Dr. Vigen would rank Applicant as , " very low".  ( R.R. Vol. 48, p. 162)

Dr. Vigen's court appointed expert fee was $ 18,000.00.  ( R.R. Vol. 48, p. 168)

Dr. Vigen testified that Applicant was in prison for a violent crime, and he had some fights in high school.  ( R.R. Vol. 45, p. 189)

Dr. Vigen characterized the prison escape as a act of violence.  ( R.R. Vol. 48, p. 190)

Dr. Vigen diagnosed Applicant as having " anti-social features" in his personality, but not anti- social personality disorder.  ( R.R. Vol. 48, p. 191)

Antisocial personality disorder is a "pervasive pattern of disregard for and violation of the rights of others, occurring since age 15, and indicated by three or more of the ... breaking the law, lying, and impulsivity, aggressiveness, recklessness, failure to work, and lack of

15

remorse.  ( R.R. Vol. 48, p. 196)

Dr. Vigen predicted that Applicant would be a very low risk to be violent in the future, based on his prison record and the fact that he would serve his remaining time in " administrative segregation".  ( R.R. Vol. 48 , p. 201)

Both sides rested and closed on punishment.  ( R.R. Vol. 49, p. 16)

Prior to argument Applicant objected that Special issue number two violated the Rules of Enmund v. Florida, 458 U.S. 782 and Tison v. Arizona.  These objections were overruled. ( R.R. Vol. 49, p. 11)

The jury answered special issue number one, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number two, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number three, "no".  ( R.R. Vol. 49, p. 80-81)

The trial court pronounced sentence as prescribed by Tex. Code Crim. Proc. Ann. Article 37.071.  (R.R. Vol. 49, p. 81-82)

## GROUND FOR RELIEF ONE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT

## SHOULD HAVE ANTICIPATED THE COMMISSION OF THE INDICTED OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer

Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as
> defined under Section 19.02 (b)(1) and
>
> (2) the person intentionally commits the murder in the course
> of committing or attempting to commit kidnaping, burglary,
> robbery, aggravated sexual assault, arson, or obstruction or
> retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the

offense, under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02

(b).  These provisions read in relevant part:

> Section 7.01 (a)
>
> a person is criminally responsible as a party to an offense if the
> offense is committed by his own conduct, by the conduct of
> another for which he is criminally responsible or by both.
>
> Section 7.02
>
> (a) a person is criminally responsible for an offense committed
> by the conduct of another if ;
>
> (b) If, in the attempt to carry out a conspiracy to commit one
> felony, another felony is committed by one of the conspirators,
> all conspirators are guilty of the felony actually committed,
> though having no intent to commit it, if the offense was
> committed in furtherance of the unlawful purpose and was one

17

that should have been anticipated as a result of the carrying out of the conspiracy.

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979). A claim of legal insufficiency is an argument that the case should never have been presented to the jury. Clewis v. State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

Under this standard of appellate review the state of the evidence proves that no rational jury would have convicted. The state at closing argument pointed out that the only issue was whether Applicant should have anticipated the murder of Officer Hawkins. The prosecutor claimed the evidence was overwhelming and that it went beyond proof of "should have anticipated" and in fact proved he did "anticipate" the murder. The prosecutor then went over his evidence as does Applicant here.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S.  precision bombing of Iraqi positions during the Gulf War.  Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise: Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor thus actually argued that the plan was for six armed men to encircle

18

the squad car and empty the guns at the target police office. The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded. Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that extant. Obviously, the possibility6 of the police arriving during the crime would have been planned for. The options would be flight or fight. Flight was selected. Applicant's duty was to warn Rivas via radio, so that the gang could flee before the police arrived. The fight ensued because the gang's timing was off.

An examination of the shooting corroborats this " flight plan". Officer Hawkins arrived early. The six members of the gang panicked. They happened to form what amounted to a circle, surrounding the police car. Five out six emptied their weapons. They were in each others line of fire. They shot and continued to shoot anyway. Rivas and another member were wounded by gang member fire during the Chaos. The so-called ambush did not occur. This inentional murder was not the result of carrying out the plan to meet the police contingency. It was the predict of poor timing and cowards panicking.

19

## GROUND FOR RELIEF TWO

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT

## SHOULD HAVE ANTICIPATED COMMISSION OF THE INDICTED

## OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as defined under Section 19.02 (b)(1) and

> (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the offense under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02 (b).  These provisions read in relevant part:

> Section 7.01

> (a) a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both.

> Section 7.02

> (a) a person is criminally responsible for an offense committed by the conduct of another if ;

> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed,

20

though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

In determining factual sufficiency, the appellate court views all the evidence in a neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State, 23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 ( Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that tends to prove the facts in dispute and compares it with the evidence that tends to disprove those facts. The appellate court has the authority and duty to disagree with the jury's weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas. The evidence is factually insufficient if it is so weak that the verdict is clearly wrong. The evidence is factually insufficient if the evidence contrary to the verdict is of greater probative value on the disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime. Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd. The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven. If not biased, this jury simply did not deliberate. Eihr way the jury's verdict is clearly wrong. Thus, Reversal would not amount to substituting the Court's judgment for that of the jury. The verdict is manifestly unjust.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas

21

Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise. Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor argued the attack was preplanned.  That means the shooter were in position when they opened fire.  The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded.  Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists.  He told Rivas to "leave" because that was the plan even when the police closed in.  The gang did anticipate police interference but that contingency was planned for by getting away before they arrived.  This plan was implemented via a lookout warning Rivas when it was time to go.  The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos.  This was no ambush. Rather, six stupid cowards simply started shooting regardless of who was in the line of fire. No  jury

22

could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the Clewis standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

After the breakout, Rivas continued as gang leader, and two robberies were planned and completed. There were no injuries. At one point during the Oshman's robbery an employee grabbed Rivas' gun. Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance". Webster's Ninth New Collegiate Dictionary, 1992.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left. If this did happen it was foreseen that a firefight would ensue. This contingency was dealt with by planning to be gone befoe the police could get there. A lookout's duty is to warn of impending danger. But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to

23

respond to danger by fleeing or fighting.  The circumstances answer to real question in this case.  Did the plan call for flight or fight.  The physical position of the shooter and the target show the warning ws transmitted so the gang could flee.  Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire.  Moeover, Applicant stated the warning via a command.  He said: " Leave".  Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.

## GROUND FOR RELIEF THREE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT
## DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE

To render Applicant death worthy the state had to convince a jury he did in fact anticipate that the robbery would include a murder to further its completion.  Tex. Code Crim. Proc. Ann. article 37.071.

At the punishment phase the jury was instructed to answer the question whether Applicant did anticipate the murder at issue.  The jury found that he did.  The evidence is legally insufficient to support the finding.

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a

24

reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979). A claim of legal insufficiency is an argument that the case should never have been presented to the jury. Clewis v. State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

A rational conclusion is one that is objectively agreeable to reason, and therefore arrived at by the dispassionate use of logic. Applicant argues that no rational jury would have found that he anticipated the murder of Officer Aubrey Hawkins.

The state argued to the jury that there was no doubt on this issue. That is, their evidence was overwhelming. When examined in the light most favorable to the jury's answer, the opposite conclusion must be drawn. There was no evidence in this case sufficient to prove such the existence of actual anticipation.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, to say the planned t fight, not flee, in the face of the police. This theory is at odds with the evidence. The stat's presentation was not hampered by astounding lack of proof because of the spectular prison break accomplished. The state's real theory was anyone who breaks out of a Texas prison is a lethal force that must be killed. Thu, the six living members of the gang were viewed as fungibile. That the facts, were incompatible with the reputation and made n difference to the state or the jury.

The prosecutor argued the shooting was a plan implemented against police interference. It apparently did not occur o the jury that common sense says there is no such thing as an ambush that calls for the attackers to intentionally place each other in the

25

line of fire.  No rational jury could have believed the shooting as actually an ambush.

When this conclusion is reached the rest of the state's case falls with it.


## GROUND FOR RELIEF FOUR


## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT

## DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE


After the close of the evidence the trial court instructed the jury pursuant to Tex.

Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that
> there is a reasonable probability that the defendant, Patrick
> Henry Murphy would commit criminal acts of violence that
> would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a

neutral light and sets aside the verdict if it is contrary to the evidence.  Johnson v. State,

23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 (

Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that

tends to prove the facts in dispute and compares it with the evidence that tends to disprove

those facts.  The appellate court has the authority and duty to disagree with the jury's

weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas.  The evidence is factually

insufficient if it is so weak that the verdict is clearly wrong.  The evidence is factually

insufficient if the evidence contrary to the verdict is of greater probative value on the

26

disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime. Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd. The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven. If not biased, this jury simply did not deliberate. Eihr way the jury's verdict is clearly wrong. Thus, Reversal would not amount to substituting the Court's judgment for that of the jury. The verdict is manifestly unjust.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up. Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise. Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor argued the attack was preplanned. That means the shooter were in position when they opened fire. The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded. Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that

27

it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists. He told Rivas to "leave" because that was the plan even when the police closed in. The gang did anticipate police interference but that contingency was planned for by getting away before they arrived. This plan was implemented via a lookout warning Rivas when it was time to go. The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos. This was no ambush. Rather, six stupid cowards simply started shooting regardless of who was in the line of fire. No jury could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the Clewis standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

After the breakout, Rivas continued as gang leader, and two robberies were planned

28

and completed.  There were no injuries.  At one point during the Oshman's robbery an employee grabbed Rivas' gun.  Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance".  Webster's Ninth New Collegiate Dictionary, 1992.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left.  If this did happen it was foreseen that a firefight would ensue.  This contingency was dealt with by planning to be gone befoe the police could get there.  A lookout's duty is to warn of impending danger.  But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to respond to danger by fleeing or fighting.  The circumstances answer to real question in this case.  Did the plan call for flight or fight.  The physical position of the shooter and the target show the warning ws transmitted so the gang could flee.  Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire.  Moeover, Applicant stated the warning via a command.  He said: " Leave".  Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.

**GROUND FOR RELIEF FIVE**

29

# THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE THAT APPLICANT

## WOULD BE A CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to <u>Tex. Code Crim. Proc. Ann. article 37.071</u> as follows:

> Do you find from the evidence beyond a reasonable doubt that there is a reasonable probability that the defendant, Patrick Henry Murphy would commit criminal acts of violence that would constitute a continuing threat to society?

To arrive at an answer to the special issue, the jury is instructed to deliberate on all of the evidence admitted during both phases of the trial. <u>Vuong v. State</u>, 830 S.W. 2d 929 ( Tex. Crim. App. 1992). The Eighth Amendment requires consideration of the character and record of the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy". <u>Lackey v. State</u>, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

The Texas Court of Criminal Appeals has made a list of factors to aid them in the analysis of this issue. These are: (1) the circumstances of the offense, **including the defendant's state of mind**;  (2)  the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. <u>Ellason v. State</u>, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991).

30

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. See, Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989). That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw. Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more.    Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes. It was an easy, appealing argument to label the seven criminals, the "Texas Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them.  Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed.  No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out.  He never committed a single violent act while living in there.  If allowed to live he will go back to prison to live the rest of his life.  It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone.  And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

31

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder. In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's. Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

The state did not call an expert to testify on the issue of the future dangerousness, although it is routine to do so. Only two explanations exist for this choice. Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled. The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low. The state"s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give. This argument was apparently successful. Therefore, jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.

32

## GROUND FOR RELIEF SIX

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE THAT APPLICANT

## WOULD BE a CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to Tex.

Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that
> there is a reasonable probability that the defendant, Patrick
> Henry Murphy would commit criminal acts of violence that
> would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a

neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State,

23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 (

Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that

tends to prove the facts in dispute and compares it with the evidence that tends to disprove

those facts.  The appellate court has the authority and duty to disagree with the jury's

weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas.  The evidence is factually

insufficient if it is so weak that the verdict is clearly wrong.  The evidence is factually

insufficient if the evidence contrary to the verdict is of greater probative value on the

disputed elemental issues.

To arrive at an answer to the special issue, the jury is instructed to deliberate on all

of the evidence admitted during both phases of the trial. Vuong v. State, 830 S.W. 2d 929

33

( Tex. Crim. App. 1992).  The Eighth Amendment requires consideration of the character and record if the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy". Lackey v. State, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

This Court has states some factors that it considers in reviewing the jury's decision. These are: (1) the circumstances of the offense, **including the defendant's state of mind**; (2) the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. Ellason v. State, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991);

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. See, Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989).  That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw. Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more.  Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes.  It was an easy, appealing argument to label the seven criminals, the "Texas

34

Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them. Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed. No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out. He never committed a single violent act while living in there. If allowed to live he will go back to prison to live the rest of his life. It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone. And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder. In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's. Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

The state did not call an expert to testify on the issue of the future dangerousness,

35

although it is routine to do so.  Only two explanations exist for this choice.   Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled.  The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low.  The state''s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give.  This argument was apparently successful.  Therefore,  jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.

### GROUND FOR RELIEF SEVEN

### THE APPLICATION OF <u>TEX. PENAL CODE ANN SECTION 7.02 (b)</u>
### TO <u>TEX. PENAL CODE ANN. SECTION 19.03</u> IS UNCONSTITUTIONAL

Applicant was indicted for the offense of capital murder as proscribed by  <u>Tex. Penal Code Ann. section 19.03</u>.  The indictment was drafted pursuant to the statute alleging that Applicant, acting with the specific intent to kill, caused the death of Officer Aubrey Hawkins, during the course of committing the offense of aggravated robbery.  The state sought the

death penalty.

At trial the state took the position that Applicant was guilty of the charged offense because he was criminally responsible for the acts of six other men under Tex. Penal Code Ann. section 7.02 (b). This provision makes a defendant responsible for the acts of his co-conspirators. Thus, Applicant was culpable, if at all, under the law of conspiracy is applied to the law of capital murder.

The state maintained from voire dire through the subsequent guilty verdict that Applicant was being tried as the "nontrigger man" and that as to the accompanaying mental state all that needed to be proved was he "should have anticipated" the murder. See, section 7.02 (b). The state successfully convicted Applicant of capital murder without having to prove he committed an act resulting in death. Nor did the state have to prove that Applicant had the specific intent to kill. The conviction was for a violation of section 19.03 notwithstanding the facts that Applicant did no act that caused the result, and he did not possess the culpable mental state required.

Section 7.02 (b) requires proof, that in an attempt to carry out a conspiracy to commit one felony, another felony, which should have been anticipated, is committed in furtherance of the intended felony. Id. at 7.06 (b).

The Texas Penal Code at section 15.02 also criminalizes conspiracy, requiring proof of an agreement plus an overt act of one conspirator in furtherance of the common goal. The defendant under that provision is culpable for his own acts. Likewise, when a person is shown to have committed capital murder, that person is criminally responsible for his own acts.

When a person is convicted of capital murder as a party he is criminally responsible

37

for the acts of another, but he must have the specific intent that the death result.  Tex. Penal Code Ann. section 7.02 (a).  However, under the conspiracy theory, the defendant is liable for the acts and mental states of others.  Both components of criminal culpability ae imputed to the co-cospirator.  Tex. Penal Code Ann. section 6.01 .  In Texas a man can be executed who does not act and does not think so as to violate section 19.03.

The Texas Court of Criminal Appeals has also held that Enmund does not apply to the guilt/ innocence phase of a capital murder trial.    Regardless, the rationale and constitutional at principle do apply.  That is,  it is a violation of the Eighth Amendment to expose a defendant to the sanction of death where, as here , he was not present, did not shoot, and had no intent that others, do so.  Here as, in Enmund proof of the culpable mental state has been dispensed with through application of conspiracy law to the Texas Capital murder statute.  This application which renders the conviction for the indicted offense unconstitutional and void.


**GROUND FOR RELIEF EIGHT**


**THE APPLICATION OF TEX. PENAL CODE ANN. SECTION 7.02 (b)**

**TO TEX. CODE CRIM. PROC. ANN. ARTICLE 37.0971 (C ) (1)**


After convicting Applicant of capital murder because he should have anticipated the murder committed in furtherance of the robbery conspiracy the jury was asked whether Applicant "did" in fact "anticipate" the murder.

38

Tex. Code Crim. Proc. Ann. article 37.071 requires the Court to instruct the jury to answer yes or no, whether Applicant actually killed the victim, or if not, whether he intended to kill the victim, or if not, whether he did anticipate the muder occur. The jury answered, "yes".

This question has been called the "anti-parties" charge, and the Texas Court of Criminal Appeals has repeatedly stated it's purpose is to ensure a jury's punishment deliberation is based only upon the conduct of that defendant and no one else. Martinez v. State, 879 S.W. 2d 655 ( Tex. Crim. App. 1994) ; Solomon v. State, 49 S.W. 3rd 756 ( Tex. Crim. App. 2001)(stating purpose is to focus on individualized conduct or mental state of the defendant).   Thus, the instruction was designed to satisfy the Enmund rule that death cannot be imposed based on the conduct of anyone other than the accused. Enmund v. Florida.

Applicant disagrees with the Texas Court of Criminal Appeals assertion that article 37.071 serves it's intended purpose. The law of conspiracy ispresent in this case, not the law of parties.  In the jury charge, the jury was asked whether or not Applicant did anticipate the death of Officer Hawkins.   This questions concerns conspiracy culpability nd has nothing to do woth the law of parties.

This instruction does not focus the jury deliberations on Applicant's conduct to the exclusion of his conspirators.  Rather it re-focuses the jury on acts and mental states of the other conspirators and asks whether Applicant did anticipate the conduct of the others. Conduct has two parts. The act and the evil mind.  The primary actor is death worthy because he satisfies both parts.  The party is death worthy because he possess the evil mind. The co-conspirator is never death worthy because he satisfies neithr part.  There is

39

no act.   There is no mental state.   Execution of this defendant violates the Eighth Amendment.   U.S. Const. Amend. Eight.

## PRAYER

WHEREFORE, Premises Considered, Appellant prays that this Honorable Court reverse and acquit or reform the judgment to reflect a sentence of life imprisonment.

Respectfully submitted,

Allan Fishburn
State Bar Number 07049110
211 North Record Street
Suite 450 L.B. 15
Dallas, Texas 75202
Telephone (214) 761-9170
Facsimile (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief was mailed to the District Attorney's Office, located at George L. Allen, Sr. Courts Building, 600 Commerce, Second Floor, Dallas, Texas  75202, on this the _20_ day of _September_ 2005.

Allan Fishburn

40



SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
TOM PRICE
PAUL WOMACK
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
CHARLES R. HOLCOMB
CATHY COCHRAN
JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711
July 01, 2009

LOUISE PEARSON
CLERK
512-463-1551

SIAN R. SCHILHAB
GENERAL COUNSEL
512-463-1597

Presiding Judge
283rd Judicial Dist Court
133 N. Industrial, LB 33
Dallas TX 75207

**No.:** WR-63,549-01
**Trial Court No.:** W01-00328-T
**Styled:**    MURPHY, PATRICK HENRY JR v. The State
of Texas

Dear Judge:

Enclosed herein is an order entered by this Court regarding the above-referenced
applicant.

If you should have any questions concerning this matter, please do not hesitate to contact
me.

Sincerely,

Sian Schilhab
General Counsel

cc:    Allan Fishburn
Attorney at Law
211 N. Record, Suite 450
Dallas, TX 75202

District Attorney Dallas County
Craig Watkins
Appellate Section
133 N. Industrial Blvd, LB 19
Dallas, TX 75207

Presiding Judge
Page -2-

District Clerk Dallas County
Gary Fitzsimmons
Frank Crowley Courts Bldg.
133 N. Industrial Blvd. LB 12
Dallas, TX 75207-4313

Edward L. Marshall
Assistant Attorney General
PO Box 12548
Austin, TX 78711

Joni White
Assistant Director
Records & Classifications
P. O. Box 99
Huntsville, TX 77340

Patrick Henry Murphy, Jr.
c/o Allan Fishburn
211 North Record Street, Ste. 450
Dallas, TX 75202



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-63,549-01

### EX PARTE PATRICK HENRY MURPHY, JR.

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. W01-00328-T IN THE 283RD JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per Curiam.*

### O R D E R

This is a post-conviction application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.

In November 2003, a jury convicted Applicant of the offense of capital murder. The jury answered the special issues submitted under Article 37.071 of the Texas Code of Criminal Procedure, and the trial court, accordingly, set punishment at death. This Court affirmed Applicant's conviction and sentence on direct appeal. *Murphy v. State,* No. AP-

Murphy - 2

74,851 (Tex. Crim. App. April 26, 2006).

Applicant presents eight allegations in his application in which he challenges the validity of his conviction and resulting sentence. The trial court did not hold an evidentiary hearing. The trial court entered findings of fact and conclusions of law and recommended that the relief sought be denied.

This Court has reviewed the record with respect to the allegations made by applicant. We adopt the trial judge's findings and conclusions. Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

IT IS SO ORDERED THIS THE 1ST DAY OF JULY, 2009.


Do Not Publish

# SCAN COMPLETION FORM

| | |
|---|---|
| **CASE NAME** | Patrick Murphy #999461 |
| **BATCH NUMBER** | B-5717 |
| **REQUESTOR'S NAME** | C.Kelley<br><br>PCL |
| **NUMBER OF FOLDERS/BOXES** | 1 |
| **NUMBER OF SCANNED PAGES** | 189 |
| **BEGINNING BATES NUMBER** | MURPHY_000001 |
| **ENDING BATES NUMBER** | MURPHY_000189 |
| **NUMBER OF CDs/DVDs FURNISHED TO DIVISION** | 2 |
| **COMPLETION DATE** | 12/11/09 |

PLEASE KEEP THIS SHEET FOR YOUR RECORDS

APPLICANT   <u>PATRICK HENRY MURPHY, JR.</u>      APPLICATION NO.  <u>63,549-01</u>

11.071 APPLICATION FOR
WRIT OF HABEAS CORPUS                    <u>XXX</u>

DENY APPLICATION FOR WRIT OF HABEAS CORPUS WITH WRITTEN
ORDER.

*Per Curiam*                                                      7/1/09
JUDGE                                                              DATE

EX PARTE:                          WRIT NO. W01-00328-T(A)

                                   IN THE 283RD JUDICIAL DISTRICT

PATRICK MURPHY                     COURT  , DALLAS COUNTY, TEXAS
(APPLICANT)

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 2 6 2009

Louise Pearson, Clerk

---

POST CONVICTION WRIT OF HABEAS CORPUS
(ART. 11.07, V. A. C. C. P)

---

ATTORNEY OF APPLICANT:          ATTORNEY FOR STATE:

ALLAN FISHBURN                  HON. CRAIG WATKINS

211 NORTH RECORD STREET
                                FRANK CROWLEY COURTHOUSE

SUITE 450

DALLAS, TX 75202                DALLAS, TX 75207-4313


GARY FITZSIMMONS
DISTRICT CLERK
FRANK CROWLEY COURTHOUSE
DALLAS, TX 75207-4313

*Ex Parte:*

*Writ No.:* W01-00328-T(A)

**PATRICK MURPHY**

**283rd JUDICIAL DISTRICT COURT**

**DALLAS COUNTY, TEXAS**

# I N D E X

CLERK'S COVER SHEET                                                                                    VOL. 1-01

APPLICATION FOR A WRIT OF HABEAS COPUS SEEKING                            VOL. 1-02
RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF
CRIMINAL PROCEDURE, ARTICLE 11.07

STATE'S RESPONSE TO APPLICATION FOR WRIT OF HABEAS          VOL. 1-42
CORPUS

STATEMENT FROM COURT                                                                          VOL. 1-70

FINDINGS OF FACT AND CONCLUSIONS OF LAW                              VOL. 1-71

MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS              VOL. 1-94
CORPUS

STATE'S MOTION TO EXTEND THE TIME FOR FILING ANSWER      VOL. 1-96
TO APPLICATION FOR WRIT OF HABEAS CORPUS

ORDER FINDING NO CONTROVERTED, PREVIOUSLY                     VOL. 1-100
UNRESOLVED FACTUAL ISSUES REQUIRING A HEARING AND
SETTING DEADLINES FOR FILING PROPOSED FINDINGS AND
CONCLUSIONS

ORDER APPROVING RECORD ON WRIT APPLICATION                 VOL. 1-101

CLERK'S CERTIFICATION                                                                         VOL. 1-102

No.  W01-00328-T(A)

*Ex Parte:*                                    **Application for Writ of Habeas Corpus**

**PATRICK MURPHY**                      **283rd Judicial District Court**

                                                          **Dallas County, Texas**

# CLERK'S   COVER   SHEET

Applicant's Name: **PATRICK MURPHY**

Offense: **CAP MUR PO**
(As described on the Judgment)

Sentence:        **DEATH    -    TDCJ;** Fine: **No Fine;** Court Costs: **$242.25**
(As described on the Judgment)

Trial Date : **November 20, 2003**
(Date upon which sentence was imposed)

Judge's Name:  **JUDGE VIC CUNNINGHAM**
(Judge Presiding at Trial)

Appeal: **YES**
(If Applicable)

Court of Appeals Cause Number: **NA**
(If Applicable)

Reporter:  **UNKNOWN**
(If Applicable)

Hearing Held: **NO**
(Pertaining to the Application for Writ)

Findings of Fact & Conclusions Filed: **YES**
(Pertaining to the Application for Writ)

Recommendation: **DENY**
(Trial Court's recommendation regarding Application)

Judge's Name: **JUDGE RICK MAGNIS**
(If different from Trial Judge)

001

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

AT AUSTIN

EXPARTE

WOI-00328-T(A)

PATRICK MURPHY

**FILED**
SEP 20 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

WRIT OF HABEAS CORPUS PURSUANT TO 11.071

**Allan Fishburn**
**State Bar Number 07049110**
**211 North Record Street**
**Suite 450**
**Dallas, Texas 75202**
**(214) 761-9170**
**(214) 742-7313**

002

## IDENTITY OF PARTIES AND COUNSEL

HONORABLE VICKERS L. CUNNINGHAM                   The Trial Court
283rd District Court
133 North Industrial Blvd.
Dallas, Texas 75207

PARTIES

PATRICK HENRY MURPHY                              Appellant

THE STATE OF TEXAS                                State

COUNSEL

Mr. John Tatum
990 S. Sherman Street                             Attorney for appellant
Richardson, Texas   75207

Ms. Lisa Smith
Assistant District Attorney                       Attorney for the state
Frank Crowley Courts Building
133 North Industrial Boulevard
Dallas, Texas 75207


Mr. Toby Shook
Assistant District Attorney
Frank Crowley Courts Building                      Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Bill Wirskye
Assistant District Attorney                        Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Allan Fishburn
211 North Record Street                           Attorney for applicant
Suite 450
Dallas, Texas  75202

103

2

# TABLE OF CONTENTS

I D E N T I T Y  OF THE PARTIES                                          2

T A B L E  OF CONTENTS                                                  3

I N D E X  OF AUTHORITIES                                               4

STATEMENT OF THE CASE                                                   7

INFERENCE WITH LIBERTY                                                  7

ISSUES PRESENTED                                                        8

STATEMENT OF FACTS                                                     10

GROUND FOR RELIEF ONE

THE EVIDENCE IS LEGALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE
ANTICIPATED THE COMMISSION OF THE INDICTED
OFFENSE                                                                17

GROUND FOR RELIEF TWO

THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE ANTICIPATED
COMMISSION OF THE INDICTED OFFENSE                                     20

GROUND FOR RELIEF THREE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                       24

GROUND FOR RELIEF NUMBER FOUR

THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                       26

004

GROUND FOR RELIEF FIVE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO
PROVE THAT APPLICANT WOULD BE A CONTINUING
THREAT TO SOCIETY                                                      29

GROUND FOR RELIEF SIX

THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE THAT APPLICANT WOULD BE A
CONTINUING THREAT TO SOCIETY                                           33

GROUND FOR RELIEF SEVEN

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
7.02 (b) to TEX. PENAL CODE ANN SECTION 19.03 IS
UNCONSTITUTIONAL                                                       36

GROUND FOR RELIEF EIGHT

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
7.02 (b) to TEX. CODE CRIM. PROC. ANN ARTICLE
37.071 ( c ) (1)                                                      38
IS UNCONSTITUTIONAL

PRAYER                                                                40

CERTIFICATE OF SERVICE                                                40

005

## INDEX OF AUTHORITIES

**CONSTITUTIONS**

U.S. Const. Amend. Eight                                    40

**CASES**

Clewis v. State, 922 S.W. 2d 126
(Tex. Crim. App. 1996)                                      18,21,25,26

Ellason v. State, 815 S.W. 2d 656
(Tex. Crim. App. 1991)                                      30,34

Jackson v. Virginia, 443 U.S. 307 (1979)                   18,25

Johnson v. State, 23 S.W. 3rd 1
(Tex. Crim. App. 2000)                                     21,26,33

Lackey v. State, 819 S.W. 2d 111
(Tex. Crim. App. 1989)                                     30,34

Martinez v. State, 879 S.W. 2d 655
(Tex. Crim. App. 1994)                                     39

Smith v. State, 779 S.W. 2d 417
Tex. Crim. App. 1989)                                      31,34

Solomon v. State, 49 S.W. 3rd 756
(Tex. Crim. App. 2001)                                     39

Vuong v. State, 830 S.W. 2d 929
(Tex. Crim. App. 1992)                                     30,33

**STATUTES**

Tex. Penal Code Ann. Section 6.01                          38

Tex. Penal Code Ann. Section 7.01                          17,20

Tex. Penal Code Ann. Section 7.02 (b)                      17,20,37

006

Tex. Penal Code Ann. Section 15.02                     37

Tex. Penal Code Ann. Section 19.03                     17,20,36

Tex. Code Crim. Proc. Ann. article 37.071              24,26,30,33,39

**PUBLICATIONS**

Webster's Ninth New Collegiate Dictionary, 1992        18,22,23,27

307

## STATEMENT OF THE CASE

Applicant stood trial for capital murder on theory he was responsible for the conduct of his co-conspirators. The jury convicted finding Applicant should have anticipated the murder. The jury then answered three questions at punishment, one of which was whether Applicant did anticipate the death. The jury answered yes, Applicant is confined awaiting execution. His direct appeal is pending. This is the first writ.

## INTERFERENCE WITH LIBERTY

Applicant is restrained in his liberty by confinement while he awaits execution. This restraint is the product of a fundamentally unfair trial.

008

## ISSUES PRESENTED

1.   The evidence is legally insufficient to prove Applicant should have anticipated the commission of the indicted offense.

2.   The evidence is factually insufficient to prove Applicant should have anticipated the commission of the indicted offense.

3.  The evidence is legally insufficient to prove Applicant did anticipate the commission of the indicted offense.

4.   The evidence is factually insufficient to prove Applicant did anticipate the commission of the indicted offense.

5.  The evidence is legally insufficient to prove that Applicant would be a continuing threat to society.

6.   The evidence is factually insufficient to prove that Applicant would be a continuing threat to society.

7.   The application of <u>Tex. Penal Code Ann. section 7.02 (b)</u> to <u>Tex. Penal Code Ann. section 19.03</u> is unconstitutional.

009

8

8.  The application of <u>Tex. Penal Code section 7.02 (b)</u> to <u>Tex. Code Crim. Proc. Ann.</u> <u>article 37.071 ( c ) (1 )</u> is unconstitutional.

010

## STATEMENT OF FACTS

**Holly Becker** testified about a letter Applicant wrote her, describing some of the events of his childhood and early adult years.  R.R. Vol. 47 , p. 33)

**Detective Jeff Spivey** testified about some of the reading material Applicant had in his possession.    ( R.R. Vol. 47 p. 59-66)

The state rested.  ( R.R. Vol. 47, p. 67)

**Linda Goodman**, Applicant's aunt, testified his mother used to drop him off for lengthy periods of time when he was an infant.  ( R.R. Vol. 47, p. 73-75)

At one point Applicant's father took possession of him.  Ms. Goodman described how Applicant looked when he was returned:

> Well, he was very dirty, had dirty clothes on, had a nasty diaper that he had messed in more than once that was dried on him.  He had cigarette burns all over him from people like putting a cigarette out on his skin.  And his diaper pin on the right side was pinned through the skin and back up into the diaper and fastened to him.

(R.R. Vol. 47, p. 79)

To discipine Applicant, his mother pulled his hair, hit him, or screamed at him. ( R.R. Vol. 47, p. 86)

011

10

**S.O. Woods**, Assistant Director of the Institutional Division testified, that "classification" is

the process of sorting out the prisoners assignment.  (R.R. Vol. 47, p. 121)

Officer Woods had the following colloquy with defense counsel about his prison record:

> There's a copy in here of his control card, which is the document where all of the decisions are recorded on the prisoner as he progresses through the prison system.  I think that's about it.  Those were the important things.

> Would you or could you summarize for the jury the disciplinary actions that have been taken ?  It's my recollection that the first disciplinary report in that packet refers to the escape.  Is that not correct ?

> Murphy was confined approximately 16 years before the escape.  And he was assigned to units at Ferguson, McConnell, and Conally, besides the receiving unit.  And during that time he received maybe a half dozen minor disciplinary incidents, things like refusing to groom or not grooming properly, failure to obey orders promptly, possession of minor items of contraband. He had three incidents which were charged to him as major incidents.  One of them was contraband deal.  One of them was ....

> When you say contraband, is that a hand grenade ?  What is considered contraband in these circumstances ?

> Well, in Texas, the prison system is a closed institution.  We allow absolutely nothing from the outside to come in.  If we don't provide it to you, you are not supposed to have it.  And so anything that an inmate has that hasn't been provided to him by the institution is contraband.  And in this particular case I think they caught him with a radio speaker , an extension cord, things I think that he had probably removed from where he was working.  And he was probably going to use them in his cell to improve his radio reception or hook up a fan or things like that.  He did have three major incidents, though.

(R.R. Vol. 47, p. 150-151)

Applicant called **George Rivas** to testify.  ( R.R. Vol. 48, p. 4)

012

Rivas planned the prison escape and he "handpicked" the men who accompanied him. ( R.R. Vol. 48, p. 4, 10-14)

11

Applicant served as the gang's lookout, because he was not aggressive. ( R.R. Vol. 48, p. 4)

Applicant told Rivas that he would not participate in any robberies by going into stores. ( R.R. Vol. 48, p. 16)

Applicant job as lookout to warn Rivas if the police were coming so they could leave as quickly as possible. ( R.R. Vol. 48, p. 17)

It was known that no one had ever been hurt in any of the robberies Rivas committed. ( R.R. Vol. 48, p. 19)

In the instant case the first communication Rivas got from Applicant was Applicant telling him a suspicious report activity had been issued for the Oshman's store. ( R.R. Vol. 48, p. 22)

In response Rivas told anyone to hurry out the back so they could escape. ( R.R. Vol. 48, p. 22)

Later, Applicant alerted Rivas that a police car was "coming around back". ( R.R. Vol. 48, p. 46)

013

Applicant told Rivas to "leave". He repeated that instruction and also said "you've got company". ( R.R. Vol. 48, p. 48)

Applicant's father , **Patrick Murphy, Sr. ,** testified he divorced Applicant's mother when he was two years old. ( R.R. Vol. 48, p. 101)

Mr. Murphy didn't see Applicant again until he was nine. ( R.R. Vol. 48, p. 102)

When Applicant was nine years old, Mr. Murphy was telephoned to come and get him because his mother no longer wanted him. ( R.R. Vol. 48, p. 101- 110)

Mr. Murphy found Applicant in an abandoned school bus. He was filthy and covered with "ringworms" and open sores. (R.R. Vol. 48, p. 115-117)

On cross examination Mr. Murphy testified that Applicant pulled a loaded shotgun on him when he was in high school. ( R.R. Vol. 48, p. 117)

**Dr. Mark Vigen,** a psychologist, examined Applicant. ( R.R. Vol. 48, p. 136)

Dr. Vigen stated the facts of Applicant's childhood as follows:

> Well, one is Mr. Murphy has a history of many physical moves from one town to another. He has a history of many moves from one school to another. Many one teacher to another. He has a history of early abandonment from his father, where his father ... he was taken away from his father at 18

114

13

months.

He has a history of being sexually abused. He has a history of being with an unstable mother. He has a history of being shipped off and raised by other people, including his aunt. Then he has a history of early school failure and running away, particularly as a grade school kid. He starts running away.

His mother was very unstable. She had various jobs. She would leave often. I think he had a fairly normal first year with his mother and father when they were living together. But then at 18 months he went off to live with his mother and she was a very unstable person. And she had ... she would leave the home for weeks and months on end and no one would really know where she is.

She had multiple relationships with men and they included two stepfathers who were abusive to Mr. Murphy. And then there were other members of the family that were also abusive to him as well.

And so then he returned, as you know, at about nine and a half years old to live with his father, which he really wanted, but unfortunately his father was a long - haul, over the road truck driver and he was gone a lot of the time. And at nine and a half years old, as he testified, Mr. Murphy was a very undeveloped, uncared for child, a very neglected child, neglected, if not abused, and so on.

And so then reuniting with his father, he really never in his own mind got from his father what he wanted, which was a relationship with his father because the father was absent a lot. And he continued to run away, which as a result of, you know, the low self-esteem and lack of self, he's reactive, he's running.

And you add school failure to that as a result of multiple schools and you end up this teenaged boy who has essentially not taken on any values from his parents, not taken on any values or many values from school and religious organizations and so on and lacks a real sense of himself. And so on he's acting out, you know, he's running away and he's engaging in truant behavior, and as Mr. Murphy Sr. said.

(R.R. Vol. 48, p. 160-161)

Dr. Vigen made the following diagnoses of Applicant:(1) borderline personality traits

(2) narrsastic personality traits and also a (3) nondifferentiated sexual disorder. (R.R. Vol. 015

48, p. 161-163)

Dr. Vigen testified Applicant's personality is one of a follower rather than a leader.
( R.R. Vol. 48, p. 162-163)

Applicant had no reports of violence on his 16 ½ years in prison. ( R.R. Vol. 48, p. 164)

Ranking the risk of violence on a scale from high to medium, to low, Dr. Vigen would rank
Applicant as , " very low". ( R.R. Vol. 48, p. 162)

Dr. Vigen's court appointed expert fee was $ 18,000.00. ( R.R. Vol. 48, p. 168)

Dr. Vigen testified that Applicant was in prison for a violent crime, and he had some fights
in high school. ( R.R. Vol. 45, p. 189)

Dr. Vigen characterized the prison escape as a act of violence. ( R.R. Vol. 48, p. 190)

Dr. Vigen diagnosed Applicant as having " anti-social features" in his personality, but not
anti- social personality disorder. ( R.R. Vol. 48, p. 191)

Antisocial personality disorder is a "pervasive pattern of disregard for and violation of the
rights of others, occurring since age 15, and indicated by three or more of the ... breaking
the law, lying, and impulsivity, aggressiveness, recklessness, failure to work, and lack of

916

15

remorse.  ( R.R. Vol. 48, p. 196)

Dr. Vigen predicted that Applicant would be a very low risk to be violent in the future, based on his prison record and the fact that he would serve his remaining time in " administrative segregation".  ( R.R. Vol. 48 , p. 201)

Both sides rested and closed on punishment.  ( R.R. Vol. 49, p. 16)

Prior to argument Applicant objected that Special issue number two violated the Rules of Enmund v. Florida, 458 U.S. 782 and Tison v. Arizona.  These objections were overruled. ( R.R. Vol. 49, p. 11)

The jury answered special issue number one, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number two, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number three, "no".  ( R.R. Vol. 49, p. 80-81)

The trial court pronounced sentence as prescribed by Tex. Code Crim. Proc. Ann. Article 37.071.  (R.R. Vol. 49, p. 81-82)

017

16

# GROUND FOR RELIEF ONE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT SHOULD HAVE ANTICIPATED THE COMMISSION OF THE INDICTED OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as defined under Section 19.02 (b)(1) and

> (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the offense, under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02 (b).  These provisions read in relevant part:

> Section 7.01 (a)

> a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both.

> Section 7.02

> (a) a person is criminally responsible for an offense committed by the conduct of another if ;

> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one

018

17

that should have been anticipated as a result of the carrying out of the conspiracy.

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979). A claim of legal insufficiency is an argument that the case should never have been presented to the jury. Clewis v. State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

Under this standard of appellate review the state of the evidence proves that no rational jury would have convicted. The state at closing argument pointed out that the only issue was whether Applicant should have anticipated the murder of Officer Hawkins. The prosecutor claimed the evidence was overwhelming and that it went beyond proof of "should have anticipated" and in fact proved he did "anticipate" the murder. The prosecutor then went over his evidence as does Applicant here.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S.  precision bombing of Iraqi positions during the Gulf War.  Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise: Webster's Ninth New Collegiate Dictionary, 1992.

$919$

The prosecutor thus actually argued that the plan was for six armed men to encircle

18

the squad car and empty the guns at the target police office. The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded. Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that extant. Obviously, the possibility6 of the police arriving during the crime would have been planned for. The options would be flight or fight. Flight was selected. Applicant's duty was to warn Rivas via radio, so that the gang could flee before the police arrived. The fight ensued because the gang's timing was off.

An examination of the shooting corroborats this " flight plan". Officer Hawkins arrived early. The six members of the gang panicked. They happened to form what amounted to a circle, surrounding the police car. Five out six emptied their weapons. They were in each others line of fire. They shot and continued to shoot anyway. Rivas and another member were wounded by gang member fire during the Chaos. The so-called ambush did not occur. This inentional murder was not the result of carrying out the plan to meet the police contingency. It was the predict of poor timing and cowards panicking.

020

## GROUND FOR RELIEF TWO

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT SHOULD HAVE ANTICIPATED COMMISSION OF THE INDICTED OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as defined under Section 19.02 (b)(1) and

> (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the offense under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02 (b).  These provisions read in relevant part:

> Section 7.01

> (a) a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both.

> Section 7.02

> (a) a person is criminally responsible for an offense committed by the conduct of another if ;

> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed,

021

20

though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

In determining factual sufficiency, the appellate court views all the evidence in a neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State, 23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 ( Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that tends to prove the facts in dispute and compares it with the evidence that tends to disprove those facts. The appellate court has the authority and duty to disagree with the jury's weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas. The evidence is factually insufficient if it is so weak that the verdict is clearly wrong. The evidence is factually insufficient if the evidence contrary to the verdict is of greater probative value on the disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime. Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd. The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven. If not biased, this jury simply did not deliberate. Eihr way the jury's verdict is clearly wrong. Thus, Reversal would not amount to substituting the Court's judgment for that of the jury. The verdict is manifestly unjust.

022

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas

21

Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise. Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor argued the attack was preplanned.  That means the shooter were in position when they opened fire.  The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded.  Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists.  He told Rivas to "leave" because that was the plan even when the police closed in.  The gang did anticipate police interference but that contingency was planned for by getting away before they arrived.  This plan was implemented via a lookout warning Rivas when it was time to go.  The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos.  This was no ambush. Rather, six *023* stupid cowards simply started shooting regardless of who was in the line of fire.  No  jury

22

could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the Clewis standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

After the breakout, Rivas continued as gang leader, and two robberies were planned and completed. There were no injuries. At one point during the Oshman's robbery an employee grabbed Rivas' gun. Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance". Webster's Ninth New Collegiate Dictionary, 1992.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left. If this did happen it was foreseen that a firefight would ensue. This contingency was dealt with by planning to be gone befoe the police could get there. A lookout's duty is to warn of impending danger. But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to 024

23

respond to danger by fleeing or fighting. The circumstances answer to real question in this case. Did the plan call for flight or fight. The physical position of the shooter and the target show the warning ws transmitted so the gang could flee. Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire. Moeover, Applicant stated the warning via a command. He said: " Leave". Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.

## GROUND FOR RELIEF THREE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE

To render Applicant death worthy the state had to convince a jury he did in fact anticipate that the robbery would include a murder to further its completion. Tex. Code Crim. Proc. Ann. article 37.071.

At the punishment phase the jury was instructed to answer the question whether Applicant did anticipate the murder at issue. The jury found that he did. The evidence is legally insufficient to support the finding.

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a

025

24

reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979). A claim of legal insufficiency is an argument that the case should never have been presented to the jury. Clewis v. State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

A rational conclusion is one that is objectively agreeable to reason, and therefore arrived at by the dispassionate use of logic. Applicant argues that no rational jury would have found that he anticipated the murder of Officer Aubrey Hawkins.

The state argued to the jury that there was no doubt on this issue. That is, their evidence was overwhelming. When examined in the light most favorable to the jury's answer, the opposite conclusion must be drawn. There was no evidence in this case sufficient to prove such the existence of actual anticipation.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, to say the planned t fight, not flee, in the face of the police. This theory is at odds with the evidence. The stat's presentation was not hampered by astounding lack of proof because of the spectular prison break accomplished. The state's real theory was anyone who breaks out of a Texas prison is a lethal force that must be killed. Thu, the six living members of the gang were viewed as fungibile. That the facts, were incompatible with the reputation and made n difference to the state or the jury.

The prosecutor argued the shooting was a plan implemented against police 126 interference. It apparently did not occur o the jury that common sense says there is no such thing as an ambush that calls for the attackers to intentionally place each other in the

line of fire.  No rational jury could have believed the shooting as actually an ambush.

When this conclusion is reached the rest of the state's case falls with it.

## GROUND FOR RELIEF FOUR

### THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT

### DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE

After the close of the evidence the trial court instructed the jury pursuant to Tex.

Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that
> there is a reasonable probability that the defendant, Patrick
> Henry Murphy would commit criminal acts of violence that
> would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a

neutral light and sets aside the verdict if it is contrary to the evidence.  Johnson v. State,

23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 (

Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that

tends to prove the facts in dispute and compares it with the evidence that tends to disprove

those facts.  The appellate court has the authority and duty to disagree with the jury's

weighing of the evidence where that evaluation is clearly wrong.                    027

The scope of this review includes the use of two formulas.  The evidence is factually

insufficient if it is so weak that the verdict is clearly wrong.  The evidence is factually

insufficient if the evidence contrary to the verdict is of greater probative value on the

disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime. Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd. The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven. If not biased, this jury simply did not deliberate. Eihr way the jury's verdict is <u>clearly</u> wrong. Thus, Reversal would not amount to substituting the Court's judgment for that of the jury. The verdict is manifestly unjust.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, "Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up. Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An "ambush" is a trap in which concealed persons lie in wait to attack by surprise. <u>Webster's Ninth New Collegiate Dictionary, 1992.</u>

The prosecutor argued the attack was preplanned. That means the shooter were in position when they opened fire. The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded. Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that

028

27

it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists. He told Rivas to "leave" because that was the plan even when the police closed in. The gang did anticipate police interference but that contingency was planned for by getting away before they arrived. This plan was implemented via a lookout warning Rivas when it was time to go. The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos. This was no ambush. Rather, six stupid cowards simply started shooting regardless of who was in the line of fire. No jury could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the Clewis standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

029

After the breakout, Rivas continued as gang leader, and two robberies were planned

28

and completed. There were no injuries. At one point during the Oshman's robbery an employee grabbed Rivas' gun. Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance". Webster's Ninth New Collegiate Dictionary, 1992.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left. If this did happen it was foreseen that a firefight would ensue. This contingency was dealt with by planning to be gone befoe the police could get there. A lookout's duty is to warn of impending danger. But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to respond to danger by fleeing or fighting. The circumstances answer to real question in this case. Did the plan call for flight or fight. The physical position of the shooter and the target show the warning ws transmitted so the gang could flee. Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire. Moeover, Applicant stated the warning via a command. He said: " Leave". Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.

## GROUND FOR RELIEF FIVE

030

# THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE THAT APPLICANT

## WOULD BE A CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to Tex. Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that there is a reasonable probability that the defendant, Patrick Henry Murphy would commit criminal acts of violence that would constitute a continuing threat to society?

To arrive at an answer to the special issue, the jury is instructed to deliberate on all of the evidence admitted during both phases of the trial. Vuong v. State, 830 S.W. 2d 929 ( Tex. Crim. App. 1992). The Eighth Amendment requires consideration of the character and record of the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy". Lackey v. State, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

The Texas Court of Criminal Appeals has made a list of factors to aid them in the analysis of this issue. These are: (1) the circumstances of the offense, **including the defendant's state of mind**; (2) the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. Ellason v. State, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991).

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. <u>See</u>, <u>Smith v. State</u>, 779 S.W. 2d 417 ( Tex. Crim. App. 1989). That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw. Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more. <u>Smith v. State</u>, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes. It was an easy, appealing argument to label the seven criminals, the "Texas Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them. Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed. No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out. He never committed a single violent act while living in there. If allowed to live he will go back to prison to live the rest of his life. It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone. And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

032

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder. In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's. Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

The state did not call an expert to testify on the issue of the future dangerousness, although it is routine to do so.  Only two explanations exist for this choice.  Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled.  The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low.  The state"s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give.  This argument was apparently successful.  Therefore,  jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.

033

# GROUND FOR RELIEF SIX

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE THAT APPLICANT WOULD BE a CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to Tex. Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that there is a reasonable probability that the defendant, Patrick Henry Murphy would commit criminal acts of violence that would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State, 23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 ( Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that tends to prove the facts in dispute and compares it with the evidence that tends to disprove those facts. The appellate court has the authority and duty to disagree with the jury's weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas. The evidence is factually insufficient if it is so weak that the verdict is clearly wrong. The evidence is factually insufficient if the evidence contrary to the verdict is of greater probative value on the disputed elemental issues.

To arrive at an answer to the special issue, the jury is instructed to deliberate on all of the evidence admitted during both phases of the trial. Vuong v. State, 830 S.W. 2d 929

034

33

( Tex. Crim. App. 1992).  The Eighth Amendment requires consideration of the character and record if the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy".  Lackey v. State, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

This Court has states some factors that it considers in reviewing the jury's decision. These are: (1) the circumstances of the offense, **including the defendant's state of mind**; (2) the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. Ellason v. State, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991);

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. See, Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989).  That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw. Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more.  Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes.  It was an easy, appealing argument to label the seven criminals, the "Texas 035

34

Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them. Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed. No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out. He never committed a single violent act while living in there. If allowed to live he will go back to prison to live the rest of his life. It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone. And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder. In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's. Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

036

The state did not call an expert to testify on the issue of the future dangerousness,

although it is routine to do so.  Only two explanations exist for this choice.   Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled.  The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low.  The state"s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give.  This argument was apparently successful.  Therefore,  jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.

## GROUND FOR RELIEF SEVEN

## THE APPLICATION OF <u>TEX. PENAL CODE ANN SECTION 7.02 (b)</u> TO <u>TEX. PENAL CODE ANN. SECTION 19.03</u> IS UNCONSTITUTIONAL

Applicant was indicted for the offense of capital murder as proscribed by <u>Tex. Penal Code Ann. section 19.03</u>.  The indictment was drafted pursuant to the statute alleging that Applicant, acting with the specific intent to kill, caused the death of Officer Aubrey Hawkins, during the course of committing the offense of aggravated robery.  The state sought the

037

36

death penalty.

At trial the state took the position that Applicant was guilty of the charged offense because he was criminally responsible for the acts of six other men under Tex. Penal Code Ann. section 7.02 (b). This provision makes a defendant responsible for the acts of his co-conspirators. Thus, Applicant was culpable, if at all, under the law of conspiracy is applied to the law of capital murder.

The state maintained from voire dire through the subsequent guilty verdict that Applicant was being tried as the "nontrigger man" and that as to the accompanaying mental state all that needed to be proved was he "should have anticipated" the murder. See, section 7.02 (b). The state successfully convicted Applicant of capital murder without having to prove he committed an act resulting in death. Nor did the state have to prove that Applicant had the specific intent to kill. The conviction was for a violation of section 19.03 notwithstanding the facts that Applicant did no act that caused the result, and he did not possess the culpable mental state required.

Section 7.02 (b) requires proof, that in an attempt to carry out a conspiracy to commit one felony, another felony, which should have been anticipated, is committed in furtherance of the intended felony. Id. at 7.06 (b).

The Texas Penal Code at section 15.02 also criminalizes conspiracy, requiring proof of an agreement plus an overt act of one conspirator in furtherance of the common goal. The defendant under that provision is culpable for his own acts. Likewise, when a person is shown to have committed capital murder, that person is criminally responsible for his own acts.

038

When a person is convicted of capital murder as a party he is criminally responsible

37

for the acts of another, but he must have the specific intent that the death result. <u>Tex.</u>
<u>Penal Code Ann. section 7.02 (a)</u>. However, under the conspiracy theory, the defendant
is liable for the acts and mental states of others. Both components of criminal culpability
ae imputed to the co-cospirator. <u>Tex. Penal Code Ann. section 6.01</u>. In Texas a man can
be executed who does not act and does not think so as to violate <u>section 19.03</u>.

The Texas Court of Criminal Appeals has also held that <u>Enmund</u> does not apply to the
guilt/ innocence phase of a capital murder trial. Regardless, the rationale and
constitutional at principle do apply. That is, it is a violation of the Eighth Amendment to
expose a defendant to the sanction of death where, as here , he was not present, did not
shoot, and had no intent that others, do so. Here as, in <u>Enmund</u> proof of the culpable
mental state has been dispensed with through application of conspiracy law to the Texas
Capital murder statute. This application which renders the conviction for the indicted
offense unconstitutional and void.


**GROUND FOR RELIEF EIGHT**


**THE APPLICATION OF <u>TEX. PENAL CODE ANN. SECTION 7.02 (b)</u>**

**<u>TO TEX. CODE CRIM. PROC. ANN. ARTICLE 37.0971 (C ) (1)</u>**


After convicting Applicant of capital murder because he should have anticipated the
murder committed in furtherance of the robbery conspiracy the jury was asked whether
Applicant "did" in fact "anticipate" the murder.

039

38

Tex. Code Crim. Proc. Ann. article 37.071 requires the Court to instruct the jury to answer yes or no, whether Applicant actually killed the victim, or if not, whether he intended to kill the victim, or if not, whether he did anticipate the muder occur. The jury answered, "yes".

This question has been called the "anti-parties" charge, and the Texas Court of Criminal Appeals has repeatedly stated it's purpose is to ensure a jury's punishment deliberation is based only upon the conduct of that defendant and no one else. Martinez v. State, 879 S.W. 2d 655 ( Tex. Crim. App. 1994) ; Solomon v. State, 49 S.W. 3rd 756 ( Tex. Crim. App. 2001)(stating purpose is to focus on individualized conduct or mental state of the defendant).   Thus, the instruction was designed to satisfy the Enmund rule that death cannot be imposed based on the conduct of anyone other than the accused. Enmund v. Florida.

Applicant disagrees with the Texas Court of Criminal Appeals assertion that article 37.071 serves it's intended purpose. The law of conspiracy ispresent in this case, not the law of parties.   In the jury charge, the jury was asked whether or not Applicant did anticipate the death of Officer Hawkins.   This questions concerns conspiracy culpability nd has nothing to do woth the law of parties.

This instruction does not focus the jury deliberations on Applicant's conduct to the exclusion of his conspirators. Rather it re-focuses the jury on acts and mental states of the other conspirators and asks whether Applicant did anticipate the conduct of the others. Conduct has two parts. The act and the evil mind.   The primary actor is death worthy because he satisfies both parts.  The party is death worthy because he possess the evil mind. The co-conspirator is never death worthy because he satisfies neithr part. There is

040

39

no act.   There is no mental state.   Execution of this defendant violates the Eighth

Amendment.  U.S. Const. Amend. Eight.

## PRAYER

WHEREFORE, Premises Considered, Appellant prays that this Honorable Court

reverse and acquit or reform the judgment to reflect a sentence of life imprisonment.

Respectfully submitted,

Allan Fishburn
State Bar Number 07049110
211 North Record Street
Suite 450 L.B. 15
Dallas, Texas 75202
Telephone (214) 761-9170
Facsimile (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief was mailed to the District

Attorney's Office, located at George L. Allen, Sr. Courts Building, 600 Commerce,

Second Floor, Dallas, Texas  75202, on this the _____ 20 _____ day of _September_

2005.

Allan Fishburn

041

40

**WRIT NO. W01-00328-T(A)**

In the 283rd Judicial District Court
of Dallas County, Texas

**EX PARTE
PATRICK HENRY MURPHY, JR.,**
Applicant



*STATE'S ORIGINAL ANSWER TO
APPLICATION FOR WRIT OF HABEAS CORPUS*

Bill Hill
**Criminal District Attorney**
Dallas County, Texas

***Counsel of Record:***
Lisa Smith
**Assistant District Attorney**
State Bar No. 00787131
Frank Crowley Courthouse
133 N. Industrial Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3638
(214) 653-3643 (FAX)

*ATTORNEYS FOR THE STATE OF TEXAS*

042

**ORIGINAL**

# WRIT NO.  W01-00328-T(A)

In the 283rd Judicial District Court
of Dallas County, Texas

---

### EX PARTE
### PATRICK HENRY MURPHY, JR.,
Applicant

---

*STATE'S ORIGINAL ANSWER TO*
*APPLICATION FOR WRIT OF HABEAS CORPUS*

---

Bill Hill
**Criminal District Attorney**
Dallas County, Texas

***Counsel of Record*:**
Lisa Smith
**Assistant District Attorney**
State Bar No. 00787131
Frank Crowley Courthouse
133 N. Industrial Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3638
(214) 653-3643 (FAX)

*ATTORNEYS FOR THE STATE OF TEXAS*

043

**ORIGINAL**

# TABLE OF CONTENTS

PROCEDURAL HISTORY ........................................................................................... 1

FACTUAL SUMMARY ............................................................................................... 1

RESPONSE TO GROUNDS 1 – 6 ................................................................................ 8

   Insufficiency Claims Not Cognizable ...................................................................... 8

   Insufficiency Claims Procedurally Barred ............................................................ 8

      Grounds 1-4 ........................................................................................................ 9

      Grounds 5 & 6 ................................................................................................... 9

   Evidence is Sufficient .............................................................................................. 9

      Evidence Sufficient to Support Capital Murder Conviction ...................................... 10

      Evidence Sufficient to Support Affirmative Finding on Anti-Parties Issue ............... 13

      Evidence Sufficient to Support Affirmative Finding of Future Dangerousness ......... 16

RESPONSE TO GROUNDS 7 & 8 .............................................................................. 22

   Claims Procedurally Barred .................................................................................. 22

   No Constitutional Violation ................................................................................... 23

CONCLUSION .......................................................................................................... 24

CERTIFICATE OF SERVICE .................................................................................... 24

044

Pursuant to article 11.071 of the criminal procedure code, the State of Texas, respondent, by and through the Criminal District Attorney of Dallas County, files this answer to applicant's original application for writ of habeas corpus.

## PROCEDURAL HISTORY

Applicant is confined pursuant to the judgment and sentence of the 283rd Judicial District Court of Dallas County, Texas, convicting him of the December 24, 2000 capital murder of Irving Police Officer Aubrey Hawkins. On November 20, 2003, in accordance with the jury's answers to the special issues, this Court sentenced applicant to death.

The Court of Criminal Appeals affirmed applicant's conviction and death sentence on direct appeal on April 26, 2006. *Murphy v. State*, No. AP-74,851 (Tex. Crim. App. Apr. 26, 2006).

Applicant untimely filed an original application for writ of habeas corpus on September 20, 2005. The application was forwarded to the Court of Criminal Appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 4(d) (Vernon 2005). On December 14, 2005, the Court of Criminal Appeals found good cause for the untimeliness of the application, ordered the trial court to proceed with its review of the application, and ordered the statutory timelines to run as of December 14, 2005, the date of the Court's order. The Court granted the State's request for the statutorily authorized 60-day extension, ordering the State to file its response on or before June 12, 2006.

045

## FACTUAL SUMMARY

On December 13, 2000, applicant and six other inmates, George Rivas, Larry Harper, Donald Newbury, Randy Halprin, Joseph Garcia, and Michael Rodriguez,

1

escaped from the Connally Prison Unit in Texas. The group stole sixteen firearms and ammunition from the unit and fled to Dallas. (RR42: 84-88).

Eleven days later, on Christmas Eve, the group robbed the employees of the Oshman's Supersports store in Irving, Texas. The day before the robbery, they staked out the store. The next night, just before the store closed, applicant, Garcia, Halprin, and Newbury entered the store acting as customers. Then Rivas and Harper entered the store disguised as security guards. Applicant monitored the Irving Police Department's radio frequencies and acted as a look-out in the parking lot. All of them were armed and carried two-way radios. (State's Ex. 978).

Rivas and Harper spoke with Tim Moore and Wesley Ferris, two of the store's managers. They pretended to be investigating a string of thefts at another store. Mr. Ferris showed applicant the store's video monitoring system, and Rivas asked the employees to view a lineup. (RR40: 50-57).

Once the last customer left and the employees were up front, Rivas drew a revolver and announced the robbery. Rivas pointed his gun at Mr. Ferris and threatened to shoot everyone if Ferris resisted. Applicant and the other escapees also drew their weapons, surrounded the employees, and then searched them for weapons. Once all the employees were gathered at the front, applicant's codefendants walked them in a single-file line to the break room at the back of the store. (RR40: 58-66; RR41: 34-38).

The employees were ordered into the break room where they were forced to kneel facing the wall. Some of the escapees stayed in the break room, searching and binding the employees and taking some of their personal belongings. The escapees assaulted

046

2

some of the employees and repeatedly threatened to kill them. (RR40: 65-67; RR41: 39-40).

Meanwhile, Rivas took Mr. Ferris to the store office and ordered him to open the safe. Rivas took the cash from the safe as well as Mr. Ferris's car keys, then he forced Mr. Ferris to open the store's gun vault. Newbury gathered the guns from the vault and ammunition. Rivas then returned Mr. Ferris to the break room and left to retrieve Mr. Ferris's car. Rodriguez ordered Mr. Ferris to face the wall, physically forced him to his knees, and took his house keys, money, and wallet. (RR40: 68-77).

Outside in the parking lot, Misty Wright, the pregnant girlfriend of one of the employees, was waiting in her car for her boyfriend when she saw the employees being "patted down" and then walking to the back of the store in a single file line. Frightened, she called her friend Sheila. Sheila drove to the store and joined Misty in her car. While watching the store, the two women saw Rivas come outside. Rivas approached them when Sheila, unthinkingly, activated her car alarm. The women drove off, but parked nearby and watched Rivas drive Mr. Ferris's Explorer to the rear of the store. They called 911, and Irving police officers were dispatched to the store. (RR41: 15-27).

Applicant notified Rivas that police had been dispatched to the store on a suspicious persons call. Irving Police Officer Aubrey Hawkins was the first of the officers to arrive at the scene. Applicant again radioed Rivas, warning him of Hawkins's arrival and telling him that Hawkins was driving around to the back of the store where Rivas was located. Hawkins drove to the loading dock and pulled in right behind the Explorer, arriving just as the Rivas and the other codefendants were fleeing. (RR40: 77-

047

3

78; RR41: 40-41; State's Ex. 978).

The codefendants greeted Officer Hawkins with a hail of gunfire. (RR40: 78-80; RR41: 41-42, 47-49). Within seconds, Hawkins was shot eleven times by at least five different guns from at least three different directions; some of the shots were at very close range. (RR42: 11, 79-83, 200, 208-09, 213). One of the codefendant's pulled Officer Hawkins out of his car, and as the codefendants fled the scene, they ran over his body, dragging it several feet. (RR41: 79-81; RR42: 28-2983; State's Exs. 207, 208, 237). Officer Hawkins died immediately from multiple gunshot wounds. (RR40: 108, 119-20; RR42: 30).

Minutes later, Officer Timothy Cassout arrived at the scene and found Officer Hawkins's body. Additional officers responded to the store in reply to Officer Cassout's call for assistance and, eventually, the Oshman's employees were freed. Later that night, the employees identified some of applicant's codefendants from a photographic lineup. (RR40: 83-86, 104-10, 117-21, 132-33; RR41: 43-44).

Applicant fled from the front parking lot and rendezvoused with his codefendants at a nearby apartment complex where they abandoned the Explorer. Over the next several days, applicant and his codefendants made their way to Colorado. They purchased an RV and rented a space at the Coachlight Motel and RV Park in Woodland Park, Colorado. (RR42: 91-102; State's Ex. 978).

On January 21, 2001, more than a month after the escape and weeks after Officer Hawkins's murder, a couple of the park's residents recognized some of the codefendants and contacted the Teller County Sheriff's Department. Overnight, Sheriff Frank Fehn

048

and other deputies surveilled the RV and, suspecting the men were the famed "Texas Seven," contacted the FBI and other local authorities for assistance. (RR42: 103-07).

Rodriguez, Garcia, and Rivas were captured the next day by a Colorado SWAT team when they left the RV park in their Jeep and stopped at a gas station just off the highway. Harper and Halprin were confronted at the RV. Halprin surrendered; Harper committed suicide, shooting himself twice in the chest. (RR42: 108-13, 122-29, 136-38).

Applicant and Newbury were captured two days later at a hotel in Colorado Springs. Applicant and Newbury engaged in a standoff with police for several hours. They possessed an arsenal of firearms in their hotel room and were heard "racking" their weapons. They surrendered after each gave a statement to a local reporter. (RR43: 3-11, 37-51, 59-79).

The FBI agents who searched the RV and the Jeep found Officer Hawkins's firearm and the firearms stolen from Oshman's and the Connally Unit. Officer Hawkins's firearm was found in the Jeep along with several other firearms. Most of the firearms from the Connally Unit had been dismantled and stored in a compartment underneath the RV, and many of the firearms from Oshman's were stored in a closet inside the RV. In addition to the weapons, the agents discovered some of the Oshman's employees' personal belongings, thousands of dollars in cash, ammunition, smoke grenades, rifle scopes, two-way radios, scanners, and radio frequency guides for both Texas and Colorado. The frequencies used by the Irving police department were marked. (RR42: 146-76, 184-93).

049

Irving Police Investigator Randall Johnson interviewed applicant at the Teller

County Jail on the day of his arrest. Applicant waived his *Miranda* rights and executed a nine-page written statement, admitting his participation in the robbery. (RR40: 141-59; State's Ex. 978). Furthermore, during the standoff in Colorado, applicant orally admitted to his role in the robbery. (RR43: 49-50).

At the time of the prison escape, applicant was serving a 50-year sentence for the aggravated sexual assault of Jeannie Grieser. Applicant broke into Grieser's apartment at night and assaulted her at knife-point while her mother and young son slept in another room. (RR45:35-93; State's Ex. 830). Applicant also had a prior conviction for burglary of a building. Police discovered applicant and his brother burglarizing a store. They were found hiding in the store's attic, and applicant subsequently confessed. (RR45: 16-27; State's Exs. 830, 979). Furthermore, before the Oshman's robbery, applicant and his codefendants robbed the employees of an Auto Zone and a Radio Shack. (RR46: 61-100; RR47: 33-38).

During the escape, applicant helped lure one of the prison employees into the warehouse where he was subdued. Then applicant helped subdue and restrain the prison guard working the tower at the back gate. (RR46: 22-31, 32-42). Applicant also cut plywood to conceal some of his codefendants in the bed of the pickup truck they used to escape. (RR46: 18-19).

Immediately after the escape, an officer searched applicant's cubicle and found a handwritten note:

> I refuse to abide by the dictations of
> a police state, which Texas has surely become.
> Today I fire the first shot of

050

6

THE NEW REVALUTION
Long Live Freedom
Death to Tyranny

(RR46: 51-61; State's Ex. 1010).  And in the TDCJ pickup truck used by applicant and his codefendants to escape, police found applicant's journal.  The journal listed a multitude of paramilitary websites and websites that sold weapons, false identification documents, and body armor.  (RR47: 39-51, 52-57, 60-66).

Rivas and applicant's aunt and father testified on applicant's behalf at punishment. Rivas attempted to minimize applicant's role in the robberies and in the murder of Officer Hawkins.  He denied applicant's job was to initiate a firefight in the event of a standoff. He also claimed applicant did not want to go inside during the robberies and that his eyesight was too poor for him to act as a sniper.  (RR48: 5-99).  Applicant's aunt and father testified that applicant's mother was an alcoholic and drug addict and that applicant had suffered neglect and both physical and sexual abuse as a child.  Applicant's father also acknowledged, however, that applicant had sexually abused his younger half-sister and had once pulled a gun on his father during an argument.  (RR47: 68-117; RR48: 99-124).

Finally, applicant offered the expert testimony of S.O. Woods and Dr. Mark Vigen.  Mr. Woods, a retired assistant director of TDCJ, testified about how applicant would be classified, the restrictive environment in which he would be housed, and his parole eligibility if he should receive a life sentence.  (RR47: 118- 76).  Dr. Vigen, a psychologist who evaluated applicant, testified that he had a sexual disorder, narcissistic borderline antisocial traits, that he acted as a follower more than a leader during the

051

7

escape and murder, and that he would pose a very low risk of future danger in prison. (RR48: 136-233).

## RESPONSE TO GROUNDS 1 – 6

In his first six grounds for relief, applicant challenges the legal and factual sufficiency of the evidence supporting his conviction and death sentence. In Grounds 1 and 2, he attacks the sufficiency of the evidence of his culpability as a party conspirator. In Grounds 3 and 4, he attacks the sufficiency of the evidence supporting the jury's affirmative answer to the anti-parties special issue. In Grounds 5 & 6, he attacks the sufficiency of the evidence supporting the jury's affirmative answer to the future dangerousness special issue.

### INSUFFICIENCY CLAIMS NOT COGNIZABLE

Applicant urges this Court to conduct its own legal and factual sufficiency review of the evidence under the standards enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). It has long been the general rule, however, that the sufficiency of the evidence cannot be collaterally attacked. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994); *Ex parte Brown*, 757 S.W.2d 267, 268 (Tex. Crim. App. 1988). Thus, the sufficiency challenges applicant raised in Grounds 1 through 6 are not cognizable on habeas review. *See McClain*, 869 S.W.2d at 350 (holding allegation that evidence insufficient to support finding that applicant used or exhibited deadly weapon not cognizable on habeas corpus).

052

### INSUFFICIENCY CLAIMS PROCEDURALLY BARRED

All of applicant's sufficiency challenges are also procedurally barred from

collateral review.

### *Grounds 1-4*

Applicant challenged the legal and factual sufficiency of the evidence of his guilt as a party conspirator in his eleventh and twelfth points of error on direct appeal. And in his thirteenth and fourteenth points of error, he challenged the legal and factual sufficiency of the evidence supporting the jury's affirmative answer to the anti-parties special issue. The Court of Criminal Appeals rejected all of these challenges. *Murphy v. State*, No. AP-74,851, slip op. at 8-13 (Tex. Crim. App. Apr. 26, 2006).

Claims raised and considered on direct appeal cannot be relitigated through habeas corpus unless the direct appeal judgment was subsequently rendered void or the Court of Criminal Appeals decided to retroactively apply relief following a change in the law. *Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994). Neither of these exceptions exists in applicant's case. Thus, applicant's grounds 1 through 4 are procedurally barred.

### *Grounds 5 & 6*

In contrast, applicant could have, but did not, present any challenge on direct appeal to the legal and factual sufficiency of the evidence of his future dangerousness. Habeas will not lie as a substitute for direct appeal. *Ramos*, 977 S.W.2d at 617. Thus, applicant's grounds 5 and 6 are also procedurally barred.

### EVIDENCE IS SUFFICIENT

053

Even if preserved and cognizable, however, none of applicant's insufficiency claims have merit.

9

## *Evidence Sufficient to Support Capital Murder Conviction*
### (Grounds 1 & 2)

The standards for reviewing sufficiency claims are well established. In assessing the legal sufficiency of the evidence, the reviewing court affirms the conviction if, considering the evidence in the light most favorable to the verdict, any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). In a factual sufficiency review, the reviewing court views the evidence in a neutral light and reverses the conviction if (1) the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or (2) the evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill*, 146 S.W.3d at 664 (citing *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004)). Under either standard of review, the evidence is sufficient to prove appellant possessed the requisite mental state for capital murder.

The State sought applicant's capital conviction as a regular party and a party conspirator. (CR: 39-42). To prove applicant guilty as a regular party, the State had to demonstrate that applicant acted with the intent to promote or assist in the capital murder of Officer Hawkins. *See* TEX. PENAL CODE ANN. § 7.02(a) (Vernon 2003). To prove applicant's guilt as a party conspirator, however, the State only had to demonstrate that applicant "should have anticipated" Officer Hawkins's death. *See* TEX. PENAL CODE ANN. § 7.02(b) (Vernon 2003). While applicant contends the evidence fails to establish 054

10

his guilt as a conspirator, there is substantial proof that applicant not only should have anticipated the officer's death, but that he did anticipate it and even intended it.

Applicant's guilt as a party may be inferred from the events occurring before, during, and after the murder of Officer Hawkins. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). It may also be deduced from applicant's actions that show an understanding and common design to commit murder. *Id.*

In this case, applicant and his six codefendants plotted a robbery contemplating the use of deadly force. Applicant's codefendants, all escaped convicts, had prior convictions for crimes of violence; among them were murderers, robbers, rapists, and a child abuser. (RR45: 14-16). All of them, including applicant, were present at the store and armed with loaded guns. (RR40: 58-61; State's Ex. 978). They committed the robbery in a large store on Christmas Eve, a time and place guaranteed to provide a large number of potential victims. (RR40: 37-40). From these circumstances alone, applicant should have anticipated the possibility that someone would be killed during the robbery. *See Mosley v. State*, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998) (holding Mosley's intent to kill could be inferred from evidence that he brought loaded gun to robbery); *Green v. State*, 682 S.W.2d 271, 285-86 (Tex. Crim. App. 1984) (holding evidence that Green and codefendants agreed to burglarize victims' house and rob them, together with evidence that Green entered house armed with gun, was legally sufficient to prove Green should have anticipated victim's murder).

Furthermore, although applicant did not personally shoot Officer Hawkins, he acted as lookout during the robbery – watching the parking lot, monitoring the radio

055

11

frequencies used by the Irving Police Department, and keeping his codefendants apprised of police activity in the area.   He notified his codefendants that police had been dispatched to the store on a suspicious persons call, and he informed them of Officer Hawkins's arrival.   Then, moments before the shooting, he warned Rivas that Officer Hawkins was driving around to the back of the store where Rivas was waiting and the codefendants were exiting.   (RR40: 52-79; RR41: 20-27, 35-41, 47-54; RR43: 49-50; State's Ex. 978).   By warning his codefendants, applicant afforded them the advantage over Hawkins and gave them the opportunity to prepare for his arrival at the back of the store.

Applicant denies his radioed warnings were intended to facilitate the murder of Officer Hawkins.  (Application, p. 19).  He claims they were only intended to assist his codefendants' flight from the store.  In support of this claim, applicant cites evidence that his codefendants encircled Hawkins's patrol car and, consequently, fired shots at each other.   According to applicant, this evidence shows the shootout was not a planned ambush, but the product of "unplanned chaos." (Application, p. 18-19, 21-24).

It is more reasonable to conclude, however, that applicant's warnings evince an intent to avoid capture and give his codefendants the upper hand in a confrontation with Officer Hawkins.   By circling around Hawkins and firing on him, applicant's codefendants undeniably manifested a lethal group intent.   The fact that some of them were injured in the process shows the ambush was poorly executed – not that it was never contemplated.

0556

Moreover, applicant admitted it was his job to "initiate a firefight" if they were

12

pursued and to "do damage from behind" in the event of a standoff at the store.   (RR43: 49-50; State's Ex. 978).   Thus, applicant, himself, clearly contemplated the use of lethal force against Officer Hawkins, even before his arrival at the store.   Applicant's intent could have been no clearer had he been firing shots at Officer Hawkins in the loading dock along side of his codefendants.

In sum, applicant's action of warning his codefendants, coupled with his admissions that he was prepared to shoot at the police if the need arose, is ample, persuasive evidence that he actually anticipated and intended Officer Hawkins's death. *Compare with Tippitt v. State*, 41 S.W.3d 316, 324-28 (Tex. App. – Fort Worth 2001, no pet.) (holding evidence legally insufficient to prove Tippitt should have anticipated murder as possible result of robbery where, despite Tippitt's agreement with codefendant to rob victim, there was no evidence that Tippitt knew codefendant was carrying a gun during robbery or that he knew codefendant was inclined to commit murder).   Moreover, this evidence is unimpeached, and there is no evidence, much less overwhelming evidence, controverting it.   Therefore, the evidence is both legally and factually sufficient to prove applicant possessed the requisite culpability for capital murder, and this Court should deny the relief requested in Grounds 1 and 2.

### Evidence Sufficient to Support Affirmative Finding on Anti-Parties Issue
### (Grounds 3 & 4)

To obtain an affirmative answer to the anti-parties special issue, the State had to prove applicant either intended to kill Officer Hawkins or another or anticipated that a 057 human life would be taken. *See* (CR: 55); TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(2).

13

Applicant claims the evidence is insufficient because the State failed to prove that he actually anticipated Officer Hawkins's death.

In support of this claim, applicant relies on the evidence cited by him in the preceding point of error as well as evidence offered at punishment, namely, Rivas's testimony. (Application, pp. 28-29). As discussed above, the evidence of applicant's actual anticipation is strong. Rivas's testimony does not alter the strength of the State's proof, nor does it constitute overwhelming evidence that applicant did not anticipate the officer's death.[1]

Rivas testified that applicant always acted as the lookout, claiming he did so during the escape and the extraneous robberies of the Auto Zone and Radio Shack as well as the Oshman's robbery. (RR48: 16-17). According to Rivas, applicant did not want to go inside the stores during the robberies and he was hesitant about the Oshman's robbery. (RR48: 19-20). Rivas denied applicant was supposed to engage in a firefight with police if they were pursued, and he denied that applicant acted as a "sniper," claiming his vision was too poor for it. (RR48: 26-27, 64-66). He also attempted to minimize applicant's role during the Oshman's robbery, claiming applicant had an arsenal of weapons with him in the getaway vehicle only because they had put them there for safekeeping. (RR48: 20-21, 58-63). Furthermore, Rivas claimed it was known among the defendants

---

[1] Applicant relies, in part, on Rivas's punishment testimony in support of his attack on the sufficiency of the evidence his guilt. (Application, p. 23). Because punishment testimony has no bearing on the sufficiency of the guilt evidence, that State only addresses the significance of Rivas's testimony to the anti-parties special issue.

058

that Rivas had not injured victims of his prior robberies. (RR48: 18-19).

Applicant relies on Rivas's testimony without confronting the mountain of evidence impugning his credibility. By his own admission, Rivas has lied under oath on more than one occasion and has lied to manipulate his victims. (RR48: 35, 41-44). Furthermore, some of Rivas's testimony in applicant's trial conflicted with his testimony at his own trial. (RR48: 67-69, 92-94).

Nevertheless, none of Rivas's testimony refutes the fact that during the Oshman's robbery, applicant was specifically looking and listening for the police and that he warned his codefendants, all of whom were armed and at least one of whom was waiting at the rear of the store, that Officer Hawkins was approaching. Even Rivas admitted that applicant fulfilled his role as lookout during the Oshman's robbery. (RR48: 49). Moreover, applicant's desire not to go inside during any of the robberies was more likely born out of a desire to avoid being identified or captured rather an aversion to violence. (State's Ex. 978, p. 2).[2] After all, applicant was no stranger to violence himself, having himself sexually assaulted a woman at knifepoint. (RR45: 36-66). And regardless of what Rivas believed, applicant thought his role in the Oshman's robbery was to use deadly force against the police if necessary. (RR43: 49-50; State's Ex. 978).

Finally, as for Rivas's claim that all the codefendants knew he had not previously injured his robbery victims, Rivas's past conduct of holding people at gunpoint and

---

[2] Applicant confessed that he refused to go inside the Oshman's during the robbery because "I was afraid of being recognized."

059

15

robbing them is certainly not an act of nonviolence.  Plus, while Rivas may not have shot or stabbed anyone during his prior robberies, neither he nor the other codefendants hesitated to use deadly force during the escape.  (RR45: 129-42; RR46: 8-17, 26-30).

In the face of this evidence, no reasonable juror could conclude anything other than that applicant actually anticipated that Officer Hawkins or another person would die. Indeed, a reasonable juror could rationally conclude that applicant actually intended Hawkins's death.  Therefore, this Court should deny the relief requested in Grounds 3 and 4.

### *Evidence Sufficient to Support Affirmative Finding of Future Dangerousness*
(Grounds 5 & 6)

#### *Factual Sufficiency*

The jury's affirmative finding of applicant's future dangerousness cannot be reviewed for factual sufficiency.  *See Wardrip v. State*, 56 S.W.3d 588, 590 (Tex. Crim. App. 2001) (citing *McGinn v. State*, 961 S.W.2d 161, 169 (Tex. Crim. App. 1998)).  To conclude that a jury's finding is against the great weight and preponderance of the evidence and, thus, factually insufficient, would require the reviewing court to assign some evidence mitigating value.  Whether a particular piece of evidence is mitigating in the context of the future dangerousness issue, however, is a normative judgment not amenable to appellate review.  *McGinn*, 961 S.W.2d at 169.

060

#### *Legal Sufficiency*

The law does permit a legal sufficiency review of the future dangerousness finding.  The evidence is viewed in the light most favorable to the finding to determine

16

whether a rational trier of fact could have found beyond a reasonable doubt that appellant would commit criminal acts of violence constituting a continuing threat to society. *See Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

Several factors bear on a defendant's future dangerousness, including, but not limited to: (1) the circumstances of the murder, including the defendant's state of mind and whether he was working alone or with others; (2) the calculated nature of the defendant's acts; (3) the forethought and deliberateness exhibited by the murder's execution; (4) the existence of a prior criminal record, and the severity of prior crimes; (5) the defendant's age and personal circumstances at the time of the murder; (6) whether the defendant was acting under duress or the domination of another at the time of the murder; (7) psychiatric evidence; and (8) character evidence. *See Brooks v. State*, 990 S.W.2d 278, 284 (Tex. Crim. App. 1999). These factors are evaluated using all of the evidence presented during both the guilt and the punishment phases of trial. *See id.*

Applicant contends the jury's future dangerousness finding was an irrational response to his affiliation with the infamous "Texas Seven." In reality, the jury rationally based its finding on ample evidence that applicant, himself, posed a continuing threat of violence toward others.

### Nature and Circumstances of Offense

061

Contrary to applicant's contention, the jury could logically infer his future dangerousness from his affiliation with the Texas Seven. Applicant was not the group mascot. He voluntarily and actively participated in the group's criminal activities – all of which were carefully and deliberately planned and executed.

17

The escape, the largest prison-break in Texas history, was orchestrated with military-like precision – each group member carrying out assigned tasks. Applicant carried out his responsibilities during the escape, including the use of violence against those who stood in the way of the group's freedom. In particular, applicant lured Martin Gilley, a civilian plumber, into the warehouse so he could be overtaken by some of the other escapees, and applicant helped subdue Vernon Janssen, the TDCJ guard working the back gate at the prison unit. (RR46: 26-28, 38-44).

Furthermore, once free, applicant chose to remain with the other escapees and continued committing crimes with them, including the Auto Zone, the Radio Shack, and Oshman's robberies.   (RR46: 62-98; RR47: 33-38).   In each robbery, the group threatened its victims with lethal violence.  Moreover, in the Oshman's robbery, the group clearly anticipated the use of deadly force against the police, and when confronted by Officer Hawkins, they showed no mercy, ambushing him in a hail of gunfire, dragging his body from his car, and running over him as they fled.

The fact that applicant acted as lookout in both of these robberies and did not fire a shot at Officer Hawkins does not somehow make him less dangerous than his cohorts. By applicant's own admission, it was his job to engage the police in a firefight if they pursued the group. (State's Ex. 978). Furthermore, as lookout, applicant played a pivotal role in the group's efforts to avoid detection and capture.  Indeed, it was applicant's 062 actions outside the Oshman's on Christmas Eve 2000 that gave his cohorts the upper-hand in their confrontation with Officer Hawkins. But for applicant's radioed warnings, Officer Hawkins might have survived the confrontation behind the store and some of the

other escapees might have been captured.

Clearly, applicant will not let others, even the police, stand between him and what he desires. From this evidence alone, the jury could have concluded beyond a reasonable doubt that applicant posed a continuing threat of future violence. But this was far from the only evidence from which applicant's future dangerousness could be inferred.

### Criminal History and Character

Applicant demonstrated a penchant for crime and violence and a disrespect for authority long before he ever became a member of the Texas Seven. As a juvenile, applicant regularly got into fights at school, stole cars, and according to his father, was sometimes "out of control." (RR48: 116-17). At the age of 20, applicant pointed a loaded shotgun at his father during an argument. (RR48: 117-18, 123). Also, applicant sexually molested his younger half-sister, Christine. (RR48: 120).

In 1984, applicant and his younger brother were caught burglarizing a store. (RR45: 16-26). That same year, applicant also broke into the apartment of an acquaintance, Jeannie Grieser, and sexually assaulted her at knife-point while her mother and her two-year-old son slept in the next room. Applicant was sentenced to fifty years in prison for the assault. (RR45: 35-67).

Applicant contends he was a model prisoner during the ensuing sixteen years, denying he participated in any violence while in prison. But applicant ignores the violence of the escape – violence in which he willingly participated despite the likelihood that he would be released from prison within months. (RR47: 143, 157). He also makes 163 no mention of his complicity in the hiding of contraband (radios, knives, food) in the

prison carpentry shop.  (RR45: 6, 11-12).

Most telling, applicant also fails to acknowledge the personal writings and research left behind by him during the escape.  These documents contained a personal promise of future violence by applicant.  In a note left in his cell, applicant states:

> I refuse to abide by the dictations of
> a police state, which Texas has surely become.
> Today I fire the first shot of
> THE NEW REVALUTION [sic]
> Long Live Freedom
> Death to Tyranny

(RR46: 51-61; State's Ex. 1010).  And in the TDCJ pickup truck used by applicant and his codefendants to escape, police found applicant's journal which contained a list of a multitude of paramilitary websites and websites that sold weapons, false identification documents, and body armor.  (RR47: 39-51, 52-57, 60-66).

Plainly, despite his lengthy incarceration, applicant never saw the error of his ways or mellowed with age.  Applicant's violent nature endured and, with time, he only became more dangerous.  This fact could be no more evident than in the circumstances of applicant's capture.  Applicant holed up in a hotel room with Newbury and an arsenal of firearms, giving himself up only when outnumbered and outgunned by law enforcement.  (RR43: 37-80).

Applicant contends the opinion of his psychological expert, Dr. Mark Vigen, constituted strong evidence that he posed no future danger.  Dr. Vigen opined that applicant had a sexual disorder and various narcissistic borderline antisocial traits, that he was more of a follower than a leader in the escape and murder of Officer Hawkins, and

that under security measures of administrative segregation, he posed a low risk of future danger in prison. (RR48: 136-67). According applicant, Dr. Vigen's opinion was neither refuted or impugned. Applicant is wrong.

On cross-examination of Dr. Vigen, the State successfully challenged his characterization of applicant as the most passive member of the Texas Seven. In particular, the State impeached the credibility of Dr. Vigen's opinion with evidence of applicant's history of violence, leadership capabilities, lack of remorse. (RR48: 168-214).

Furthermore, on cross-examination, applicant's prison expert, S.O. Woods, contradicted Dr. Vigen's assessment of the risk applicant's posed to others in prison. Woods acknowledged that applicant would surely be housed in the maximum security of administrative segregation, but he also testified that no security measures are full proof and escapes, violence, and even murders have been committed by inmates in administrative segregation. (RR47: 157-66). Moreover, even Woods conceded that, in his opinion, applicant remains a very dangerous inmate. (RR47: 173).

In sum, there was substantial evidence from which applicant's jury could rationally conclude beyond a reasonable doubt that he posed a continuing threat of future danger to society. Consequently, if addressed on the merits, this Court should reject applicant's challenge to the sufficiency of the evidence of applicant's future dangerousness and deny the relief requested in Grounds 5 and 6.

065

## RESPONSE TO GROUNDS 7 & 8

Relying on *Enmund v. Florida*, 458 U.S. 782 (1982), applicant contends his capital murder conviction and his death sentence violate the Eighth Amendment because both exposed him to a death sentence without a finding that he possessed the specific intent to kill.

### CLAIMS PROCEDURALLY BARRED

Grounds 7 & 8 are both procedurally barred from habeas review.

At trial, applicant never challenged the constitutionality of his conviction under *Enmund*. He only challenged the constitutionality of his sentence under *Enmund*. (RR49: 11-12). The failure to object at trial generally waives error for collateral review. *See Ex parte Dietzman*, 851 S.W.2d 304, 305 (Tex. Crim. App. 1993).

Also, applicant challenged the constitutionality of his conviction under *Enmund* on direct appeal, and the Court of Criminal Appeals rejected his claim. *See Murphy*, No. AP-74,851, slip op. at 44-45. Claims raised and considered on direct appeal cannot be relitigated through habeas corpus unless the direct appeal judgment was subsequently rendered void or the Court of Criminal Appeals decided to retroactively apply relief following a change in the law. *Ramos*, 977 S.W.2d at 617; *Drake*, 883 S.W.2d at 215. Neither of these exceptions exists in applicant's case.

Conversely, applicant could have challenged the constitutionality of his death sentence under *Enmund* on direct appeal, but he did not. Habeas will not lie as a substitute for direct appeal. *Ramos*, 977 S.W.2d at 617.

For all the foregoing reasons, Grounds 7 & 8 are procedurally barred from habeas

066

22

review.

## No Constitutional Violation

Even if Grounds 7 & 8 were reviewable, applicant demonstrates no right to relief.

*Enmund* concerns the proportionality of a death sentence for someone who did not intend to kill. It has no bearing on the constitutionality of a conviction for capital murder under the law of parties. Thus, as the Court of Criminal Appeals held on direct appeal, it is irrelevant to the propriety of applicant's conviction. *See Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992) (holding Johnson misplaced his reliance on *Enmund* and *Tison* in support of his contention that his conviction for capital murder as a party is unconstitutional).

As for the constitutionality of applicant's death sentence, the Court submitted an anti-parties special issue to the jury in accordance with section 2(b)(2) of article 37.071. The jury's answer to this special issue prevents assessment of the death penalty against a defendant unless he actually caused the victim's death, intended to cause it, or anticipated that a human life would be taken. TEX. CODE CRIM. PROC. § 37.071, §2(b)(2). The death penalty is not disproportionate for a defendant with any one of these three mental states. *See Ladd v. State*, 3 S.W.3d 547, 573 (Tex. Crim. App. 1999)(citing *Tison v. Arizona*, 481 U.S. 137 (1987)) (holding Eighth and Fourteenth Amendments' guarantees of proportionate sentencing and due process are ensured by anti-parties instruction mandated by article 37.071). Thus, applicant's challenge to the constitutionality of his death sentence is also meritless.

For the foregoing reasons, the Court should deny the relief requested in Grounds 7

067

& 8.

## CONCLUSION

Applicant raises no questions of law or fact which cannot be resolved by the Court of Criminal Appeals upon review of the applicable law, official court records, any affidavits and exhibits tendered with the application and response, and an evidentiary hearing is not necessary for disposition of this application.

Respectfully submitted,

Bill Hill
Criminal District Attorney
Dallas County, Texas

*Lisa Smith*

Lisa Smith
Assistant District Attorney
State Bar No. 00787131
Frank Crowley Courthouse
133 N. Industrial Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3638
(214) 653-3643 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing brief has been served on Allan Fishburn, attorney for applicant, 211 North Record Street, Suite 450, Dallas, Texas 75202, by depositing same in the United States mail, postage prepaid, on June 13, 2006.

*Lisa Smith*

Lisa Smith

068

24

069

FILED
NOV 10 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CAUSE NO. W01-00328-T
## COURT OF CRIMINAL APPEALS NO. AP-74,851

| | | |
|---|---|---|
| EX PARTE | § | IN THE 283RD JUDICIAL |
| PATRICK MURPHY | § | DISTRICT COURT |
| | § | DALLAS COUNTY, TEXAS |

The Court finds that applicant's post-conviction application for writ of habeas corpus was not timely filed pursuant to article 11.071 of the Code of Criminal Procedure.

Counsel was appointed on November 20, 2003 to represent applicant in these habeas proceedings. The State's original brief on direct appeal was filed March 21, 2005. Thus, the initial due date for the filing of the 11.071 application was May 5, 2005. Applicant's counsel did not request the statutorily authorized 90-day extension before this deadline, nor did he file the application. If counsel had timely requested and received this 90-day extension, the application would have been due no later than August 3, 2005.

On August 24, 2005, counsel for the defendant filed an extension request asking the Court to extend the time for filing the application until September 23, 2005. The Court granted the request, and counsel for the defendant filed the application for writ of habeas corpus on September 20, 2005.

The Court finds that, although the application was filed within the time granted by the trial court, it has not been filed in compliance with the statutorily mandated deadline. Pursuant to article 11.071, section 4(d), this Court is forwarding to the Court of Criminal Appeals this statement that counsel did not file the application for writ of habeas corpus by the deadline set forth in article 11.071, section 4, subsections (a) and (b), of the Code of Criminal Procedure.

The Clerk of the Court is directed to send a copy of this statement to the Court of Criminal Appeals, counsel for the defendant, Allan Fishburn, and to counsel for the State, Lisa Smith.

Signed this ___10___ day of November, 2005.

070

_____
**VICKERS L. CUNNINGHAM, SR., JUDGE**
**283RD JUDICIAL DISTRICT COURT**
**DALLAS COUNTY, TEXAS**

WRIT NO.  W01-00328-T(A)

| EX PARTE | § | IN THE 283RD JUDICIAL |
|---|---|---|
| PATRICK HENRY MURPHY, JR., | § | DISTRICT COURT OF |
| Applicant | § | DALLAS COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the original application for writ of habeas corpus, the State's response to the original application, official court documents and records, and the Court's personal experience and knowledge, the Court makes the following findings of fact and conclusions of law:

## CASE HISTORY

Applicant is confined pursuant to the judgment and sentence of the 283rd Judicial District Court of Dallas County, Texas, convicting him of the December 24, 2000, capital murder of Irving Police Officer Aubrey Hawkins. On November 20, 2003, in accordance with the jury's answers to the special issues, this Court sentenced Applicant to death.

The Court of Criminal Appeals affirmed Applicant's conviction and death sentence on direct appeal on April 26, 2006. *Murphy v. State*, No. AP-74,851 (Tex. Crim. App. Apr. 26, 2006).

071

Applicant untimely filed an original application for writ of habeas corpus on September 20, 2005. The application was forwarded to the Court of Criminal Appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 4(d) (Vernon 2005). On December 14,

1

2005, the Court of Criminal Appeals found good cause for the untimeliness of the application, ordered the trial court to proceed with its review of the application, and ordered the statutory timelines to run as of December 14, 2005, the date of the Court's order. The State filed its response on June 12, 2006. On November 9, 2007, the Court found there were no controverted, previously unresolved fact issues material to the legality of Applicant's confinement that required an evidentiary hearing, and the Court ordered the parties to file proposed findings of fact and conclusions of law within 30 days.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. APPLICANT WAIVED THE OPPORTUNITY TO FILE A SECOND ORIGINAL WRIT

1.      The Court finds that, in September of 2007, the state habeas counsel for Randy Halprin, one of Applicant's co-defendants, informed the Court that Applicant was dissatisfied with the representation of his state habeas counsel, Allan Fishburn. Halprin's counsel, Bruce Anton, informed the Court that he received this information from Applicant while interviewing him recently on death row.

2.      The Court finds that, in response to this information, it reviewed Applicant's writ application. Then, in October 2007, the Court notified Mr. Fishburn and the State that it had concerns with the quality of Applicant's representation in these proceedings. The Court also informed Mr. Fishburn that it would grant Applicant a request for new writ counsel and the opportunity to file another original application for habeas relief under article 11.071 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 11.071 (Vernon Supp. 2006).

072

2

3. The Court finds that the State opposed the Court taking such action on the grounds that article 11.071 did not authorize a second original writ application. The State argued that any new pleading filed would constitute a subsequent writ that would be barred under section five of article 11.071. TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (Vernon Supp. 2006).

4. The Court finds that, on November 5, 2007, Mr. Fishburn met with Applicant and relayed the Court's proposal, but Applicant informed Mr. Fishburn that he wanted him to continue as his counsel in these writ proceedings.

5. The Court finds that, on November 6, 2007, the Court conducted a hearing at which it personally expressed to Applicant its concerns with the quality of Mr. Fishburn's representation. At this hearing, the Court specifically informed Applicant of the ABA's guidelines and standards for the performance of state habeas defense counsel in death penalty cases. *See* ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Revised ed. 2003). The Court asked Applicant if he wanted the Court to conduct an inquiry into whether Mr. Fishburn had acted consistently with these guidelines and standards in his representation of Applicant. In addition, the Court informed Applicant that, if he so desired, Mr. Fishburn would withdraw and the Court would appoint new habeas counsel. Finally, the Court informed Applicant that it would be up to the Court of Criminal Appeals whether to consider any new claims raised by new counsel. (Writ Hearing RR: 3-6).

6. The Court finds Applicant understood the nature of the Court's offer as well as the consequences of rejecting it. (Writ Hearing RR: 4).

073

3

7.    The Court finds that Applicant declined the Court's offer to conduct an inquiry into the quality of Mr. Fishburn's representation. In addition, Applicant informed the Court that he wanted Mr. Fishburn to continue to represent him in these proceedings.

8.    The Court finds that Applicant's decision to reject the Court's offer was voluntary.

9.    The Court finds and concludes that Applicant knowingly and voluntarily elected to proceed with Mr. Fishburn as counsel.

10.    The Court finds and concludes that Applicant knowingly and voluntarily elected to proceed on the application filed by Mr. Fishburn.

11.    The Court finds and concludes that Applicant knowingly and voluntarily waived the opportunity for the appointment of new habeas counsel and the filing of a second original writ under article 11.071.

The following findings, conclusions, and recommendations address the claims raised in the original application for habeas relief filed by Mr. Fishburn on Applicant's behalf.

## B. SUFFICIENCY OF THE EVIDENCE (GROUNDS 1-6)

12.    In his first six grounds for relief, Applicant challenges the legal and factual sufficiency of the evidence supporting his conviction and death sentence. In Grounds 1 and 2, he attacks the sufficiency of the evidence of his culpability as a party conspirator. In Grounds 3 and 4, he attacks the sufficiency of the evidence supporting the jury's affirmative answer to the anti-parties special issue. In Grounds 5 & 6, he attacks the sufficiency of the evidence supporting the jury's affirmative answer to the future dangerousness special issue.

074

4

## 1. Insufficiency Claims Are Not Cognizable

13.    Applicant urges this Court to conduct its own legal and factual sufficiency review of the evidence under the standards enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

14.    The Court notes it has long been the general rule that the sufficiency of the evidence cannot be collaterally attacked. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994); *Ex parte Brown*, 757 S.W.2d 267, 268 (Tex. Crim. App. 1988).

15.    Thus, the Court concludes that the sufficiency challenges Applicant raised in Grounds 1 through 6 are not cognizable on habeas review. *See McClain*, 869 S.W.2d at 350 (holding allegation that evidence insufficient to support finding that Applicant used or exhibited deadly weapon not cognizable on habeas corpus).

## 2. Insufficiency Claims Are Procedurally Barred

16.    The Court concludes that all of Applicant's sufficiency challenges are also procedurally barred from collateral review.

### a. Grounds 1-4

17.    The Court finds Applicant challenged the legal and factual sufficiency of the evidence to support his guilt as a party-conspirator in his eleventh and twelfth points of error on direct appeal. And in his thirteenth and fourteenth points of error, he challenged the legal and factual sufficiency of the evidence supporting the jury's affirmative answer to the anti-parties special issue. The Court of Criminal Appeals rejected all of these challenges. *Murphy v. State*, No. AP-74,851, slip op. at 8-13 (Tex. Crim. App. Apr. 26, 2006).

075

18.     The Court notes that claims raised and considered on direct appeal cannot be relitigated through habeas corpus unless the direct appeal judgment was subsequently rendered void or the Court of Criminal Appeals decided to retroactively apply relief following a change in the law. *Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994).

19.     The Court finds that neither of these exceptions exists in Applicant's case.

20.     Thus, the Court concludes Grounds 1 through 4 should be dismissed because they are procedurally barred.

### b. Grounds 5 & 6

21.     The Court finds that Applicant could have, but did not, present any challenge on direct appeal to the legal and factual sufficiency of the evidence of his future dangerousness.

22.     The Court notes that habeas will not lie as a substitute for direct appeal. *Ramos*, 977 S.W.2d at 617.

23.     Thus, the Court concludes that Applicant's grounds 5 and 6 should be dismissed because they, too, are procedurally barred.

### 3. Evidence is Sufficient

24.     Alternatively, the Court concludes that, even if preserved and cognizable, none of Applicant's insufficiency claims have merit.

### a. Evidence is Sufficient to Support Capital Murder Conviction
#### (Grounds 1 & 2)

25.     The Court notes that the standards for reviewing sufficiency claims are well

076

established. In assessing the legal sufficiency of the evidence, the reviewing court affirms the conviction if, considering the evidence in the light most favorable to the verdict, any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

26.    The Court notes that, in a factual sufficiency review, the reviewing court views the evidence in a neutral light and reverses the conviction if (1) the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or (2) the evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007).

27.    The Court finds that the State sought to convict Applicant as a regular party or a party-conspirator. (CR: 39-42).

28.    The Court notes that to prove Applicant guilty as a regular party, the State had to demonstrate that Applicant acted with the intent to promote or assist in the capital murder of Officer Hawkins. *See* TEX. PENAL CODE ANN. § 7.02(a) (Vernon 2003). To prove Applicant's guilt as a party-conspirator, however, the State only had to demonstrate that Applicant "should have anticipated" Officer Hawkins's death while in the course of carrying out a conspiracy to commit robbery. *See* TEX. PENAL CODE ANN. § 7.02(b) (Vernon 2003); (CR: 2).

29.    Applicant contends only that the evidence fails to establish his guilt as a party-conspirator. Because he does not also challenge the sufficiency of the evidence to prove

077

7

his guilt as a regular party, this Court need not even address his insufficiency claim. *See Pachecano v. State*, 881 S.W.2d 537, 541 (Tex. App. – Fort Worth 1994, no pet.) (holding appellate court need not address insufficiency complaint when defendant does not challenge all theories alleged in the charge).

30.     Nevertheless, the Court finds there is substantial proof that Applicant not only should have anticipated the officer's death.

31.     The Court notes that Applicant's guilt as a party may be inferred from the events occurring before, during, and after the murder of Officer Hawkins. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). It may also be deduced from Applicant's actions that show an understanding and common design to commit murder. *Id.*

32.     The Court finds that Applicant and his six codefendants plotted the Oshman's store robbery contemplating the use of deadly force. Applicant's codefendants, all escaped convicts, had prior convictions for crimes of violence. (RR45: 14-16). All of them, including Applicant, were present at the store and armed with loaded guns. (RR40: 58-61; State's Ex. 978). They committed the robbery in a large store on Christmas Eve, a time and place guaranteed to provide a large number of potential victims. (RR40: 37-40). From these circumstances alone, Applicant should have anticipated the possibility that someone would be killed during the robbery. *See Mosley v. State*, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998) (holding Mosley's intent to kill could be inferred from evidence that he brought loaded gun to robbery); *Green v. State*, 682 S.W.2d 271, 285-86 (Tex. Crim. App. 1984) (holding evidence that Green and codefendants agreed to burglarize victims' house and rob them, together with evidence that Green entered house

078

armed with gun, was legally sufficient to prove Green should have anticipated victim's murder).

33.     Furthermore, the Court finds that, although Applicant did not personally shoot Officer Hawkins, he acted as lookout during the robbery – watching the parking lot, monitoring the radio frequencies used by the Irving Police Department, and keeping his codefendants apprised of police activity in the area. He notified his codefendants that the police had been dispatched to the store on a suspicious persons call, and he informed them of Officer Hawkins's arrival. Then, moments before the shooting, he warned co-defendant Rivas that Officer Hawkins was driving around to the back of the store where Rivas was waiting and the codefendants were exiting. (RR40: 52-79; RR41: 20-27, 35-41, 47-54; RR43: 49-50; State's Ex. 978). By warning his codefendants, Applicant afforded them the advantage over Hawkins and gave them the opportunity to prepare for his arrival at the back of the store.

34.     Applicant denies his radio warnings were intended to facilitate the murder of Officer Hawkins. (Application, p. 19). He claims they were only intended to assist his codefendants' flight from the store. In support of this claim, Applicant cites evidence that his codefendants encircled Hawkins's patrol car and, consequently, fired shots at each other. According to Applicant, this evidence shows the shootout was not a planned ambush, but the product of "unplanned chaos." (Application, p. 18-19, 21-24).

35.     The Court finds, however, that it is reasonable to conclude that Applicant's warnings evince an intent to avoid capture and give his codefendants the opportunity to confront Officer Hawkins. By circling around Hawkins and firing on him, Applicant's

079

codefendants undeniably manifested a lethal group intent. The fact that some of them were injured in the process shows the ambush was poorly executed – not that it was never contemplated.

36.    In addition, the Court finds that Applicant admitted it was his job to "initiate a firefight" if they were pursued and to "do damage from behind" in the event of a standoff at the store. (RR43: 49-50; State's Ex. 978). Thus, Applicant, himself, clearly contemplated the use of lethal force against Officer Hawkins, even before his arrival at the store.

37.    The Court finds that Applicant's act of warning his codefendants, coupled with his admission that he was prepared to shoot at the police if the need arose, is ample, persuasive evidence that he should have anticipated Officer Hawkins's death. *Compare with Tippitt v. State*, 41 S.W.3d 316, 324-28 (Tex. App. – Fort Worth 2001, no pet.) (holding evidence legally insufficient to prove Tippitt should have anticipated murder as possible result of robbery where, despite Tippitt's agreement with codefendant to rob victim, there was no evidence that Tippitt knew codefendant was carrying a gun during robbery or that he knew codefendant was inclined to commit murder).

38.    Moreover, the Court finds that this evidence is unimpeached, and there is no evidence, much less overwhelming evidence, controverting it.

39.    In light of the foregoing, the Court concludes that the evidence is both legally and factually sufficient to prove Applicant possessed the requisite culpability for capital murder.

080

40.    Therefore, the Court recommends denying the relief Applicant requests in Grounds 1 and 2.

### b.  *Evidence is Sufficient to Support Affirmative Finding on Anti-Parties Issue*
(Grounds 3 & 4)

41.    The Court finds that Applicant's jury answered yes to the "anti-parties" special issue, finding that Applicant either intended to kill Officer Hawkins or another or anticipated that a human life would be taken. *See* (CR: 55); TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(2).

42.    Applicant claims the evidence is insufficient to support the jury's answer because the State failed to prove that he actually anticipated Officer Hawkins's death. In support of this claim, Applicant relies on the evidence cited by him in the preceding point of error as well as evidence offered at punishment, namely, Rivas's testimony. (Application, pp. 28-29).

43.    As discussed above, the Court finds that the evidence of Applicant's actual anticipation is strong.

44.    In addition, the Court finds that Rivas's testimony does not alter the strength of the State's proof, nor does it constitute overwhelming evidence that Applicant did not anticipate the officer's death.[1]

---

[1] Applicant relies, in part, on Rivas's punishment testimony in support of his attack on the sufficiency of the evidence of his guilt. (Application, p. 23). Because punishment testimony has no bearing on the sufficiency of the guilt evidence, this Court only addresses the significance of Rivas's testimony to the anti-parties special issue. *See Munoz v. State*, 853 S.W.2d 558, 560 n. 3 (Tex. Crim. App. 1993) (holding sufficiency review is necessarily limited to that evidence before the jury at the time it rendered a guilty verdict).

081

45.    The Court finds that Rivas testified that Applicant always acted as the lookout, claiming he did so during the escape and the extraneous robberies of the Auto Zone and Radio Shack as well as the Oshman's robbery. (RR48: 16-17). According to Rivas, Applicant did not want to go inside the stores during the robberies and he was hesitant about the Oshman's robbery. (RR48: 19-20). Rivas denied Applicant was supposed to engage in a firefight with police if they were pursued, and he denied that Applicant acted as a "sniper," claiming his vision was too poor for it. (RR48: 26-27, 64-66). He also attempted to minimize Applicant's role during the Oshman's robbery, claiming Applicant had an arsenal of weapons with him in the getaway vehicle only because they had put them there for safekeeping. (RR48: 20-21, 58-63). Furthermore, Rivas claimed it was known among the defendants that Rivas had not injured the victims of his prior robberies. (RR48: 18-19).

46.    The Court finds that Rivas's testimony is not credible. By his own admission, Rivas has lied under oath on more than one occasion and has lied to manipulate his victims. (RR48: 35, 41-44). Furthermore, some of Rivas's testimony in Applicant's trial conflicted with Rivas's testimony at his own trial. (RR48: 67-69, 92-94).

47.    Furthermore, the Court finds that none of Rivas's testimony refutes the fact that during the Oshman's robbery, Applicant was specifically looking and listening for the police and that he warned his codefendants, all of whom were armed and at least one of whom was waiting at the rear of the store, that Officer Hawkins was approaching. Even Rivas admitted that Applicant fulfilled his role as lookout during the Oshman's robbery. (RR48: 49).

082

48. Moreover, the Court finds that Applicant's desire not to go inside during any of the robberies was more likely born out of a desire to avoid being identified or captured rather an aversion to violence. Applicant confessed that he refused to go inside the Oshman's during the robbery because "I was afraid of being recognized." (State's Ex. 978, p. 2).

49. The Court also finds that regardless of what Rivas believed, Applicant thought his role in the Oshman's robbery was to use deadly force against the police if necessary. (RR43: 49-50; State's Ex. 978).

50. Finally, as for Rivas's claim that all the codefendants knew he had not previously injured his robbery victims, the Court finds that Rivas's past conduct of holding people at gunpoint and robbing them is a violent act. Plus, while Rivas may not have shot or stabbed anyone during his prior robberies, neither he nor the other codefendants hesitated to use deadly force during the escape. (RR45: 129-42; RR46: 8-17, 26-30).

51. In the face of this evidence, the Court concludes that no reasonable juror could conclude anything other than that Applicant actually anticipated that Officer Hawkins or another person would die.

52. The Court concludes the evidence is legally and factually sufficient to support the jury's answer to the anti-parties special issue.

53. Therefore, this Court recommends denying Applicant's request for relief in Grounds 3 and 4.

083

### c. Evidence is Sufficient to Support Affirmative Finding of Future Dangerousness
(Grounds 5 & 6)

#### Factual Sufficiency

54.    The Court notes that the jury's affirmative finding of Applicant's future dangerousness cannot be reviewed for factual sufficiency. *See Wardrip v. State*, 56 S.W.3d 588, 590 (Tex. Crim. App. 2001) (citing *McGinn v. State*, 961 S.W.2d 161, 169 (Tex. Crim. App. 1998)). To conclude that a jury's finding is against the great weight and preponderance of the evidence and, thus, factually insufficient, would require the reviewing court to assign some evidence mitigating value. Whether a particular piece of evidence is mitigating in the context of the future dangerousness issue, however, is a normative judgment not amenable to appellate review. *McGinn*, 961 S.W.2d at 169.

#### Legal Sufficiency

55.    The Court notes that the law does permit a legal sufficiency review of the future dangerousness finding. The evidence is viewed in the light most favorable to the finding to determine whether a rational trier of fact could have found beyond a reasonable doubt that appellant would commit criminal acts of violence constituting a continuing threat to society. *See Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

56.    The Court notes that several factors bear on a defendant's future dangerousness, including, but not limited to: (1) the circumstances of the murder, including the defendant's state of mind and whether he was working alone or with others; (2) the calculated nature of the defendant's acts; (3) the forethought and deliberateness exhibited by the murder's execution; (4) the existence of a prior criminal record, and the severity of

084

prior crimes; (5) the defendant's age and personal circumstances at the time of the murder; (6) whether the defendant was acting under duress or the domination of another at the time of the murder; (7) psychiatric evidence; and (8) character evidence. *See Brooks v. State*, 990 S.W.2d 278, 284 (Tex. Crim. App. 1999). These factors are evaluated using all of the evidence presented during both the guilt and the punishment phases of trial. *See id.*

57.    Applicant contends the jury's future dangerousness finding was an irrational response to his affiliation with the infamous "Texas Seven."

58.    The Court finds, however, that the jury rationally based its finding on ample evidence that Applicant, himself, posed a continuing threat of violence toward others.

### Nature and Circumstances of Offense

59.    The Court finds that, contrary to Applicant's contention, the jury could logically infer his future dangerousness from his affiliation with the Texas Seven.

60.    The Court finds that Applicant voluntarily and actively participated in the group's criminal activities – all of which were carefully and deliberately planned and executed.

61.    The Court finds that the escape, the largest prison-break in Texas history, was orchestrated with military-like precision – each group member carrying out assigned tasks. Applicant carried out his responsibilities during the escape, including the use of violence against those who stood in the way of the group's freedom. In particular, Applicant lured Martin Gilley, a civilian plumber, into the warehouse so he could be overtaken by some of the other escapees, and Applicant helped subdue Vernon Janssen, the TDCJ guard working the back gate at the prison unit. (RR46: 26-28, 38-44).

085

62.     Furthermore, the Court finds that, once free, Applicant chose to remain with the other escapees and continued committing crimes with them, including the Auto Zone and the Radio Shack robberies. (RR46: 62-98; RR47: 33-38). In each robbery, the group threatened its victims with lethal violence. Moreover, in the Oshman's robbery, the group clearly anticipated the use of deadly force against the police, and when confronted by Officer Hawkins, they showed no mercy, ambushing him in a hail of gunfire, dragging his body from his car, and running over him as they fled.

63.     The Court finds that the fact that Applicant acted as lookout in both of these robberies and did not fire a shot at Officer Hawkins does not make him less dangerous than his cohorts. By Applicant's own admission, it was his job to engage the police in a firefight if they pursued the group. (State's Ex. 978). Furthermore, as lookout, Applicant played a pivotal role in the group's efforts to avoid detection and capture.  Indeed, it was Applicant's actions outside the Oshman's on Christmas Eve 2000 that gave his cohorts the upper-hand in their confrontation with Officer Hawkins. But for Applicant's radioed warnings, Officer Hawkins might have survived the confrontation behind the store and some of the other escapees might have been captured.

64.     The Court concludes that, from evidence of the nature and circumstances of the crime alone, the jury could have concluded beyond a reasonable doubt that Applicant posed a continuing threat of future violence.

## Criminal History and Character

65.     The Court finds that Applicant's future dangerousness can also be inferred from evidence of his criminal history and character.

16

086

66.     The Court finds that Applicant demonstrated a penchant for crime and violence and a disrespect for authority long before he ever became a member of the Texas Seven. As a juvenile, Applicant regularly got into fights at school, stole cars, and according to his father, was sometimes "out of control." (RR48: 116-17). At the age of 20, Applicant pointed a loaded shotgun at his father during an argument. (RR48: 117-18, 123). Also, Applicant sexually molested his younger half-sister, Christine. (RR48: 120).

67.     The Court finds that, in 1984, Applicant and his younger brother were caught burglarizing a store. (RR45: 16-26). That same year, Applicant also broke into the apartment of an acquaintance, Jeannie Grieser, and sexually assaulted her at knife-point while her mother and her two-year-old son slept in the next room. Applicant was sentenced to fifty years in prison for the assault. (RR45: 35-67).

68.     Applicant contends he was a model prisoner during the ensuing sixteen years, denying he participated in any violence while in prison.

69.     The Court finds that Applicant ignores the violence of the escape – violence in which he willingly participated despite the likelihood that he would be released from prison within months. (RR47: 143, 157). He also makes no mention of his complicity in the hiding of contraband (radios, knives, food) in the prison carpentry shop. (RR45: 6, 11-12).

70.     The Court finds that Applicant also fails to acknowledge the personal writings and research left behind by him during the escape. These documents contained a personal promise of future violence by Applicant. In a note left in his cell, Applicant states:

987

> I refuse to abide by the dictations of
> a police state, which Texas has surely become.
> Today I fire the first shot of
> THE NEW REVALUTION [sic]
> Long Live Freedom
> Death to Tyranny

(RR46: 51-61; State's Ex. 1010).

71.    The Court also finds that in the TDCJ pickup truck used by Applicant and his codefendants to escape, police found Applicant's journal which contained a list of a multitude of paramilitary websites and websites that sold weapons, false identification documents, and body armor. (RR47: 39-51, 52-57, 60-66).

72.    The Court finds that despite his lengthy incarceration, Applicant's violent nature endured. This fact could be no more evident than in the circumstances of Applicant's capture. Applicant sequestered himself in a hotel room with codefendant Newbury and an arsenal of firearms, giving himself up only when outnumbered and outgunned by law enforcement. (RR43: 37-80).

73.    Applicant contends the opinion of his psychological expert, Dr. Mark Vigen, constituted strong evidence that he posed no future danger.

74.    The Court finds that Dr. Vigen opined that Applicant had a sexual disorder and various narcissistic borderline antisocial traits, that he was more of a follower than a leader in the escape and murder of Officer Hawkins, and that under the security measures of administrative segregation, he posed a low risk of future danger in prison. (RR48: 136-67).

088

75.  According to Applicant, Dr. Vigen's opinion was neither refuted nor impugned. The Court finds that Applicant is wrong.

76.  The Court finds that, on cross-examination of Dr. Vigen, the State successfully challenged his characterization of Applicant as the most passive member of the Texas Seven. In particular, the State impeached the credibility of Dr. Vigen's opinion with evidence of Applicant's history of violence, leadership capabilities, and lack of remorse. (RR48: 168-214).

77.  The Court also finds that, on cross-examination, Applicant's prison expert, S.O. Woods, contradicted Dr. Vigen's assessment of the risk Applicant posed to others in prison. Woods acknowledged that Applicant would surely be housed in the maximum security of administrative segregation, but he also testified that no security measures are fool proof and escapes, violence, and even murders have been committed by inmates in administrative segregation. (RR47: 157-66). Moreover, even Woods conceded that, in his opinion, Applicant remains a very dangerous inmate. (RR47: 173).

78.  In sum, the Court concludes that there was substantial evidence from which Applicant's jury could rationally conclude beyond a reasonable doubt that he posed a continuing threat of future danger to society.

79.  The Court concludes the evidence is legally sufficient to support the jury's affirmative answer to the future dangerousness special issue.

80.  Consequently, if addressed on the merits, this Court recommends that the relief requested in Grounds 5 and 6 be denied.

089

## C. ENMUND/TISON (GROUNDS 7 & 8)

81.     Relying on *Enmund v. Florida*, 458 U.S. 782 (1982), Applicant contends his capital murder conviction and his death sentence violate the Eighth Amendment because both exposed him to a death sentence without a finding that he possessed the specific intent to kill.

### 1. Claims Are Procedurally Barred

82.     The Court finds that, at trial, Applicant never challenged the constitutionality of his conviction under *Enmund*. He only challenged the constitutionality of his sentence under *Enmund*. (RR49: 11-12).

83.     The Court notes that the failure to object at trial generally waives error for collateral review. *See Ex parte Dietzman*, 851 S.W.2d 304, 305 (Tex. Crim. App. 1993).

84.     Alternatively, the Court finds that Applicant challenged the constitutionality of his conviction under *Enmund* on direct appeal, and the Court of Criminal Appeals rejected his claim. *See Murphy*, No. AP-74,851, slip op. at 44-45.

85.     The Court notes that claims raised and considered on direct appeal cannot be relitigated through habeas corpus unless the direct appeal judgment was subsequently rendered void or the Court of Criminal Appeals decided to retroactively apply relief following a change in the law. *Ramos*, 977 S.W.2d at 617; *Drake*, 883 S.W.2d at 215.

86.     The Court finds that neither of these exceptions exists in Applicant's case.

87.     By the same token, the Court finds that Applicant could have challenged the constitutionality of his death sentence under *Enmund* on direct appeal, but he did not.

090

88. The Court notes that habeas will not lie as a substitute for direct appeal. *Ramos*, 977 S.W.2d at 617.

89. Therefore, the Court concludes that Grounds 7 & 8 should be dismissed because both are procedurally barred from habeas review.

## 2. There is No Constitutional Violation

90. The Court finds that, even if Grounds 7 & 8 were reviewable, Applicant demonstrates no right to relief.

91. The Court notes that *Enmund* concerns the proportionality of a death sentence for someone who did not intend to kill. It has no bearing on the constitutionality of a conviction for capital murder under the law of parties.

92. Thus, the Court concludes, as did the Court of Criminal Appeals on direct appeal, that *Enmund* is irrelevant to the propriety of Applicant's conviction. *See Murphy*, No. AP-74,851, slip op. at 44-45; *see also Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992) (holding Johnson misplaced his reliance on *Enmund* and *Tison* in support of his contention that his conviction for capital murder as a party is unconstitutional).

93. As for the constitutionality of Applicant's death sentence, the Court finds that it submitted an anti-parties special issue to the jury in accordance with section 2(b)(2) of article 37.071.

94. The Court notes that this special issue prevents assessment of the death penalty against a defendant unless the jury finds he actually caused the victim's death, intended to cause it, or anticipated that a human life would be taken. TEX. CODE CRIM. PROC. § 37.071, §2(b)(2).

091

95.     The Court also notes that the death penalty is not disproportionate for a defendant with any one of these three mental states. *See Ladd v. State*, 3 S.W.3d 547, 573 (Tex. Crim. App. 1999)(citing *Tison v. Arizona*, 481 U.S. 137 (1987)) (holding Eighth and Fourteenth Amendments' guarantees of proportionate sentencing and due process are ensured by anti-parties instruction mandated by article 37.071).

96.     Thus, the Court concludes that Applicant's challenge to the constitutionality of his death sentence is meritless.

97.     For the foregoing reasons, the Court recommends denying the relief requested in Grounds 7 & 8.

092

## **ORDER**

THE CLERK IS ORDERED to prepare a transcript of all papers in cause number W01-00328-T(A) and to transmit same to the Court of Criminal Appeals as provided by article 11.071 of the Texas Code of Criminal Procedure. The transcript shall include certified copies of the following documents:

1.  Applicant's Original Application for Writ of Habeas Corpus filed in cause number W01-00328-T(A), including any exhibits;

2.  The State's Answer to Original Writ Application filed in cause number W01-00328-T(A), including any exhibits;

3.  The State's and Applicant's proposed findings of fact and conclusions of law;

4.  This Court's findings of fact and conclusions of law, and order;

5.  This Court's Order Finding No Hearing Necessary and Setting Deadlines For Filing Proposed Findings and Conclusions, dated November 9, 2007.

6.  The indictment, judgment, sentence, docket sheet, and appellate record in cause number W01-00328-T(A), unless they have been previously forwarded to the Court of Criminal Appeals.

7.  The reporter's record of the hearing conducted by the trial court on November 6, 2007.

THE CLERK IS FURTHER **ORDERED** to send a copy of this Court's findings of fact and conclusions of law, including its order, to Allan Fishburn, attorney for Applicant, 211 North Record Street, Suite 450, Dallas, Texas 75202, and to counsel for the State, Assistant District Attorney Lisa Smith.

SIGNED the __10__ day of _____April_____, 2009.


_____
JUDGE RICK MAGNIS
283RD JUDICIAL DISTRICT COURT
DALLAS, TEXAS

23

093

CAUSE NUMBER: AP- 74,851

| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____
Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED

094

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 2 9

day of ___June___ ,2005.

_____
Allan Fishburn

CAUSE NO. W00-00328-T(A)

| | | |
|---|---|---|
| EX PARTE | § | IN THE 283rd JUDICIAL |
| PATRICK HENRY MURPHY, JR., | § | DISTRICT COURT OF |
| Applicant | § | DALLAS COUNTY, TEXAS |

**STATE'S MOTION TO EXTEND THE TIME FOR FILING ANSWER
TO APPLICATION FOR WRIT OF HABEAS CORPUS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

THE STATE OF TEXAS, respondent, by and through the Criminal District Attorney of Dallas County, Texas, respectfully requests that the time for filing its answer in this cause be extended. The State presents the following in support of this motion:

I.

Applicant is confined pursuant to the judgment and sentence of the 283rd Judicial District Court of Dallas County, Texas, convicting him of the December 24, 2000 capital murder of Irving Police Officer Aubrey Hawkins. On November 20, 2003, in accordance with the jury's answers to the special issues, this Court sentenced applicant to death.

Applicant untimely filed an original application for writ of habeas corpus on September 20, 2005. The application was forwarded to the Court of Criminal Appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 4(d) (Vernon 2005). On December 14, 2005, the Court of Criminal Appeals found good cause for the untimeliness of the application, ordered the trial court to proceed with its review of the application, and ordered the statutory timelines to run as of December 14, 2005, the date of the Court's order. Thus, the State's

1

096

answer to applicant's subsequent writ application is due today, April 13, 2006. As permitted by statute, however, the State requests an additional sixty days, or until June 12, 2006, to file its answer. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 7(a) (Vernon 2005). The State has requested no previous extensions of time.

## II.

The particular circumstances justifying this motion are as follows:

(1) Since the date the Court of Criminal Appeals ordered the proceedings on applicant's untimely application to proceed, counsel has been:

    (a)    preparing the State's brief on direct appeal in *Jesse Chaddock v. State*;

    (b)    investigating, gathering evidence, and preparing supplemental findings in *Ex parte Jesse Joe Hernandez* (original writ proceedings in death penalty case);

    (c)    preparing the State's proposed findings in *Ex parte George Alarick Jones* (subsequent writ proceedings in a death penalty case);

(2) Counsel is currently preparing for the execution of Jackie Barron Wilson, scheduled for May 4, 2006. Wilson filed a clemency petition today and counsel must file a response on or before the end of April 2006.

(3) Counsel was out of the office on sick leave March 13-17, 2006 because her husband suffered a heart attack.

(4) Counsel's supervisor, Libra Lange, recently resigned to go work for the U.S. Department of Justice. Ms. Lange's last day is tomorrow, Friday, April 14, 2006. In light of her departure, counsel has had to assume additional duties.

(4) Counsel has reviewed Murphy's habeas application and is familiar with the case

097

and the record. Counsel is confident that the additional 60 days will provide sufficient time to complete the investigation and prepare a response to this application.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that the Court extend the deadline for filing its answer to June 12, 2006.

Respectfully submitted,

LISA SMITH
State Bar No. 00787131
Assistant Criminal District Attorney
Dallas County District Attorney
133 N. Industrial Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3638

098

3

## ORDER

Having considered the foregoing motion, the Court hereby (GRANTS) (DENIES)

the requested extension.

Signed this _____ day of _____, 2006.

_____
JUDGE BECKY GREGORY
283RD JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

## CERTIFICATE OF SERVICE

On April 13, 2006, the State mailed a copy of this motion to applicant's attorneys, Allan Fishburn, 211 North Record Street, Suite 450, Dallas, Texas 75202.

_____
LISA SMITH

4

099

W01-00328-T(A)

| | | |
|---|---|---|
| EX PARTE | § | IN THE 283RD JUDICIAL |
| | § | |
| PATRICK HENRY MURPHY, | § | DISTRICT COURT |
| | § | |
| Applicant | § | DALLAS COUNTY, TEXAS |

## ORDER FINDING NO CONTROVERTED, PREVIOUSLY UNRESOLVED FACTUAL ISSUES REQUIRING A HEARING AND SETTING DEADLINES FOR FILING PROPOSED FINDINGS AND CONCLUSIONS

Having considered the Applicant's Application for Writ of Habeas Corpus and the State's Answer thereto, the Court finds that there are no controverted, previously unresolved facts material to the legality of the Applicant's confinement that require an evidentiary hearing. The Court hereby **orders** the Applicant and Respondent to file within 30 days of the date of this order any proposed findings of fact and conclusions of law that they wish the Court to consider. The Court finds that oral argument of the issues is not necessary in this case.

The Clerk of the Court is **ORDERED** to transmit a copy of this Order to the Court of Criminal Appeals. The Clerk of the Court is further **ORDERED** <u>not</u> to transmit at this time any other documents in the above-styled case to the Court of Criminal Appeals until further order of this Court.

It is further **Ordered** that the Clerk of this Court send a copy of this order to counsel for the Applicant, Allan Fishburn, 211 N. Record Street, Suite 450, Dallas, Texas 75202, and to counsel for the State.

SIGNED this ___9___ day of November, 2007.

RICK MAGNIS, JUDGE
283RD JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

100

WRIT NO. _01 - 00328 -TCA)_

EX PARTE:                            IN THE _283rd Judicial District_

_Patrick Henry Murphy_          COURT OF DALLAS COUNTY, TEXAS

### ORDER APPROVING RECORD ON WRIT APPLICATION

The record on the application for Habeas Corpus in the above entitled and numbered

cause have been presented to the Court for approval, and the Court having no objections to said

record, hereby approves the same as truly reflecting all matters and proceedings had and done in

this cause.

Signed this ___13___ day of _April_, _2009_

_____
JUDGE

101

# CLERK'S CERTIFICATION

THE STATE OF TEXAS         §
                               §

COUNTY OF DALLAS       §

      I, GARY FITZSIMMONS, CLERK OF THE DISTRICT COURTS WITHIN AND FOR THE STATE AND COUNTY AFORESAID, DO HEREBY CERTIFY THAT THE RECORD ON THE APPLICATION FOR WRIT OF HABEAS CORPUS TO THE COURT OF CRIMINAL APPEALS OF TEXAS, AUSTIN, TEXAS IN WRIT NO. **W01-00328-T(A)**,

PATRICK MURPHY    v    THE STATE OF TEXAS.

      AS SHOWN IN **VOLUME 1, PAGES 1-102** INCLUSIVE, TO WHICH THIS CERTIFICATION IS ATTACHED THERETO AND MADE A PART THEREOF, CONTAINS A TRUE AND CORRECT TRANSCRIPT OF ALL THE MATTERS AND PROCEEDINGS HAD AND DONE IN SAID CAUSE.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE IN DALLAS COUNTY, TEXAS, THIS **29th** day of **APRIL, 2009.**

GARY FITZSIMMONS
CLERK OF THE DISTRICT COURTS
DALLAS COUNTY, TEXAS

By: _____

Deputy/MINDY FOWLKES

1           WRIT NO.   W0Q-00328-T(A)

2

3    THE STATE OF TEXAS        )    IN THE 283rd JUDICIAL

4                              )

5    VS.                       )    DISTRICT COURT OF

6                              )

7    PATRICK HENRY MURPHY, JR. )    DALLAS COUNTY, TEXAS

8

9

10              REPORTER'S RECORD

11   RECEIVED IN
     COURT OF CRIMINAL APPEALS

12      MAY 26 2009

13   Louise Pearson, Clerk

14

FILED

2009 APR 20  AM 5: 25

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS

DEPUTY

15

16       On November 6, 2007, came on to be heard before the

17   HONORABLE RICK MAGNIS, Judge of the 283rd Judicial

18   District Court of Dallas County, Texas, the above

19   entitled and numbered cause.

20

21       Proceedings reported by computerized stenotype

22   machine; Reporter's Record produced by computer-assisted

23   transcription.

24

25

BRIDGET BARNHILL, OFFICIAL REPORTER

1              **A P P E A R A N C E S**

2

3   MS. LISA BRAXTON SMITH
    State Bar No. 00787131
4   Assistant District Attorney
    Frank Crowley Courts Building
5   133 N. Industrial Blvd.
    Dallas, Texas 75207
6   (214) 653-3600

7                       FOR THE STATE OF TEXAS

8   MR. ALLAN L. FISHBURN
    State Bar No. 07049110
9   Attorney at Law
    Suite 450, LB 15
10  211 North Record Street
    Dallas, Texas 75202
11  (214) 761-9170

12                      FOR THE DEFENDANT

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  P R O C E E D I N G S

2             THE COURT:  This is Cause Number -- Writ

3    Number W00-00328-T(A), Ex Parte Patrick Henry Murphy.

4             Is that you?

5             THE DEFENDANT:  Yes, sir.

6             THE COURT:  Mr. Murphy, the Court bench

7    warranted you to Dallas.  I had received some indication

8    that there was some concern on your part about the

9    quality of your representation on the 11.07(1) writ.  In

10   addition, I have reviewed the writ and I had some

11   questions about what work was done or not done.

12             Do you understand why you're here today?

13             THE DEFENDANT:  Yes, sir, I do.

14             THE COURT:  Your attorney has explained to

15   you what's going on?

16             THE DEFENDANT:  Yes, sir.  We have spoken

17   about it.

18             THE COURT:  I have looked at the guidelines

19   and standards for representation of an 11.07(1) writ.  I

20   wanted to talk to you a little bit about some of the

21   things that those standards require.  I'm just going to

22   provide this to you by way of information.

23             First of all, the habeas counsel must

24   understand the state habeas corpus proceeding is not

25   another direct appeal or a second direct appeal; that

1  the habeas counsel cannot rely on previously compiled

2  records but must conduct a thorough and independent

3  investigation.

4          Counsel has the duty to thoroughly

5  investigate the case as if it were a second trial. In

6  addition, counsel has a duty to look at all claims, has

7  a duty to meet you face-to-face and develop a

8  relationship with you, keep you informed of case

9  developments, to examine both phases of the trial

10  thoroughly, should interview the prior counsel and

11  members of the defense team, should actually do a

12  complete -- another investigation, both of the

13  guilt-innocence and the mitigation, including hiring a

14  mitigation expert to review all the mitigation evidence,

15  see if there are any other issues.

16          They should locate and interview witnesses,

17  additional witnesses that were not called at trial,

18  should verify testimony of witnesses at trial, should

19  obtain confidential records.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Now, I was prepared today to

23  conduct a hearing to determine whether your attorney had

24  failed to perform some of those duties.

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  I am prepared to have that

2    hearing.  Do you wish to have a hearing of that nature?

3          THE DEFENDANT:  Your Honor, no, sir, I do

4    not wish to have that hearing because I realize that --

5          THE COURT:  I don't need to get into any of

6    the wheres or whys.  You understand that if I conducted

7    that hearing and it was determined that counsel failed

8    to perform up to the standards and guidelines for writ

9    counsel, that your counsel was prepared to file a motion

10   to withdraw?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  I indicated that I would be

13   prepared to accept that and appoint new counsel.

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, I don't know -- in the

16   event that that were to occur, if I had that hearing,

17   your counsel withdraw and I appointed new counsel, I

18   don't know if new counsel would be able to re-brief this

19   without it being treated as a second writ or not.  That

20   would be up to the Court of Criminal Appeals.  This is

21   actually a case of first impression.

22         Certainly if you asked me not to conduct

23   that hearing, then the writ as it stands more than

24   likely be all that the Court of Criminal Appeals will

25   consider and all I'll be able to consider.

1              Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Is it your wish to retain Mr.

4   Fishburn as counsel?

5              THE DEFENDANT:  Yes, it is.

6              THE COURT:  Do you understand in the event

7   that you are not granted relief by the Court of Criminal

8   Appeals that he will represent you in federal

9   proceedings?

10             THE DEFENDANT:  Yes, sir, I do.

11             THE COURT:  Do you have any questions for

12  me?

13             THE DEFENDANT:  No, sir, I don't.

14             THE COURT:  In that event I'm not going to

15  inquire into what Mr. Fishburn has or has not done.  I

16  will respect your wishes regarding your representation

17  in this matter.

18             THE DEFENDANT:  Thank you.

19             THE COURT:  Is there anything further from

20  anyone else?

21             MS. SMITH:  State has nothing.

22             MR. FISHBURN:  Nothing, Your Honor.

23             THE COURT:  Mr. Murphy --

24             MR. FISHBURN:  Mr. Murphy has brought me a

25  writing that's in his left breast pocket that he would

1  | like to give me.  If I could get that before he goes.

2  |          THE DEFENDANT:  It's just some ideas I

3  | wrote down last night.

4  |          THE COURT:  I'm going to release the hold

5  | and have you sent back.

6  |          THE DEFENDANT:  Thank you, sir.

7  |          THE COURT:  We're in recess.

8

9

10  |          (End of Proceedings)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  STATE OF TEXAS      )

2  COUNTY OF DALLAS   )

3       I, Bridget Barnhill, Official Court Reporter in and

4  for the 283rd Judicial District Court of Dallas County,

5  Texas do hereby certify that the above and foregoing

6  contains a true and correct transcription of all

7  portions of evidence and other proceedings requested in

8  writing by counsel for the parties to be included in the

9  reporter's record in the above-styled and numbered

10  cause, all of which occurred in open court or in

11  chambers and were reported by me.

12       I further certify that this transcription of the

13  proceedings truly and correctly reflects the exhibits,

14  if any, admitted by the respective parties.

15       WITNESS MY HAND this the 6th day of November, 2007.

16

17  *Bridget Barnhill*
    Bridget Barnhill, CSR No. 3199
    Official Court Reporter
18  283rd Judicial District Court
    Dallas County, Texas

19

    Date of Expiration of Current
20  Certification:  12-31-08
    Address:   133 North Industrial Blvd.
21             Dallas, Texas 75207
    Telephone Number:  (214) 653-5863

22

23

24

25



SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
TOM PRICE
PAUL WOMACK
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
CHARLES R. HOLCOMB
CATHY COCHRAN
JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

December 14, 2005

LOUISE PEARSON
CLERK
512-463-1551

EDWARD J. MARTY
GENERAL COUNSEL
512-463-1597

Presiding Judge
283rd District Court
133 N. Industrial, LB 33
Dallas, TX  75207

Re:   Patrick Murphy
      Our Writ No. 63,549-01

Dear Judge:

Enclosed herein is an order entered by this Court regarding the above-referenced applicant.

If you should have any questions concerning this matter, please do not hesitate to contact me.

Sincerely,

Edward J. Marty
General Counsel

EJM:bh

cc:   Bruce Thayler
      Records & Classifications
      P. O. Box 99
      Huntsville, TX  77340

-2-

cc:

      Dallas County
      District Attorney
      Attn: Lori Ordiway
      Appellate Section
      133 N. Industrial, LB 19
      Dallas, TX  75207

      Dallas County
      District Clerk
      133 N. Industrial, LB 12
      Dallas, TX  75207

      Allan Fishburn
      Attorney at Law
      211 N. Record, Ste. 450
      Dallas, TX 75202

      Gena Bunn
      Assistant Attorney General
      P. O. Box 12548
      Austin, TX  789711

      Patrick Henry Murphy, Jr.
      C/o Allan Fishburn
      211 N. Record, Ste. 450
      Dallas, TX  75202



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-63,549-01

### EX PARTE PATRICK MURPHY

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. W01-00328-T IN THE 283ᴿᴰ JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per Curiam.   Johnson, J., would dissent.*

### ORDER

This is an untimely application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.[1]

On November 20, 2003, the trial court appointed Allan Fishburn to represent applicant in a post-conviction writ of habeas corpus under Article 11.071. On March 28,

---

[1] Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.

Murphy - 2

2005, the State filed in this Court its brief on applicant's direct appeal.  Pursuant to

Article 11.071, § 4(a), counsel should have filed applicant's application for writ of habeas

corpus in the convicting court no later than May 12, 2005.[2]  On August 3, 2005, the

convicting court received a motion from counsel requesting a 90-day extension for filing

applicant's application.  In the motion, applicant's counsel explained that applicant was

the sixth of six co-defendants to be tried and that counsel needed time to review all of the

co-defendants' cases as well as his client's.  The trial court, without authority, granted

counsel's motion and extended the filing deadline to September 23, 2005.  On September

20, counsel filed a "Writ of Habeas Corpus Pursuant to 11.071" on applicant's behalf.

    Because applicant's motion for extension of time was filed well after it was

statutorily permitted and because no application was filed on or before the initial due date

of May 12, 2005, we find that the application filed on September 20, 2005, was untimely.

*See* Art. 11.071, § 4(c).  However, pursuant to Article 11.071, § 4A(b)(2), and counsel's

showing of good cause in his motion for extension, we will allow Fishburn to continue

representing applicant and hold applicant's application to be timely filed as of September

20, 2005.  The trial court is ordered to proceed with its review of the application.  The

timelines set out in Article 11.071, §§ 7-9, shall start to run as of the day this order is

issued.

---

   [2] Under Article 11.071, § 4(d), the convicting court should have sent a statement to this Court within ten days of this initial deadline notifying the Court that no application had been timely filed.

Murphy - 3

IT IS SO ORDERED THIS THE 14th DAY OF December, 2005.

Do Not Publish



SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
TOM PRICE
PAUL WOMACK
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
CHARLES R. HOLCOMB
CATHY COCHRAN
   JUDGES

## COURT OF CRIMINAL APPEALS

P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

TROY C. BENNETT, JR.
CLERK
512 463-1551

July 7, 2005

Allan Fishburn
211 North Record Street
Suite 450
Dallas, TX  75202

Re:   Patrick Murphy
      Our Appeal No. 74,851

Dear Mr. Fishburn:

We are returning your "Motion to Extend Time for Filing Writ of Habeas Corpus Pursuant to Tex.Code Crim.Proc. Ann. Article 11.071" as this motion needs to be filed in the convicting trial court.

Thank you for your attention in this matter.

Sincerely,

Edward J. Marty
General Counsel

EJM/bh

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

### MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


_____

Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:      (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG  3  2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____,2005.


_____
Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____ ,2005.

_____

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____
Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____ ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant  shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:     (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _June_ ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

_____

Allan Fishburn
State Bar Number 07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax: (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO <u>TEX. CODE CRIM. PROC. ANN ARTICLE 11.071</u>

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant  shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.

Respectfully Submitted,

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone: (214) 761-9170
Fax:    (214) 742-7313

FILED
AUG 3 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of June ,2005.

Allan Fishburn

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

## MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


_____

Allan Fishburn
State Bar Number  07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

## CERTIFICATE OF SERVICE

hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _____June_____ ,2005.

_____

Allan Fishburn

**APPLICANT**   <u>PATRICK MURPHY</u>                **APPLICATION NO.**   <u>63,549-01</u>


APPLICATION FOR 11.071 WRIT OF HABEAS CORPUS                <u>XXX</u>


MOTION REQUESTING TIMELY FILING DATE OF SEPTEMBER  20, 2005 ON APPLICATION FOR WRIT OF HABEAS CORPUS IN THE TRIAL COURT GRANTED.

*Per Curiam*                                                    12/14/05
**JUDGE**                                                      **DATE**

*Johnson, J. would dissent.*

**FILED**

NOV 10 2005

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS

DEPUTY

CAUSE NO. W01-00328-T
COURT OF CRIMINAL APPEALS NO. AP-74,851

| | | |
|---|---|---|
| EX PARTE | § | IN THE 283RD JUDICIAL |
| PATRICK MURPHY | § | DISTRICT COURT |
| | § | DALLAS COUNTY, TEXAS |

The Court finds that applicant's post-conviction application for writ of habeas corpus was not timely filed pursuant to article 11.071 of the Code of Criminal Procedure.

Counsel was appointed on November 20, 2003 to represent applicant in these habeas proceedings. The State's original brief on direct appeal was filed March 21, 2005. Thus, the initial due date for the filing of the 11.071 application was May 5, 2005. Applicant's counsel did not request the statutorily authorized 90-day extension before this deadline, nor did he file the application. If counsel had timely requested and received this 90-day extension, the application would have been due no later than August 3, 2005.

On August 24, 2005, counsel for the defendant filed an extension request asking the Court to extend the time for filing the application until September 23, 2005. The Court granted the request, and counsel for the defendant filed the application for writ of habeas corpus on September 20, 2005.

The Court finds that, although the application was filed within the time granted by the trial court, it has not been filed in compliance with the statutorily mandated deadline. Pursuant to article 11.071, section 4(d), this Court is forwarding to the Court of Criminal Appeals this statement that counsel did not file the application for writ of habeas corpus by the deadline set forth in article 11.071, section 4, subsections (a) and (b), of the Code of Criminal Procedure.

The Clerk of the Court is directed to send a copy of this statement to the Court of Criminal Appeals, counsel for the defendant, Allan Fishburn, and to counsel for the State, Lisa Smith.

Signed this ___10___ day of November, 2005.

**FILED IN**
**COURT OF CRIMINAL APPEALS**

NOV 1 5 2005

Louise Pearson, Clerk

VICKERS L. CUNNINGHAM, SR., JUDGE
283RD JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

CAUSE NUMBER: AP- 74,851

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| PATRICK MURPHY | § | AUSTIN, TEXAS |

**MOTION TO EXTEND TIME FOR FILING WRIT OF HABEAS CORPUS
PURSUANT TO TEX. CODE CRIM. PROC. ANN ARTICLE 11.071**

To The Honorable Judges of the Court of Criminal Appeals :

Applicant moves the Court to extend the deadline for filing his Writ Application in the above captioned case.

Applicant  shows the Court the following good cause for granting this motion.

Patrick Murphy was the 6th defendant tried for the murder of police officer Aubrey Hawkins.

In order to prepare Mr. Murphy's Writ application, counsel must compare the records of each case, as well as review each brief and each Writ application filed.

Therefore a 90 day extension is respectfully requested.


Respectfully Submitted,


Allan Fishburn
State Bar Number   07049110
211 North Record Street
Suite 450
Dallas, Texas 75202
Phone:  (214) 761-9170
Fax:    (214) 742-7313

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing motion has been mailed to the

Assistant District Attorney, Appellate Section of Dallas County, Texas, on this the 29

day of _June_ ,2005.

_____
Allan Fishburn

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

AT AUSTIN

EXPARTE

FILED

SEP 20 2005

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____DEPUTY

PATRICK MURPHY

WRIT OF HABEAS CORPUS PURSUANT TO 11.071

**Allan Fishburn**
**State Bar Number 07049110**
**211 North Record Street**
**Suite 450**
**Dallas, Texas 75202**
**(214) 761-9170**
**(214) 742-7313**

## IDENTITY OF PARTIES AND COUNSEL

HONORABLE VICKERS L. CUNNINGHAM          The Trial Court
283rd District Court
133 North Industrial Blvd.
Dallas, Texas 75207

PARTIES

PATRICK HENRY MURPHY                              Appellant

THE STATE OF TEXAS                                    State

COUNSEL

Mr.  John Tatum
990 S. Sherman Street                                  Attorney for appellant
Richardson, Texas    75207

Ms.  Lisa Smith
Assistant District Attorney                            Attorney for the state
Frank Crowley Courts Building
133 North Industrial Boulevard
Dallas, Texas 75207


Mr. Toby Shook
Assistant District Attorney
Frank Crowley Courts Building                      Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Bill Wirskye
Assistant District Attorney                            Attorney for the state
133 North Industrial Boulevard
Dallas, Texas 75207

Mr. Allan Fishburn
211 North Record Street                               Attorney for applicant
Suite 450
Dallas, Texas  75202

2

# TABLE OF CONTENTS

I D E N T I T Y  OF THE PARTIES                                        2

T A B L E  OF CONTENTS                                                3

I N D E X  OF AUTHORITIES                                             4

STATEMENT OF THE CASE                                                 7

INFERENCE WITH LIBERTY                                                7

ISSUES PRESENTED                                                      8

STATEMENT OF FACTS                                                   10

GROUND FOR RELIEF ONE

THE EVIDENCE IS LEGALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE
ANTICIPATED THE COMMISSION OF THE INDICTED
OFFENSE                                                              17

GROUND FOR RELIEF TWO

THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE APPLICANT SHOULD HAVE ANTICIPATED
COMMISSION OF THE INDICTED OFFENSE                                   20


GROUND FOR RELIEF THREE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                     24

GROUND FOR RELIEF NUMBER FOUR

THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE
APPLICANT DID ANTICIPATE THE COMMISSION OF THE
INDICTED OFFENSE                                                     26

GROUND FOR RELIEF FIVE

THE EVIDENCE IS LEGALLY INSUFFICIENT TO
PROVE THATAPPLICANT WOULD BE A CONTINUING
THREAT TO SOCIETY                                                    29

GROUND FOR RELIEF SIX

 THE EVIDENCE IS FACTUALLY INSUFFICIENT
TO PROVE THATAPPLICANT WOULD BE A
CONTINUING THREAT TO SOCIETY                                         33

GROUND FOR RELIEF SEVEN

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
7.02 (b) to TEX. PENAL CODE ANN SECTION 19.03 IS
UNCONSTITUTIONAL                                                     36


GROUND FOR RELIEF EIGHT

THE APPLICATION OF TEX. PENAL CODE ANN SECTION
 7.02 (b) to TEX. CODE CRIM. PROC. ANN ARTICLE
37.071 ( c ) (1)                                                    38
 IS UNCONSTITUTIONAL

PRAYER                                                              40

CERTIFICATE OF SERVICE                                              40

4

# INDEX OF AUTHORITIES

**CONSTITUTIONS**

U.S. Const. Amend. Eight                          40

**CASES**

Clewis v. State, 922 S.W. 2d 126
(Tex. Crim. App. 1996)                            18,21,25,26

Ellason v. State, 815 S.W. 2d 656
(Tex. Crim. App. 1991)                            30,34

Jackson v. Virginia, 443 U.S. 307 (1979)          18,25

Johnson v. State, 23 S.W. 3rd 1
(Tex. Crim. App. 2000)                            21,26,33

Lackey v. State, 819 S.W. 2d 111
(Tex. Crim. App. 1989)                            30,34

Martinez v. State, 879 S.W. 2d 655
(Tex. Crim. App. 1994)                            39

Smith v. State, 779 S.W. 2d 417
Tex. Crim. App. 1989)                             31,34

Solomon v. State, 49 S.W. 3rd 756
(Tex. Crim. App. 2001)                            39

Vuong v. State, 830 S.W. 2d 929
(Tex. Crim. App. 1992)                            30,33

**STATUTES**

Tex. Penal Code Ann. Section 6.01                 38

Tex. Penal Code Ann. Section 7.01                 17,20

Tex. Penal Code Ann. Section 7.02 (b)             17,20,37

5

Tex. Penal Code Ann. Section 15.02          37

Tex. Penal Code Ann. Section 19.03          17,20,36

Tex. Code Crim. Proc. Ann. article 37.071   24,26,30,33,39

**PUBLICATIONS**

Webster's Ninth New Collegiate Dictionary, 1992          18,22,23,27

## STATEMENT OF THE CASE

Applicant stood trial for capital murder on theory he was responsible for the conduct of his co-conspirators. The jury convicted finding Applicant should have anticipated the murder. The jury then answered three questions at punishment , one of which was whether Applicant did anticipate the death. The jury answered yes, Applicant is confined awaiting execution. His direct appeal is pending. This is the first writ.

## INTERFERENCE WITH LIBERTY

Applicant is restrained in his liberty by confinement while he awaits execution. This restraint is the product of a fundamentally unfair trial.

7

## ISSUES PRESENTED

1.   The evidence is legally insufficient to prove Applicant should have anticipated the commission of the indicted offense.

2.   The evidence is factually insufficient to prove Applicant should have anticipated the commission of the indicted offense.

3.   The evidence is legally insufficient to prove Applicant did anticipate the commission of the indicted offense.

4.   The evidence is factually insufficient to prove Applicant did anticipate the commission of the indicted offense.

5.   The evidence is legally insufficient to prove that Applicant would be a continuing threat to society.

6.   The evidence is factually insufficient to prove that Applicant would be a continuing threat to society.

7.   The application of <u>Tex. Penal Code Ann. section 7.02 (b)</u> to <u>Tex. Penal Code Ann. section 19.03</u> is unconstitutional.

8

8.  The application of <u>Tex. Penal Code section 7.02 (b)</u> to <u>Tex. Code Crim. Proc. Ann. article 37.071 ( c ) (1 )</u> is unconstitutional.

## STATEMENT OF FACTS

**Holly Becker** testified about a letter Applicant wrote her, describing some of the events of his childhood and early adult years.  R.R. Vol. 47 , p. 33)

**Detective Jeff Spivey** testified about some of the reading material Applicant had in his possession.   ( R.R. Vol. 47 p. 59-66)

The state rested.  ( R.R. Vol. 47, p. 67)

**Linda Goodman**, Applicant's aunt, testified his mother used to drop him off for lengthy periods of time when he was an infant.   ( R.R. Vol. 47, p. 73-75)

At one point Applicant's father took possession of him.  Ms. Goodman described how Applicant looked when he was returned:

> Well, he was very dirty, had dirty clothes on, had a nasty diaper that he had
> messed in more than once that was dried on him.  He had cigarette burns all
> over him from people like putting a cigarette out on his skin.  And his diaper
> pin on the right side was pinned through the skin and back up into the diaper
> and fastened to him.

(R.R. Vol. 47, p. 79)

To disclipine Applicant, his mother pulled his hair, hit him, or screamed at him. ( R.R. Vol. 47, p. 86)

10

**S.O. Woods**, Assistant Director of the Institutional Division testified, that "classification" is

the process of sorting out the prisoners assignment.  (R.R. Vol. 47, p. 121)

Officer Woods had the following colloquy with defense counsel about his prison record:

> There's a copy in here of his control card, which is the document where all of the decisions are recorded on the prisoner as he progresses through the prison system.  I think that's about it.  Those were the important things.

> Would you or could you summarize for the jury the disciplinary actions that have been taken ?  It's my recollection that the first disciplinary report in that packet refers to the escape.  Is that not correct ?

> Murphy was confined approximately 16 years before the escape.  And he was assigned to units at Ferguson, McConnell, and Conally, besides the receiving unit.  And during that time he received maybe a half dozen minor disciplinary incidents, things like refusing to groom or not grooming properly, failure to obey orders promptly, possession  of minor items of contraband. He had three incidents which were charged to him as major incidents.  One of them was contraband deal.  One of them was ....

> When you say contraband, is that a hand grenade ?  What is considered contraband in these circumstances ?

> Well, in Texas, the prison system is a closed institution.  We allow absolutely nothing from the outside to come in.  If we don't provide it to you, you are not supposed to have it.  And so anything that an inmate has that hasn't been provided to him by the institution is contraband.  And in this particular case I think they caught him with a radio speaker , an extension cord, things I think that he had probably removed from where he was working.  And he was probably going to use them in his cell to improve his radio reception or hook up a fan or things like that.  He did have three major incidents, though.

(R.R. Vol. 47, p. 150-151)

Applicant called **George Rivas** to testify.  ( R.R. Vol. 48, p. 4)

Rivas planned the prison escape and he "handpicked" the men who accompanied him. ( R.R. Vol. 48, p. 4, 10-14)

11

Applicant served as the gang's lookout, because he was not aggressive. ( R.R. Vol. 48, p. 4)

Applicant told Rivas that he would not participate in any robberies by going into stores. ( R.R. Vol. 48, p. 16)

Applicant job as lookout to warn Rivas if the police were coming so they could leave as quickly as possible. ( R.R. Vol. 48, p. 17)

It was known that no one had ever been hurt in any of the robberies Rivas committed. ( R.R. Vol. 48, p. 19)

 In the instant case the first communication Rivas got from Applicant was Applicant telling him a suspicious report activity had been issued for the Oshman's store. ( R.R. Vol. 48, p. 22)

In response Rivas told anyone to hurry out the back so they could escape. ( R.R. Vol. 48, p. 22)

Later, Applicant alerted Rivas that a police car was "coming around back". ( R.R. Vol. 48, p. 46)

12

Applicant told Rivas to "leave". He repeated that instruction and also said "you've got company". ( R.R. Vol. 48, p. 48)

Applicant's father , **Patrick Murphy, Sr.** , testified he divorced Applicant's mother when he was two years old. ( R.R. Vol. 48, p. 101)

Mr. Murphy didn't see Applicant again until he was nine. ( R.R. Vol. 48, p. 102)

When Applicant was nine years old, Mr. Murphy was telephoned to come and get him because his mother no longer wanted him. ( R.R. Vol. 48, p. 101- 110)

Mr. Murphy found Applicant in an abandoned school bus. He was filthy and covered with "ringworms" and open sores. (R.R. Vol. 48, p. 115-117)

On cross examination Mr. Murphy testified that Applicant pulled a loaded shotgun on him when he was in high school. ( R.R. Vol. 48, p. 117)

**Dr. Mark Vigen**, a psychologist, examined Applicant. ( R.R. Vol. 48, p. 136)

Dr. Vigen stated the facts of Applicant's childhood as follows:

> Well, one is Mr. Murphy has a history of many physical moves from one town to another. He has a history of many moves from one school to another. Many one teacher to another. He has a history of early abandonment from his father, where his father ... he was taken away from his father at 18

13

months.

He has a history of being sexually abused. He has a history of being with an unstable mother. He has a history of being shipped off and raised by other people, including his aunt. Then he has a history of early school failure and running away, particularly as a grade school kid. He starts running away.

His mother was very unstable. She had various jobs. She would leave often. I think he had a fairly normal first year with his mother and father when they were living together. But then at 18 months he went off to live with his mother and she was a very unstable person. And she had ... she would leave the home for weeks and months on end and no one would really know where she is.

She had multiple relationships with men and they included two stepfathers who were abusive to Mr. Murphy. And then there were other members of the family that were also abusive to him as well.

And so then he returned, as you know, at about nine and a half years old to live with his father, which he really wanted, but unfortunately his father was a long - haul, over the road truck driver and he was gone a lot of the time. And at nine and a half years old, as he testified, Mr. Murphy was a very undeveloped, uncared for child, a very neglected child, neglected, if not abused, and so on.

And so then reuniting with his father, he really never in his own mind got from his father what he wanted, which was a relationship with his father because the father was absent a lot. And he continued to run away, which as a result of, you know, the low self-esteem and lack of self, he's reactive, he's running.

And you add school failure to that as a result of multiple schools and you end up this teenaged boy who has essentially not taken on any values from his parents, not taken on any values or many values from school and religious organizations and so on and lacks a real sense of himself. And so on he's acting out, you know, he's running away and he's engaging in truant behavior, and as Mr. Murphy Sr. said.

(R.R. Vol. 48, p. 160-161)


Dr. Vigen made the following diagnoses of Applicant:(1) borderline personality traits

(2) narrsastic personality traits and also a (3) nondifferentiated sexual disorder. (R.R. Vol.

14

48, p. 161-163)

Dr. Vigen testified Applicant's personality is one of a follower rather than a leader. ( R.R. Vol. 48, p. 162-163)

Applicant had no reports of violence on his 16 ½ years in prison.  ( R.R. Vol. 48, p. 164)

Ranking the risk of violence on a scale from high to medium, to low, Dr. Vigen would rank Applicant as , " very low".  ( R.R. Vol. 48, p. 162)

Dr. Vigen's court appointed expert fee was $ 18,000.00.  ( R.R. Vol. 48, p. 168)

Dr. Vigen testified that Applicant was in prison for a violent crime, and he had some fights in high school.  ( R.R. Vol. 45, p. 189)

Dr. Vigen characterized the prison escape as a act of violence.  ( R.R. Vol. 48, p. 190)

Dr. Vigen diagnosed Applicant as having " anti-social features" in his personality, but not anti- social personality disorder.  ( R.R. Vol. 48, p. 191)

Antisocial personality disorder is a "pervasive pattern of disregard for and violation of the rights of others, occurring since age 15, and indicated by three or more of the ... breaking the law, lying, and impulsivity, aggressiveness, recklessness, failure to work, and lack of

15

remorse.  ( R.R. Vol. 48, p. 196)

Dr. Vigen predicted that Applicant would be a very low risk to be violent in the future, based on his prison record and the fact that he would serve his remaining time in " administrative segregation".  ( R.R. Vol. 48 , p. 201)

Both sides rested and closed on punishment.  ( R.R. Vol. 49, p. 16)

Prior to argument Applicant objected that Special issue number two violated the Rules of Enmund v. Florida, 458 U.S. 782 and Tison v. Arizona.  These objections were overruled. ( R.R. Vol. 49, p. 11)

The jury answered special issue number one, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number two, "yes".  ( R.R. Vol. 49, p. 80)

The jury answered special issue number three, "no".  ( R.R. Vol. 49, p. 80-81)

The trial court pronounced sentence as prescribed by Tex. Code Crim. Proc. Ann. Article 37.071.  (R.R. Vol. 49, p. 81-82)

## GROUND FOR RELIEF ONE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT

## SHOULD HAVE ANTICIPATED THE COMMISSION OF THE INDICTED OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer

Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as
> defined under Section 19.02 (b)(1) and

> (2) the person intentionally commits the murder in the course
> of committing or attempting to commit kidnaping, burglary,
> robbery, aggravated sexual assault, arson, or obstruction or
> retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the

offense, under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02

(b).  These provisions read in relevant part:

> Section 7.01 (a)

> a person is criminally responsible as a party to an offense if the
> offense is committed by his own conduct, by the conduct of
> another for which he is criminally responsible or by both.

> Section 7.02

> (a) a person is criminally responsible for an offense committed
> by the conduct of another if ;

> (b) If, in the attempt to carry out a conspiracy to commit one
> felony, another felony is committed by one of the conspirators,
> all conspirators are guilty of the felony actually committed,
> though having no intent to commit it, if the offense was
> committed in furtherance of the unlawful purpose and was one

17

that should have been anticipated as a result of the carrying
out of the conspiracy.

Evidence is legally insufficient if, when viewed in a light most favorable to the
verdict, a rational jury could not have found each element of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979).  A claim of legal insufficiency
is an argument that the case should never have been presented to the jury.  Clewis v.
State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

Under this standard of appellate review the state of the evidence proves that no
rational jury would have convicted. The state at closing argument pointed out that the only
issue was whether Applicant should have anticipated the murder of Officer Hawkins. The
prosecutor claimed the evidence was overwhelming and that it went beyond proof of
"should have anticipated" and in fact proved he did "anticipate" the murder. The prosecutor
then went over his evidence as does Applicant here.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas
Eve. He likened the planning and execution to the U.S.  precision bombing of Iraqi
positions during the Gulf War.  Applicant was likened to the, " Air Controller" who
pinpointed the target and radioed the location to Rivas and the others who then wiped out
the target with perfect accuracy. That is, the gang carried out the ambush they planned in
case the police showed up. Officer Hawkins was surrounded and shot eleven times before
he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise:
Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor thus actually argued that the plan was for six armed men to encircle

18

the squad car and empty the guns at the target police office.  The problem is this circle

formation puts the gang members in each other's line of fire. Sure enough, two members

were wounded.  Rivas, the leader, was shot twice and another member since. If the jury

had used "common sense" the prosecutor had insisted would solve the case, they would

have concluded that it is nonsensical to form a circle and hope not to shoot each other as

well as the target.

     If there was no ambush then the reason for the radio message from Applicant to

Rivas had to have been for the only other "common sense" reason that extant.  Obviously,

the possibility6 of the police arriving during the crime would have been planned for.  The

options would be flight or fight.  Flight was selected.  Applicant's duty was to warn Rivas

via radio, so that the gang could flee before the police arrived.  The fight ensued because

the gang's timing was off.

     An examination of the shooting corroborats this " flight plan".  Officer Hawkins

arrived early.  The six members of the gang panicked.  They happened to form what

amounted to a circle, surrounding the police car.  Five out six emptied their weapons.  They

were in each others line of fire.  They shot and continued to shoot anyway.  Rivas and

another member were wounded by gang member fire during the Chaos.  The so-called

ambush did not occur.  This inentional murder was not the result of carrying out the plan

to meet the police contingency.  It was the predict of poor timing and cowards panicking.

19

# GROUND FOR RELIEF TWO

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT

## SHOULD HAVE ANTICIPATED COMMISSION OF THE INDICTED

## OFFENSE

Applicant was charged by indictment with the capital murder of Irving Police Officer Aubrey Hawkins.  Tex. Penal Code Ann. section 19.03 reads in relevant part:

> (a) a person commits an offense if he commits murder as defined under Section 19.02 (b)(1) and

> (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation.

The state proceeded on the theory that Applicant was culpable as a co-conspirator to the offense under the theory of liability stated in Tex. Penal Code Ann. section 7.01 and 7.02 (b).  These provisions read in relevant part:

> Section 7.01

> (a) a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both.

> Section 7.02

> (a) a person is criminally responsible for an offense committed by the conduct of another if ;

> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed,

20

though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

In determining factual sufficiency, the appellate court views all the evidence in a neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State, 23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 ( Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that tends to prove the facts in dispute and compares it with the evidence that tends to disprove those facts. The appellate court has the authority and duty to disagree with the jury's weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas. The evidence is factually insufficient if it is so weak that the verdict is clearly wrong. The evidence is factually insufficient if the evidence contrary to the verdict is of greater probative value on the disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime. Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd. The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven. If not biased, this jury simply did not deliberate. Eihr way the jury's verdict is clearly wrong. Thus, Reversal would not amount to substituting the Court's judgment for that of the jury. The verdict is manifestly unjust.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas

21

Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise. Webster's Ninth New Collegiate Dictionary, 1992.

The prosecutor argued the attack was preplanned.  That means the shooter were in position when they opened fire.  The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded.  Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists.  He told Rivas to "leave" because that was the plan even when the police closed in.  The gang did anticipate police interference but that contingency was planned for by getting away before they arrived.  This plan was implemented via a lookout warning Rivas when it was time to go.  The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos.  This was no ambush. Rather, six stupid cowards simply started shooting regardless of who was in the line of fire.  No jury

22

could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the <u>Clewis</u> standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

After the breakout, Rivas continued as gang leader, and two robberies were planned and completed. There were no injuries. At one point during the Oshman's robbery an employee grabbed Rivas' gun. Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance". <u>Webster's Ninth New Collegiate Dictionary, 1992</u>.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left. If this did happen it was foreseen that a firefight would ensue. This contingency was dealt with by planning to be gone befoe the police could get there. A lookout's duty is to warn of impending danger. But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to

23

respond to danger by fleeing or fighting. The circumstances answer to real question in this case. Did the plan call for flight or fight. The physical position of the shooter and the target show the warning ws transmitted so the gang could flee. Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire. Moeover, Applicant stated the warning via a command. He said: " Leave". Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.

## GROUND FOR RELIEF THREE

## THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPLICANT DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE

To render Applicant death worthy the state had to convince a jury he did in fact anticipate that the robbery would include a murder to further its completion. Tex. Code Crim. Proc. Ann. article 37.071.

At the punishment phase the jury was instructed to answer the question whether Applicant did anticipate the murder at issue. The jury found that he did. The evidence is legally insufficient to support the finding.

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a

24

reasonable doubt. Jackson v. Virginia, 443 U.S. 307 ( 1979). A claim of legal insufficiency is an argument that the case should never have been presented to the jury. Clewis v. State, 922 S.W. 2d 126,132 ( Tex. Crim. App. 1996).

A rational conclusion is one that is objectively agreeable to reason, and therefore arrived at by the dispassionate use of logic.  Applicant argues that no rational jury would have found that he anticipated the murder of Officer Aubrey Hawkins.

The state argued  to the jury that there was no doubt on this issue.  That is, their evidence was overwhelming. When examined in the light most favorable to the jury's answer, the opposite conclusion must be drawn.   There was no evidence in this case sufficient to prove such the existence of actual anticipation.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S.  precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, to say the planned t fight, not flee, in the face of the police. This theory is at odds with the evidence. The stat's presentation was not hampered by astounding lack of proof because of the spectular prison break accomplished.  The state's real theory was anyone who breaks out of a Texas prison is a lethal force that must be killed.  Thu, the six living members of the gang were viewed as fungibile.  That the facts, were incompatible with the reputation and made n difference to the state or the jury.

The prosecutor argued the shooting was a plan implemented against police interference.  It  apparently did not occur o the jury that common sense says there is no such thing as an ambush that calls for the attackers to intentionally place each other in the

25

line of fire.  No rational jury could have believed the shooting as actually an ambush.

When this conclusion is reached the rest of the state's case falls with it.

### GROUND FOR RELIEF FOUR

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE APPLICANT
## DID ANTICIPATE THE COMMISSION OF THE INDICTED OFFENSE

After the close of the evidence the trial court instructed the jury pursuant to Tex.

Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that
> there is a reasonable probability that the defendant, Patrick
> Henry Murphy would commit criminal acts of violence that
> would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a

neutral light and sets aside the verdict if it is contrary to the evidence.  Johnson v. State,

23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 (

Tex. Crim. App. 1996).  The appellate court reviews the evidence weighed by the jury that

tends to prove the facts in dispute and compares it with the evidence that tends to disprove

those facts.  The appellate court has the authority and duty to disagree with the jury's

weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas.  The evidence is factually

insufficient if it is so weak that the verdict is clearly wrong.  The evidence is factually

insufficient if the evidence contrary to the verdict is of greater probative value on the

disputed elemental issues.

The prosecutor claimed his evidence left no doubt that Applicant should have anticipated the crime.  Assuming there is evidence to convict under the legal sufficiency standard the evidence contrary to the verdict conclusively overwhelmes the state's evidence to the point that the verdict, is absurd.  The only conclusion is that this jury convicted because of the bias against the so-called Texas Seven.  If not biased, this jury simply did not deliberate.  Eihr way the jury's verdict is <u>clearly</u> wrong.  Thus, Reversal would not amount to substituting the Court's judgment for that of the jury.  The verdict is manifestly unjust.

The prosecutor argued that "Dark Forces descended" on Oshman's that Christmas Eve. He likened the planning and execution to the U.S. precision bombing of Iraqi positions during the Gulf War. Applicant was likened to the, " Air Controller" who pinpointed the target and radioed the location to Rivas and the others who then wiped out the target with perfect accuracy. That is, the gang carried out the ambush they planned in case the police showed up.  Officer Hawkins was surrounded and shot eleven times before he could even fire his weapon.

An " ambush " is a trap in which concealed persons lie in wait to attack by surprise. <u>Webster's Ninth New Collegiate Dictionary, 1992.</u>

The prosecutor argued the attack was preplanned.  That means the shooter were in position when they opened fire.  The problem is this circle formation puts the gang members in each other's line of fire. Sure enough, two members were wounded. Rivas, the leader, was shot twice and another member since. If the jury had used "common sense" the prosecutor had insisted would solve the case, they would have concluded that

27

it is nonsensical to form a circle and hope not to shoot each other as well as the target.

If there was no ambush then the reason for the radio message from Applicant to Rivas had to have been for the only other "common sense" reason that exists. He told Rivas to "leave" because that was the plan even when the police closed in. The gang did anticipate police interference but that contingency was planned for by getting away before they arrived. This plan was implemented via a lookout warning Rivas when it was time to go. The plan failed because Officer Hawkins arrived before the six gang members could finish moving the bulky contraband and drive away.

What happened next was unplanned chaos. This was no ambush. Rather, six stupid cowards simply started shooting regardless of who was in the line of fire. No jury could have believed beyond a reasonable doubt that Appellant should have anticipated that.

From the foregoing it should be obvious that the state's own evidence is too weak to support the verdict. Under the Clewis standard of neutral review the verdict should shock the Court's conscience, especially when the following facts and circumstances, are added to the analysis.

George Rivas was the "mastermind" of the Texas Seven. At the time he broke out of prison Rivas' was serving 11 sentences for aggravated robbery. No one was hurt in any of them because Rivas modus oparendi prohibited injuring others. During the formation of the gang Applicant told Rivas he would not harm others. Rivas was of like mind, citing his record. Applicant joined the gang, knowing that the best predictor of future conduct is past conduct.

After the breakout, Rivas continued as gang leader, and two robberies were planned

28

and completed.  There were no injuries.  At one point during the Oshman's robbery an employee grabbed Rivas' gun.  Rivas took it back, made the man promise not to do it again, and no one was hurt.

"Anticipate" means "to give advance through discussion, or treatment to" ; " to foresee or deal with in advance".  Webster's Ninth New Collegiate Dictionary, 1992.

There was advance, thought, discussion, treatment given to the foreseeable scenerio that the police ould arrive beofre the gang left.  If this did happen it was foreseen that a firefight would ensue.  This contingency was dealt with by planning to be gone befoe the police could get there.  A lookout's duty is to warn of impending danger.  But, the fact that someone is the lookout dos not prove anything about whether the warning is giving to respond to danger by fleeing or fighting.  The circumstances answer to real question in this case.  Did the plan call for flight or fight.  The physical position of the shooter and the target show the warning ws transmitted so the gang could flee.  Had the plan called for a fight the six men would not have positioned themselves so as to endanger each other via friendly fire.  Moeover, Applicant stated the warning via a command.  He said: " Leave".  Leave means go; There is no evidence common ordinary meaning of the word was changed to mean get ready to fight , as the prosecutor claimed.

The verdict is based on factually insufficient.


**GROUND FOR RELIEF FIVE**

29

# THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE THAT APPLICANT

# WOULD BE A CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to Tex. Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that there is a reasonable probability that the defendant, Patrick Henry Murphy would commit criminal acts of violence that would constitute a continuing threat to society?

To arrive at an answer to the special issue, the jury is instructed to deliberate on all of the evidence admitted during both phases of the trial. Vuong v. State, 830 S.W. 2d 929 ( Tex. Crim. App. 1992). The Eighth Amendment requires consideration of the character and record of the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy". Lackey v. State, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

The Texas Court of Criminal Appeals has made a list of factors to aid them in the analysis of this issue. These are: (1) the circumstances of the offense, **including the defendant's state of mind**; (2) the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. Ellason v. State, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991).

30

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. <u>See</u>, <u>Smith v. State</u>, 779 S.W. 2d 417 ( Tex. Crim. App. 1989).  That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw. Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more.  <u>Smith v. State</u>, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes.  It was an easy, appealing argument to label the seven criminals, the "Texas Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them.  Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed.  No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out.  He never committed a single violent act while living in there.  If allowed to live he will go back to prison to live the rest of his life.  It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone.  And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

31

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder.  In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's.  Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

The state did not call an expert to testify on the issue of the future dangerousness, although it is routine to do so.  Only two explanations exist for this choice.   Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled.  The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low.  The state''s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give.  This argument was apparently successful.  Therefore, jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.

32

# GROUND FOR RELIEF SIX

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO PROVE THAT APPLICANT

## WOULD BE a CONTINUING THREAT TO SOCIETY

After the close of the evidence the trial court instructed the jury pursuant to Tex. Code Crim. Proc. Ann. article 37.071 as follows:

> Do you find from the evidence beyond a reasonable doubt that there is a reasonable probability that the defendant, Patrick Henry Murphy would commit criminal acts of violence that would constitute a continuing threat to society?

In determining factual sufficiency, the appellate court views all the evidence in a neutral light and sets aside the verdict if it is contrary to the evidence. Johnson v. State, 23 S.W. 3rd 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W. 2d 126,129 ( Tex. Crim. App. 1996). The appellate court reviews the evidence weighed by the jury that tends to prove the facts in dispute and compares it with the evidence that tends to disprove those facts.  The appellate court has the authority and duty to disagree with the jury's weighing of the evidence where that evaluation is clearly wrong.

The scope of this review includes the use of two formulas.  The evidence is factually insufficient if it is so weak that the verdict is clearly wrong.  The evidence is factually insufficient if the evidence contrary to the verdict is of greater probative value on the disputed elemental issues.

To arrive at an answer to the special issue, the jury is instructed to deliberate on all of the evidence admitted during both phases of the trial. Vuong v. State, 830 S.W. 2d 929

33

( Tex. Crim. App. 1992).  The Eighth Amendment requires consideration of the character and record if the individual offender together with the particular circumstances of the offense in order to prevent the execution of a defendant who is not "death worthy".  Lackey v. State, 819 S.W. 2d 111 ( Tex. Crim. App. 1989).

This Court has states some factors that it considers in reviewing the jury's decision. These are: (1) the circumstances of the offense, **including the defendant's state of mind**; (2) the calculated nature of the defendant's actions ; (3) the forethought and deliberateness exhibited in carrying out the crime ; (4) the existence and severity of the defendant's prior criminal record; (5) the defendant's age and personal circumstances at the time of the offense ; (6) whether the defendant acted under the dominion of another; evidence of relevant character traits ; ( 8) and any expert testimony admitted on the issue. Ellason v. State, 815 S.W. 2d at 656 ( Tex. Crim. App. 1991);

The **circumstances of the offense** alone may sufficiently support a yes answer to the question of future dangerousness. See, Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989).  That is, the facts of the crime itself are so heinous that future dangerousness is a reasonable conclusion to draw.  Moreover, the facts of the case may show that the defendant possess such an aberration of character that he is inherently dangerous and that future dangerousness can be reasonably decided without more.  Smith v. State, 779 S.W. 2d 417 ( Tex. Crim. App. 1989) .

The Prosecutor tried the instant case on the theory that facts of the crime and surrounding circumstances were so heinous that nothing else was needed to answer the question, yes.  It was an easy, appealing argument to label the seven criminals, the "Texas

34

Seven" and draw upon the general fear endangered by the fact that a Texas prison could not hold them.  Therefore, no one would be safe so long as they are alive. The subjective response to this argument is to agree with it, as did the jury. The law requires more before a man is executed.  No rational jury could have voted yes on this question, because the use of reason and common sense, without emotion, overwhelmingly, dictates a no answer.

Applicant lived in prison for over 16 years prior to breaking out.  He never committed a single violent act while living in there.  If allowed to live he will go back to prison to live the rest of his life.  It is axiomatic in Texas death penalty jurisprudence that the best prediction of the future is the part.

Although spectacular, the prison breakout resulted no injuries to anyone.  And although it may be frightening to some, a gang of seven escapees from a Texas prison being on the loose should also lead to the realization that they will be hunted down and probably killed, or at least returned to custody.

Officer Aubrey Hawkins was murdered on Christmas Eve by six armed cowards who panicked when he drove toward them. The seventh member of the gang was Applicant. It was he who was the lookout. It was his job to warn Rives of the imminent arrival of the police so the gang could get away and avoid a confrontation. It was not Applicant's intention nor did he anticipate Officer Aubrey Hawkins murder.  In fact had the other six members of the Texas Seven been as efficient that night as Applicant there would have been no shooting behind the Oshman's.  Thus, the facts of the crime and Applicant's role in it, including his state of mind, do nothing to tend to prove Applicant would be a continuing threat to prison society into the future.

The state did not call an expert to testify on the issue of the future dangerousness,

35

although it is routine to do so.  Only two explanations exist for this choice.   Either the testimony was not needed to prove the case, or it was feared that such an expert would form and express an opinion adverse to the state's position.

The defense did call an expert who was will qualified, examined Applicant, wrote a report, and gave his opinion after the state's various directions were all overruled.  The expert testified that the likelihood that Applicant would continue to commit violent acts into the future was extremely low.  The state''s cross-examination of this expert was perfunctory and ineffectual. Their argument to the jury was based on the assumption that jurors don't like experts and that they give the opinion they are paid to give.  This argument was apparently successful.  Therefore,  jury's answer to the question of future dangerousness was not based on the rational implementation of logic to reach a dispassionate and accurate conclusion.


### GROUND FOR RELIEF SEVEN


### THE APPLICATION OF <u>TEX. PENAL CODE ANN SECTION 7.02 (b)</u>
### TO <u>TEX. PENAL CODE ANN. SECTION 19.03</u> IS UNCONSTITUTIONAL


Applicant was indicted for the offense of capital murder as proscribed by <u>Tex. Penal Code Ann. section 19.03</u>.  The indictment was drafted pursuant to the statute alleging that Applicant, acting with the specific intent to kill, caused the death of Officer Aubrey Hawkins, during the course of committing the offense of aggravated robery.  The state sought the

death penalty.

At trial the state took the position that Applicant was guilty of the charged offense because he was criminally responsible for the acts of six other men under Tex. Penal Code Ann. section 7.02 (b). This provision makes a defendant responsible for the acts of his co-conspirators. Thus, Applicant was culpable, if at all, under the law of conspiracy is applied to the law of capital murder.

The state maintained from voire dire through the subsequent guilty verdict that Applicant was being tried as the "nontrigger man" and that as to the accompanaying mental state all that needed to be proved was he "should have anticipated" the murder. See, section 7.02 (b). The state successfully convicted Applicant of capital murder without having to prove he committed an act resulting in death. Nor did the state have to prove that Applicant had the specific intent to kill. The conviction was for a violation of section 19.03 notwithstanding the facts that Applicant did no act that caused the result, and he did not possess the culpable mental state required.

Section 7.02 (b) requires proof, that in an attempt to carry out a conspiracy to commit one felony, another felony, which should have been anticipated, is committed in furtherance of the intended felony. Id. at 7.06 (b).

The Texas Penal Code at section 15.02 also criminalizes conspiracy, requiring proof of an agreement plus an overt act of one conspirator in furtherance of the common goal. The defendant under that provision is culpable for his own acts. Likewise, when a person is shown to have committed capital murder, that person is criminally responsible for his own acts.

When a person is convicted of capital murder as a party he is criminally responsible

37

for the acts of another, but he must have the specific intent that the death result. Tex. Penal Code Ann. section 7.02 (a). However, under the conspiracy theory, the defendant is liable for the acts and mental states of others. Both components of criminal culpability ae imputed to the co-cospirator. Tex. Penal Code Ann. section 6.01 . In Texas a man can be executed who does not act and does not think so as to violate section 19.03.

The Texas Court of Criminal Appeals has also held that Enmund does not apply to the guilt/ innocence phase of a capital murder trial.   Regardless, the rationale and constitutional at principle do apply.  That is,  it is a violation of the Eighth Amendment to expose a defendant to the sanction of death where, as here , he was not present, did not shoot, and had no intent that others, do so.  Here as, in Enmund proof of the culpable mental state has been dispensed with through application of conspiracy law to the Texas Capital murder statute.  This application which renders the conviction for the indicted offense unconstitutional and void.


### GROUND FOR RELIEF EIGHT


### THE APPLICATION OF TEX. PENAL CODE ANN. SECTION 7.02 (b)
### TO TEX. CODE CRIM. PROC. ANN. ARTICLE 37.0971 (C ) (1)


After convicting Applicant of capital murder because he should have anticipated the murder committed in furtherance of the robbery conspiracy the jury was asked whether Applicant "did" in fact "anticipate" the murder.

38

Tex. Code Crim. Proc. Ann. article 37.071 requires the Court to instruct the jury to answer yes or no, whether Applicant actually killed the victim, or if not, whether he intended to kill the victim, or if not, whether he did anticipate  the muder occur.  The jury answered, "yes".

This question has been called the "anti-parties" charge, and the Texas Court of Criminal Appeals has repeatedly stated it's purpose is to ensure a jury's punishment deliberation is based only upon the conduct of that defendant and no one else.  Martinez v. State, 879 S.W. 2d 655 ( Tex. Crim. App. 1994) ; Solomon v. State, 49 S.W. 3rd 756 ( Tex. Crim. App. 2001)(stating purpose is to focus on individualized conduct or mental state of the defendant).   Thus, the instruction was designed to satisfy the Enmund rule that death cannot be imposed based on the conduct of anyone other than the accused. Enmund v. Florida.

Applicant disagrees with the Texas Court of Criminal Appeals assertion that article 37.071 serves it's intended purpose.  The law of conspiracy  ispresent in this case, not the law of parties.   In the jury charge, the jury was asked whether or not Applicant did anticipate the death of Officer Hawkins.   This questions concerns conspiracy culpability nd has nothing to do woth the law of parties.

This instruction does not focus the jury deliberations on Applicant's conduct to the exclusion of his conspirators.  Rather it re-focuses the jury on acts and mental states of the other conspirators and asks whether Applicant did anticipate the conduct of the others. Conduct has two parts. The act and the evil mind.  The primary actor is death worthy because he satisfies both parts.  The party is death worthy because he possess the evil mind. The co-conspirator is never death worthy because he satisfies neithr part.  There is

39

no act.   There is no mental state.   Execution of this defendant violates the Eighth

Amendment.  U.S. Const. Amend. Eight.


# PRAYER


WHEREFORE, Premises Considered, Appellant prays that this Honorable Court

reverse and acquit or reform the judgment to reflect a sentence of life imprisonment.


Respectfully submitted,

Allan Fishburn
State Bar Number 07049110
211 North Record Street
Suite 450 L.B. 15
Dallas, Texas 75202
Telephone (214) 761-9170
Facsimile (214) 742-7313


# CERTIFICATE OF SERVICE


I hereby certify that a true and correct copy of the foregoing Brief was mailed to the District

Attorney's Office, located at George L. Allen, Sr. Courts Building, 600 Commerce,

Second Floor, Dallas, Texas  75202, on this the ___20___ day of ___September___

2005.

Allan Fishburn

40